Seth B. Herring (SBN 253907)
Email: sherring@reedsmith.com
Katrina M. Kershner (SBN 294045)
Email: kkershner@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

Eryn N. Terry (SBN 340865)
Email: eterry@reedsmith.com
REED SMITH LLP
355 S Grand Ave #2900
Los Angeles, CA 90071
Telephone: +1 213 457 8000
Facsimile: +1 213 457 8080

Attorneys for Plaintiff
BENEFIT COSMETICS LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENEFIT COSMETICS LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>E.L.F. COSMETICS, INC.<br><br>　　　　Defendant. | Case No.: 3:23-cv-00861-RS<br><br>**PLAINTIFF BENEFIT COSMETICS LLC'S OPPOSITION TO DEFENDANT E.L.F. COSMETICS, INC.'S MOTION TO MODIFY THE CASE MANAGEMENT SCHEDULING ORDER**<br><br>Trial Date:　August 26, 2024<br>Courtroom:　3<br>Judge:　　　Hon. Richard Seeborg |

## I. INTRODUCTION

Plaintiff Benefit Cosmetics LLC ("Benefit" or "Plaintiff") is a global cosmetics brand, and one of its flagship products is its ROLLER LASH-branded curling mascara (the "Roller Lash Mascara"). The Roller Lash Mascara features a distinctive trade dress consisting of a pink cap, black base, and lettering on the base matching the color of the cap. In 2022, Defendant e.l.f. Cosmetics, Inc. ("e.l.f." or "Defendant") launched a copycat curling mascara product branded LASH 'N ROLL (the "Lash 'N Roll Mascara"), which also features a pink cap, black base, and lettering on the base matching the color of the cap, in addition to a confusingly similar name.

The evidence adduced in this litigation establishes, unequivocally, that e.l.f. adopted both the LASH 'N ROLL trademark and the pink and black trade dress in an intentional effort to trade off the substantial goodwill associated with the Roller Lash Mascara. Defendant attempts to defend its conduct by relying on the alleged existence of third-party products that contain pink and/or black packaging ("Alleged Third-Party Use" or "Third-Party Products"), but the record evidence shows that each Alleged Third-Party Use is *de minimis* at best, and thus of minimal probative value. Indeed, Benefit's 30(b)(6) witness, whose job responsibilities include being knowledgeable about mascara products in the industry, has never heard of any of the Third-Party Products, and e.l.f. had to resort to purchasing many of them on eBay instead of from an actual retailer.

In a last-ditch effort to fill this substantial evidentiary hole, e.l.f. now seeks to extend the discovery period so it can take **15**[1] third-party depositions regarding certain Third-Party Products. E.l.f.'s belated attempt to take these depositions is entirely lacking in good cause. Indeed, e.l.f.'s motion does not even attempt to explain why e.l.f. could not have taken these depositions earlier in the case, nor does it identify any new information that suddenly created a need for these depositions at this late stage. And e.l.f. had more than enough time to take the depositions during the discovery period, which opened roughly *seven months* ago and has already been extended once – for 45 days – at e.l.f.'s request.

---

[1] E.l.f. neglected to explain in its motion that it was seeking 15 depositions, which exceeds the limit in the Federal Rules and the Court's Scheduling Order, and will thus require separate leave of Court to take.

Simply put, the issue of third-party use has been relevant since the beginning of the case, yet e.l.f. waited until just weeks before close of discovery to seek the 15 third-party use depositions that are the subject of this motion. Any prejudice to e.l.f. is entirely of its own making, and on that basis, e.l.f.'s motion should be denied.

## II. STATEMENT OF RELEVANT FACTS

From the outset of this case, both parties have understood that third-party use was a potentially relevant issue. For example, on May 30, 2023, Benefit's First Set of Requests for Production of Documents requested documents related to any alleged third-party use of the Roller Lash Trade Dress, which Defendant agreed to produce. *See* Seth Herring Declaration ("Herring Decl.") ¶ 2. Likewise, Defendant's June 15 Requests for Production of Documents requested that Benefit produce documents concerning any third-party use of the Roller Lash Trade Dress, which Benefit also agreed to produce. *See* Herring Decl. ¶ 3. On July 28, Defendant made its first document production, which included images of various third-party products containing pink and black. *See* Herring Decl. ¶ 4. Meanwhile, on September 20, Defendant filed a motion to extend the discovery deadline by 45 days due to its counsel's involvement in another case with trial dates that overlapped with the discovery period in this case. *See* Herring Decl. ¶ 5. Counsel's other case did not go to trial. *See id.*

In Defendant's September 28 Settlement Conference Statement, e.l.f. again discussed the Alleged Third-Party Use of the Roller Lash Trade Dress, and even provided images of the Third-Party Products. *See* Herring Decl. ¶ 6. On October 12, Benefit served an additional set of requests for production that sought further detail into the Third-Party Products shown in e.l.f.'s Settlement Conference Statement. *See* Herring Decl. ¶ 7. In response, Defendant produced additional images of Third-Party Products and related documents on November 14. *See* Herring Decl. ¶ 8. On November 15, e.l.f.'s 30(b)(6) witness regarding third party use testified regarding certain Third-Party Products. *See* Herring Decl. ¶ 9. A month later, on December 15, Defendant served Plaintiff with notice of 15 third-party subpoenas seeking testimony from the purported manufacturers of certain Third-Party Products. *See* Herring Decl. ¶ 10. On December 21, Defendant took the deposition of Benefit's 30(b)(6) witness regarding third-party use. *See* Herring Decl. ¶ 11. As of

the filing of this Opposition, it is unclear whether a single one of the 15 subpoenas has been served, or a single deposition scheduled.  *See* Herring Decl. ¶ 12.

### III. <u>ARGUMENT</u>

Defendant's Motion should be denied because Defendant failed to timely seek the subject discovery.

Third-party use can be highly relevant to trademark and trade dress infringement disputes. In particular, the *extent* of third-party use is key.  Indeed, courts in this District, as well as the Ninth Circuit, routinely hold that third-party use that is trivial, or for which the scope of such use has not been established, is unpersuasive. *See, e.g., Rebelution, LLC v. Perez*, 732 F. Supp. 2d 883, 891-93 (N.D. Cal. 2010) ("without evidence of the scope of use by third-parties, the degree to which plaintiff's mark was weakened by these users cannot be determined."); *Charles Schwab & Co. v. Hibernia Bank,* 665 F. Supp. 800, 806 (N.D. Cal 1987) (holding that over 40 alleged third-party uses were unpersuasive because defendant failed to put forth any evidence "showing how extensive the uses are and how long they have continued."); *see also Nat'l Lead Co. v. Dannenfelser*, 223 F.2d 195, 203-205 (9th Cir. 1955) (holding that alleged third-party uses were unpersuasive because such uses were discontinued, inconsequential, used in connection with unrelated goods and services, or accused of infringing plaintiff's mark). Defendant has known of this issue since at least as early as May 2023, when Benefit requested documents related to third-party use.[2]  Defendant requested the same from Benefit two weeks later, and the issue has arisen periodically throughout the case in the context of the settlement conference and party depositions.  Defendant acknowledges in its motion that this issue is "an important part of Defendant's case" (Motion at 2).

Yet, without explanation, Defendant waited until there were four weeks left in the discovery period to initiate the process of serving subpoenas on third parties who allegedly make the Third-Party Products. Defendant could have sought these depositions when discovery opened seven months ago in May 2023, but instead it waited until Court intervention was necessary. Defendant even received an additional 45 days of fact discovery when its Unopposed Motion to

---

[2] It is likely that Defendant's counsel, experienced trademark litigators, understood that third-party use would be an issue in this case since it was filed in February 2023.

Modify Case Management Scheduling Order (Dkt. 48) was granted. But instead of putting that extra time to good use and serving these subpoenas in a timely fashion, Defendant waited until just weeks before close of discovery to do so.

Because Defendant's own lack of diligence caused its inability to conduct these depositions before the discovery deadline, any prejudice to Defendant is of its own making. Indeed, courts in this District routinely deny motions to amend the case schedule based on the moving party's lack of diligence. *See, e.g., Liberty Mut. Ins. Co. v. Cal. Auto. Assigned Risk Plan*, No. C 11-1419 MMC, 2012 U.S. Dist. LEXIS 112379, 2012 WL 3277213, at *4 (N.D. Cal. Aug. 9, 2012) (denying untimely motion for leave to amend based on newly discovered facts where the moving party failed to demonstrate that it was diligent in seeking discovery); *ExperExchange, Inc. v. Doculex, Inc.*, 2009 U.S. Dist. LEXIS 112411, *85-86 (N.D. Cal. Nov. 16, 2009) (denying motion to file amended complaint after discovery deadline because plaintiff waited two months after discovering its allegedly new facts to bring its motion to amend); *see also Bailey v. Gatan, Inc.*, 783 F. App'x 692, 694 (9th Cir. 2019) (affirming denial of motion to modify the scheduling order due to lack of diligence in seeking discovery).

Defendant fails to even attempt to explain why it waited so long to seek this discovery that leave of Court is required, and its vague reference to the deposition record does not come anywhere close to justifying Defendant's delay. Benefit's 30(b)(6) testimony confirming that Benefit was unaware of any of the Third-Party Products is not what gave rise to Defendant's need to prove the extent of third-party use – as discussed above, this was always necessary. This argument falls apart for an additional, yet equally fatal, reason as well: Defendant indicated its intent to serve the 15 third-party use subpoenas nearly a week *before* taking Benefit's 30(b)(6) deposition on third-party use.[3] E.l.f.'s reference to this deposition is simply a red herring.

Finally, Defendant argues that extending the deadline will not prejudice Benefit but will instead help Benefit schedule a deposition of e.l.f.'s witness. However, the parties recently agreed on a January 15 deposition date for that same e.l.f. witness, which is before the discovery cutoff

---

[3] Misleadingly, e.l.f. states in its Motion that the 30(b)(6) deposition of Benefit related to third-party use occurred on December 12, 14, and 21. This is patently false. Benefit designated a single witness on this topic, and that witness's deposition occurred on December 21.

date. Extending the discovery cutoff by 30 days will in fact prejudice Benefit: rather than use the time between fact discovery and expert disclosures to focus on experts, e.l.f.'s gambit would force Benefit to attend 15 third-party depositions that e.l.f. should have sought months ago.

### IV. CONCLUSION

E.l.f. could have pursued these 15 third-party depositions from the outset of this litigation, yet it waited so long that a Court order was required to extend the discovery cutoff to accommodate this discovery. Thus, any prejudice to e.l.f. is a problem of its own making. Accordingly, Defendant's Motion should be denied.

DATED: January 2, 2024                                         REED SMITH LLP

                                                    By:   */s/ Seth B. Herring*
                                                          Seth B. Herring (SBN 253907)
                                                          *Attorneys for Plaintiff*
                                                          BENEFIT COSMETICS LLC