# EXHIBIT 28

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

**BENEFIT COSMETICS, LLC,**

Plaintiff,

v.

**E.L.F. COSMETICS, INC.**

Defendant.

Case No. 3:23-cv-00861-RS

# EXPERT REPORT OF SARAH BUTLER

# Table of Contents

I.    QUALIFICATIONS ...................................................................................................3

II.   DOCUMENTS REVIEWED ....................................................................................4

III.  ASSIGNMENT AND SUMMARY OF OPINIONS ...............................................4

IV.   BACKGROUND ........................................................................................................9

V.    POINT-OF-SALE SURVEY...................................................................................10
      A.    Point-of-Sale Survey Methodology......................................................................11
      B.    Point-of-Sale Stimuli ..........................................................................................18
      C.    Point-of-Sale Survey Results...............................................................................31
      D.    Point-of-Sale Survey Conclusion ........................................................................37

VI.   POST-SALE SURVEY............................................................................................38
      A.    Post-Sale Survey Methodology ............................................................................38
      B.    Post-Sale Stimuli Shown ......................................................................................42
      C.    Post-Sale Survey Results......................................................................................43
      D.    Post-Sale Conclusions .........................................................................................47

VII.  CONCLUSIONS......................................................................................................47

# I.    QUALIFICATIONS

1.      I am a Senior Managing Director at NERA, where I am the Chair of the Survey Research and Consumer Behavior Practice and a member of the Intellectual Property and Antitrust Practices. My business address is 4 Embarcadero Center, San Francisco, CA 94111. NERA is a firm providing expert statistical, survey, economic, and financial research analysis.

2.      At NERA, I conduct survey research, market research, and sampling analysis on a wide range of topics regarding business and consumer decision making, consumer perceptions, and consumer behavior. In the course of my career, I have conducted research for leading corporations and government agencies on consumers, employees, and businesses. My work has been included in numerous lawsuits involving issues of trademark and trade dress confusion, secondary meaning and false advertising, as well as in antitrust and employment-related litigation. I am a member of the American Association of Public Opinion Research, the American Statistical Society, the Intellectual Property Section of the American Bar Association, and the International Trademark Association (INTA).

3.      I have also worked as a market researcher conducting surveys and other forms of research, including personally conducting focus groups and in-depth interviews with consumers and professionals. I have worked as an independent consultant conducting research for the Department of Environment and Rural Affairs in the United Kingdom. I have taught courses focused on or involving research methodologies in both the United States and Europe. I hold a Master's Degree in Philosophy from Trinity College, Dublin and a Master's Degree in Applied Sociology from Temple University.

4.      I have substantial experience conducting and using surveys to measure consumer opinions and behaviors regarding products and services, including brand awareness, purchase

3

processes, product attributes, market segmentation, new product research, and advertising strategies.

5.      I have submitted expert reports, been deposed, and have testified at trial within the last five years. A list of my testimony is included on the copy of my current resume, which is attached hereto as **Exhibit A**.

6.      NERA is being compensated for my services in this matter at my standard rate of $825 per hour. Members of the staff at NERA have worked at my direction to assist me in this engagement. No part of my compensation or NERA's compensation depends on the outcome of this litigation. Throughout this report, I have used the terms "I" and "my" to refer to work performed by me and/or others under my direction.

## II.    DOCUMENTS REVIEWED

7.      As part of my work, I reviewed the *Complaint*[1] and the *Answers*[2] in this matter, as well as other materials. A list of the specific materials I reviewed can be found in **Exhibit B**.

## III.    ASSIGNMENT AND SUMMARY OF OPINIONS

8.      I was retained by counsel for Defendant, e.l.f. Cosmetics, Inc. ("e.l.f." or "Defendant"), to evaluate whether relevant consumers would be confused by e.l.f.'s "Lash 'N Roll" mascara product ("e.l.f.'s Mascara Product") and would believe it is a product made by Plaintiff, Benefit Cosmetics LLC ("Benefit"), or is a product affiliated with or licensed by Benefit.

---

[1] Complaint for Trademark Infringement, Trade Dress Infringement, False Designation of Origin, and Unfair Competition, *Benefit Cosmetics, LLC v. e.l.f. Cosmetics Inc.*, United States District Court for the Northern District of California, San Francisco Division, Case No. 3:23-cv-00861-RS, dated February 24, 2023 (hereinafter, "*Complaint*").

[2] Defendant e.l.f. Cosmetics, Inc.'s Answer and Affirmative Defenses to the First, Second, Third, Fourth, Sixth, Seventh and Ninth Causes of Action, *Benefit Cosmetics, LLC v. e.l.f. Cosmetics Inc.*, United States District Court for the Northern District of California, San Francisco Division, Case No. 3:23-cv-00861-RS, dated April 20, 2023 (hereinafter, "*Answer, Part 1*"). Defendant e.l.f. Cosmetics, Inc.'s Answer and Affirmative Defenses to the Fifth and Eighth Causes of Action, *Benefit Cosmetics, LLC v. e.l.f. Cosmetics Inc.*, United States District Court for the Northern District of California, San Francisco Division, Case No. 3:23-cv-00861-RS, dated July 21, 2023 (hereinafter, "*Answer, Part 2*").

To evaluate consumer confusion, I designed two separate surveys – a survey assessing potential confusion at the point-of-sale, and a post-sale confusion survey. My results are summarized below.

## **Point-of-Sale Survey**

9.     To determine whether consumers would confuse e.l.f.'s Mascara Product as a product made by or affiliated with Benefit, my Point-of-Sale survey presented respondents with products they might see while shopping for cosmetics. Specifically, my survey was designed to reflect how consumers shopping for mascara might encounter e.l.f.'s Mascara Product and Benefit's "Roller Lash" mascara product ("Benefit's Mascara Product"), as well as other brands of mascara.

10.     To start, respondents were first shown a series of images of an Ulta store,[3] which I understand is the only current retailer selling both e.l.f.'s Mascara Product and Benefit's Mascara Product. After reviewing the general store and display images,[4] all respondents were shown Benefit's Mascara Product. Benefit's Mascara Product was shown on the shelf and then up close, with the front, back, and side of the package being shown to respondents. Respondents were also shown Benefit's Mascara Product outside of the package with the wand out of the product tube.[5] The name "Roller Lash" appeared on the product packaging, as well as on the mascara tube, and the phrase "Hook 'n' Roll"[6] appeared on the back of the product packaging in the survey images of Benefit's Mascara Product.

---

[3] Plaintiff claims that both companies' mascaras are sold in "some of the same retailers, including but not limited to, Ulta and Target stores." *Complaint*, ¶ 46. I understand that there are Ulta stores within Target selling both products.

[4] As explained in ¶ 12 and in greater detail in ¶ 59, respondents in the Control Group were shown images of e.l.f.'s brand section and e.l.f.'s Mascara Product without the allegedly infringing elements.

[5] While I understand that removing the wand from the tube in the real world would coat the pink brush with black or brown mascara, Benefit does advertise the product with a pink brush. Therefore, to be conservative and to ensure I displayed the brush as it is typically advertised, the brush is pink in the images shown in the survey.

[6] See *Complaint,* ¶ 25.

13.    I surveyed a total of 400 consumers who had purchased mascara in the last six months or who intended to purchase mascara in the next three months.

14.    The results of my Point-of-Sale survey are as follows:

- A total of 15.5 percent of respondents in the Test Group indicated that e.l.f.'s Mascara Product was made or put out by, associated with, or licensed by Benefit.

- In the Control Group, 10.5 percent of respondents indicated that e.l.f.'s Mascara Product was made or put out by, associated with, or licensed by Benefit.

- Using the results from the Control Group to estimate and net out survey "noise" from the confusion observed in the Test Group, I estimate a net rate of 5.0 percent confusion.

- Respondents shown the allegedly infringing e.l.f. Mascara Product were as likely, or, in some cases, more likely, to indicate that other brands of mascara (*e.g.,* Maybelline, Lancôme) were associated with Benefit as they were to indicate e.l.f.'s Mascara Product was associated with Benefit.

15.    The results of my Point-of-Sale survey demonstrate there is no likelihood of confusion among relevant consumers between e.l.f.'s Mascara Product and Benefit.

## Post-Sale Survey

16.    I also conducted a Post-Sale likelihood of confusion survey of 400 consumers to evaluate the extent to which, if at all, the public encountering e.l.f.'s Mascara Product would confuse, or otherwise associate it with Benefit. Similar to my Point-of-Sale survey, my Post-Sale survey included a separate Test and Control Group. To evaluate whether e.l.f.'s Mascara Product would be likely to confuse consumers post-sale, respondents were shown a video of a woman applying make-up in a women's restroom. In the video, the woman holds and applies a number of

cosmetic products, including e.l.f.'s Mascara Product with the allegedly infringing trade dress elements clearly visible, including the pink top, black base, and pink lettering on the black base.[9] Respondents in the Control Group were shown the same video, but the allegedly infringing elements of the trade dress were removed or modified.

17.     After being shown the video, respondents were asked whether they recognized any of the brands shown in the video. Those who answered "yes" were asked to name the brands and were also provided with a list of possible brands that could have been shown in the video, including Benefit.

18.     The results from my Post-Sale survey demonstrate that:

- Approximately 60 percent of respondents in both groups (60.5 percent in the Test Group, 59.0 percent in the Control Group) indicated that they recognized at least one product shown in the video.

- Only a single respondent in the Test Group (0.5 percent) reported in her verbatim response that one of the products shown was from Benefit. None of the respondents in the Control Group mentioned Benefit in their open-ended responses.

- When provided with a list of cosmetic brands shown in the video, three respondents in the Test Group (1.5 percent), and three respondents in the Control Group (1.5 percent) selected Benefit.

- The unique number of respondents who either indicated Benefit in their open-ended response or selected this brand from the list was three in the Test Group (1.5 percent) and three in the Control Group (1.5 percent).

---

[9] *Complaint,* ¶ 97.

- The rate of mentioning or selecting Benefit is equivalent in the Test and Control Group (three respondents or 1.5 percent), and thus yields zero (0.0 percent) net confusion. These results demonstrate that there is no likelihood consumers would be confused by e.l.f.'s Mascara Product in a post-sale environment.

19.     The results from both of the surveys I conducted demonstrate that consumers will not be confused between e.l.f.'s Mascara Product and Benefit's Mascara Product. The remainder of this report discusses my general understanding of the background in this matter, provides the details of the research I conducted, and the results of my surveys.

## IV.   BACKGROUND

20.     Benefit is a limited liability company with its principal place of business in San Francisco, California.[10] Benefit is a global cosmetics brand that "designs, manufactures, and sells a wide variety of cosmetic products, such as mascaras, bronzers, lipsticks, eyeshadow palettes, foundations, eyebrow gels, and skin primers, among many others."[11]

21.     Benefit owns registrations for ROLLER LASH (Reg. No. 4752213) and HOOK 'N' ROLL (Reg. No. 4796514).[12] Benefit also claims it has common law trade dress rights in a mascara tube with 1) a pink top, 2) a black base, and 3) pink lettering on the black portion of the product which matches the color of the pink top.[13]

---

[10] *Complaint*, ¶ 6.

[11] *Complaint*, ¶¶ 16, 21.

[12] *Complaint*, ¶ 25.

[13] *Complaint*, ¶ 32. I understand the trade dress is also represented visually in the *Complaint* in ¶ 31.

between Benefit and e.l.f. is simply an artifact of guessing. Overall, these results demonstrate consumers would not confuse e.l.f.'s Mascara Product with Benefit's Mascara Product.

# VI.  POST-SALE SURVEY

74.     To determine whether consumers who see e.l.f.'s Mascara Product in a post-sale environment (that is, not for sale in a store but after the product has been purchased by someone else) would confuse or associate the product with Benefit, I designed and conducted a Post-Sale survey.

## A.  Post-Sale Survey Methodology

### 1.  Survey Population

75.     The relevant population for this matter is comprised of U.S. consumers, ages 16 years or older, who have purchased or are likely to purchase mascara.

### 2.  Sampling of the Relevant Population

76.     As with the Point-of-Sale survey, potential respondents in my Post-Sale survey were contacted by Dynata, an online panel and data collection services company.[44]

77.     A total of 400 respondents in the relevant population qualified for and completed the Post-Sale survey. The survey invitation, the complete questionnaire, and screenshots of the survey as it appeared to respondents are provided in **Exhibit D.1.**

78.     Data for this survey were collected between January 25th and February 6th, 2024.

### 3.  Quality Control Measures for the Survey

79.     To ensure that my data are of the highest quality, I implemented the same quality control measures listed above in paragraph 31.

---

[44] See ¶ 28 for a more detailed explanation of Dynata.

### 4. Screening Questionnaire

80.     To ensure that panel respondents were part of the relevant population, a series of screening questions was asked. Only respondents who met these qualifying conditions continued with the main survey.

81.     To qualify for the Post-Sale survey, respondents had to indicate that they were using a desktop computer, laptop computer, tablet computer, or mobile phone to complete the survey. As in the Point-of-Sale survey, respondents had to correctly pass a "CAPTCHA" question to confirm that a human, and not a computer or a "bot," was completing the survey. Respondents were asked for their age and only those who indicated that they were 16 years or older were permitted to complete the survey.[45] Those who indicated "Prefer not to answer" were screened out. Respondents also had to indicate that they resided in the United States, and if they entered a zip code that conflicted with their state of residence, they were screened out.

82.     In order to qualify, respondents had to indicate that they have not taken a survey on makeup in the past month.[46] Respondents were also screened out of the survey if they indicated that they, or someone in their household, worked for a market research or advertising company or a company that makes or sells cosmetics.[47]

83.     After passing the above screening questions, respondents were asked to select, from a list which products, if any, they had purchased in the past six months, or were likely to purchase in the next three months. In order to qualify, respondents had to indicate that they had purchased mascara in the past six months or were likely to purchase it in the next three months.

---

[45] As with my Point-of-Sale survey, the Post-Sale survey invitations were sent to panel members 18 or older. In order to sample 16-17 year olds, respondents were asked if they are the parent of a child under 18. After confirming the age of their child (or children), parents of 16- and 17-year-olds were asked to provide permission for their teenager to participate in the survey.

[46] Those who answered "Don't know / unsure" to this question were also screened out. No potential respondent invited to participate in the Point-of-Sale survey, regardless of qualification status, was invited to participate in the Post-Sale survey.

[47] Those who answered "Don't know / unsure" to this question were also screened out.

84.    Finally, all respondents had to correctly respond to a quality control screening question which ensured that respondents were paying attention. Once qualified, respondents were taken to the main questionnaire.

### 5.    Main Questionnaire

85.    All qualified respondents were provided with the following instruction:

> Thank you for participating in today's survey. If you do not know or do not have an opinion about any of the questions, please select "Don't know / unsure." Please do not guess. Click ">" to proceed.

> Next, you will see a video of a woman applying makeup. Please watch the video carefully. When you are ready, click the arrow to start the video. Once the video is complete, you may watch it again. If you are finished watching the video, please click ">" to advance the survey. ***Please note the video does not have sound. If you wear contact lenses or eyeglasses, please put them on now.***

86.    Respondents were then randomly assigned to either the Test Group or the Control Group and were shown a brief video of a woman applying makeup.

87.    After confirming that they were able to view the video clearly, respondents were first asked if they recognized any of the products shown in the video. This question is displayed below.

> Q.    Please think back to what you observed in the video. Did you recognize any of the products shown in the video?
>
>    1. Yes
>    2. No
>    3. Don't know / unsure

88.    Respondents who indicated that they did not recognize any of the products shown or did not know were thanked for their time and the survey was completed.[48] Respondents who indicated that they recognized some product were asked the following open-ended question:

---

[48] As one set of authors note, a chain of events is necessary in order for post-sale confusion to occur: "[First]…the observation must be *salient* -- i.e., it must be important or relevant enough to the observer for it to rise to an observation of which the observer

Q.  What brand(s) did you notice?

89.     Respondents were provided with five text boxes to enter any brands they noticed. After providing their open-ended responses, respondents were then asked to select from a list, which brands, if any, they recognized from the video. As shown below, the list included Benefit and e.l.f.

Q. You may have already mentioned this, but which of the following brands, if any, were shown in the video?[49]
1. Benefit
2. Maybelline
3. L'Oréal
4. e.l.f.
5. Dior
6. Urban Decay
7. MAC
8. Chanel
9. Lancome
10. CoverGirl
11. Revlon
12. Clinique
13. Some other brand *(Please specify)* _____
14. None of these
15. Don't know / no opinion

90.     Respondents were asked an open-ended question to explain their selections and, after providing their response, they were thanked for their time and the survey was completed.

---

is conscious, rather than remaining just one of a multitude of fleeting sense impressions that occur every moment in ordinary life. It is only when the post-sale observer makes a salient observation that the observer is able to draw an inference that might be labeled as "confusion." [Second,] the observer must be familiar with Brand. That is, the observer must be sufficiently sophisticated to have some knowledge of the trademark and associated products of Brand and to infer that Brand is the source of a good she observes on the street. [Third,] and critically, for post-sale confusion to occur, the observer must *wrongly* infer the source." Raustiala, K. & Springman, C. J. (2018). "Rethinking Post-Sale Confusion," *The Trademark Reporter*, Volume 108(3), pp. 881-903 at p. 888.

[49] Response options were randomized to minimize any potential bias from order effects.

## B.  Post-Sale Stimuli Shown[50]

91.     Respondents in the Test Group were shown a video of a woman applying various makeup products (powder foundation, eye liner, mascara, and lip gloss) in a women's restroom. I instructed the model in the video to hold the mascara in a way that would allow an observer to clearly see the product's black tube, pink cap, and pink lettering along the side of the product. A still image of the model applying mascara from the video shown to respondents in the Test Group is shown below in Figure 8.

**Figure 8. Still Image from Test Group Video**



92.     I included a Control Group in my Post-Sale survey. Respondents in the Control Group were shown the same video of a woman applying makeup, including a mascara product without the claimed trade dress elements. The mascara product shown in the Control Group was

---

[50] The videos shown to respondents are included in **Exhibit D.2**.

modified in the following ways: 1) the black colored tube was changed to a copper/champagne color, 2) the pink colored cap was changed to black, 3) the pink lettering on the tube ("e.l.f. Lash 'N Roll") was removed, and 4) the brand ("e.l.f.") was added to the cap in a copper/champagne color. A still image from the video shown to respondents in the Control Group is below in Figure 9.

**Figure 9. Still Image from Control Group Video**



## C.  Post-Sale Survey Results[51]

93.     A total of 400 respondents qualified for and completed the Post-Sale survey. Respondents in my Post-Sale survey were consumers who have purchased mascara in the past six months or are likely to purchase mascara in the next three months. As shown in Table 10 below, respondents were predominantly female and a mix of age groups. Respondents were

---

[51] The data for the Post-Sale Survey are included as **Exhibit D.3**.

geographically distributed across the U.S. as is representative of the broader U.S. population (Table 11 on next page).

**Table 10. Age and Gender Distribution**

| Age Group | Male | | Female | | Overall | |
|---|---|---|---|---|---|---|
| | Count | Percent | Count | Percent | Count | Percent |
| 16-34 | 12 | 3.0% | 174 | 43.5% | 186 | 46.5% |
| 35-54 | 7 | 1.8% | 111 | 27.8% | 118 | 29.5% |
| 55+ | 7 | 1.8% | 89 | 22.3% | 96 | 24.0% |
| **Total Respondents** | **26** | **6.5%** | **374** | **93.5%** | **400** | **100.0%** |

Source: NERA Post-Sale Survey, January – February 2024

**Table 11. Geographic Distribution**

| Region | Count | Percent |
|---|---|---|
| Northeast | 77 | 19.3% |
| Midwest | 97 | 24.3% |
| South | 149 | 37.3% |
| West | 77 | 19.3% |
| **Total Respondents** | **400** | **100.0%** |

Source: NERA Post-Sale Survey, January – February 2024

94.    After confirming they could see the video clearly, I asked respondents whether they recognized any of the products shown in the video. A total of 121 Test Group respondents (60.5 percent) indicated they recognized products from the video, and 118 respondents in the Control Group (59.0 percent) indicated the same.

95.    When asked what brand or brands they noticed, the most commonly mentioned brand was e.l.f. A total of 27 respondents in the Test Group (14.0 percent) identified e.l.f. and 58 respondents (29.0 percent) in the Control Group noticed e.l.f.[52] A total of 38 respondents in the Test Group (19.0 percent) and 33 respondents in the Control Gorup (16.5 percent) mentioned other

---

[52] One respondent, Respondent 701365540, named "lash roll" but did not select either e.l.f. or Benefit when provided with the close-ended list. Therefore, I have not included this respondent in either category.

brands shown in the video (*i.e.*, MAC, Urban Decay, and Dior). Respondents were also likely to mention other brands not shown in the video, like Maybelline and L'Oréal or to simply report a type of product (*i.e.*, powder, lip gloss, *etc.*), rather than a brand. As shown in Table 12, only one respondent named Benefit.

**Table 12. Brands in Video – Open-Ended Response**

| Response | Test | | Control | |
|---|---|---|---|---|
| | Count | Percent[1] | Count | Percent[1] |
| e.l.f. | 27 | 13.5% | 58 | 29.0% |
| Benefit | 1 | 0.5% | 0 | 0.0% |
| *Other Responses* | | | | |
| Other brands shown in video | 38 | 19.0% | 33 | 16.5% |
| Products not brands | 32 | 16.0% | 21 | 10.5% |
| Brands not shown in video | 29 | 14.5% | 25 | 12.5% |
| Other / none | 13 | 6.5% | 4 | 2.0% |
| Don't know / unsure | 6 | 3.0% | 3 | 1.5% |
| Not asked[2] | 79 | 39.5% | 82 | 41.0% |
| **Total Respondents** | **200** | | **200** | |

*Q3. What brand(s) did you notice?*

Notes: [1] Percentages do not add to 100 because respondents could indicate multiple responses.
[2] Respondents who responded "No" or "Don't know / unsure" in Q2 were not asked Q3.

Source: NERA Post-Sale Survey, January – February 2024

96.    Respondents were then presented with a close-ended list of cosmetic brands and were asked which, if any, were shown in the video. As shown in Table 13 below, three respondents in the Test Group (1.5 percent) selected Benefit. Three respondents (1.5 percent) in the Control Group also selected Benefit, resulting in a net rate of 0.0 percent.

**Table 13. Brands in Video – Close-Ended Response**

| Response | Test | | Control | |
|---|---|---|---|---|
| | Count | Percent[1] | Count | Percent[1] |
| e.l.f. | 32 | 16.0% | 65 | 32.5% |
| Benefit | 3 | 1.5% | 3 | 1.5% |
| *Other Selections* | | | | |
| Other brands shown in video | 47 | 23.5% | 45 | 22.5% |
| Specific brands not shown in video | 53 | 26.5% | 39 | 19.5% |
| Some other brand (unspecified) | 3 | 1.5% | 2 | 1.0% |
| None of these | 0 | 0.0% | 1 | 0.5% |
| Don't know / no opinion | 28 | 14.0% | 14 | 7.0% |
| Not asked[2] | 79 | 39.5% | 82 | 41.0% |
| **Total Respondents** | **200** | | **200** | |

*Q4. You may have already mentioned this, but which of the following brands, if any, were shown in the video?*

Note: [1] Percentages do not add to 100 because respondents could select multiple responses.
[2] Respondents who responded "No" or "Don't know / unsure" in Q2 were not asked Q4.

Source: NERA Post-Sale Survey, January – February 2024

97.    By combining the results of both the open- and close-ended questions described above, I can calculate the net rate of overall confusion between e.l.f.'s Mascara Product shown in the video and Benefit. Overall, three respondents in the Test Group (1.5 percent) either typed "Benefit" in response to the open-ended question or selected it from the list of brands provided at the close-ended question. In the Control Group, three respondents (1.5 percent) also mentioned "Benefit" or selected it from the list of brands, resulting in a net confusion rate of 0.0 percent. These results are shown below in Table 14.

**Table 14. Overall Mentions of Benefit (Post-Sale)**

| Response | Test | | Control | | |
|---|---|---|---|---|---|
| | Count | Percent | Count | Percent | Net Percent |
| Benefit | 3 | 1.5% | 3 | 1.5% | **0.0%** |
| **Total Respondents** | **200** | | **200** | | |

*Q3. What brand(s) did you notice?*
*Q4. You may have already mentioned this, but which of the following brands, if any, were shown in the video?*

Source: NERA Post-Sale Survey, January – February 2024

## D. Post-Sale Conclusions

98.     The results of my Post-Sale confusion survey demonstrate there is no likelihood of post-sale confusion, as no respondents, net of the Control, believed that e.l.f.'s Mascara Product with the allegedly infringing elements was a Benefit product. These results are confirmed by the fact that respondents were more likely to recognize the e.l.f. brand or other brands shown in the video than they were to claim that the product shown was Benefit.

# VII. CONCLUSIONS

99.     I conducted two surveys of 800 consumers to evaluate the likelihood of confusion resulting from e.l.f.'s Mascara Product. Both surveys demonstrate that consumer confusion is unlikely.

100.     The results of my Point-of-Sale survey of 400 consumers demonstrate there is no likelihood of confusion among relevant consumers between e.l.f.'s Mascara Product and Benefit. Respondents were shown both e.l.f.'s Mascara Product and Benefit's Mascara Product in the context of an Ulta store, along with other mascara brands that appear in Ulta. A net 5.0 percent of respondents associated e.l.f.'s Mascara Product with Benefit and respondents in the Test Group were equally likely to associate other brands with Benefit.

47

101.    I also conducted a Post-Sale likelihood of confusion survey of 400 consumers and these results demonstrate that consumers encountering e.l.f.'s Mascara Product in the real world would not confuse it, or otherwise associate it with Benefit. Even when provided with a list of brands, only three respondents shown e.l.f.'s Mascara Product identified Benefit as a brand shown in the video. The same number of respondents identified Benefit as a brand in the Control Group and thus, the net confusion is 0.0 percent.

102.    My conclusions have been reached through the proper application of survey methods and using standard methodologies relied upon by experts in the fields of survey and market and consumer research. My opinions will continue to be informed by any additional material that becomes available to me. I reserve the right to update and or supplement my opinions if I am provided with additional information. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

_____

Sarah Butler, Managing Director
March 1, 2024

48

Exhibit D.1

From:       Club Opinions
Sent:       **[DATE]**
To:         **[PARTICIPANT]**
Subject:    We're dropping by with a new survey offer.  Check it out!



null

Take the survey below and help influence future products.

**START SURVEY**

Your opinions are cherished at ClubOpinions.

We thought you might like this new survey. Check it out now!

**Reward offer:**

**Average length:** -- minutes

You can also access surveys by clicking on the following link:
**[SURVEY URL]**

Thank you for your participation!
**The ClubOpinions Team**

Privacy Policy | Terms and Conditions | Unsubscribe | Contact

You received this e-mail as a member of ClubOpinions.Please do not reply to this e-mail.For help contact us.
ClubOpinions is a product of Dynata, LLC f/k/a Survey Sampling International, LLC, 6 Research Drive,
Shelton,Connecticut 06484 USA.

# *Post Sale Survey*

**[DO NOT ALLOW ROUTED SURVEY TRAFFIC],**
**[PROGRAMMER: DISABLE RESUME LATER BUTTON FOR ENTIRE SURVEY]**

**[INTRODUCTION]** Thank you for your willingness to participate in our study.  The responses you give to our questions are very important to us.  If you don't know an answer to a question or if you don't have an opinion, please indicate this in your response, where appropriate.  Your answers will only be used in the aggregate and your personal information will be kept confidential.  The results of this study will not be used to try to sell you anything.  When you are ready to get started, please click the ">" button.

S1.   Before continuing with this survey, please carefully read these instructions:
- Please take this survey in one session.
- While taking this survey, please do not, at any time, open any other windows or tabs on this computer or device or any other computer or device.
- Please do not view any other written material while taking this survey.
- Please do not consult or talk with any person while taking this survey.
- You will not be able to go back to previous screens to change your answers.

1. I have read the above instructions and understand them, and I will adhere to these instructions.
2. I do not understand the above instructions, or I don't wish to agree to them. **[SCREEN OUT]**

S2.   What device are you using to complete this survey?
1. Desktop computer
2. Laptop computer
3. Tablet computer
4. Mobile phone or cell phone **[CAP AT 50%]**
5. Other **[SCREEN OUT]**

S3.   Please verify that you are human.
   **[INSERT reCAPTCHA.]**

S1TEEN. Are you a parent of any children under 18?
1. Yes
2. No **[SKIP TO PRE_INFO2]**

S2TEEN. What age range is your child? If you have multiple children, select all that apply.
1. Under 5 years old
2. 6 – 8 years
3. 9 – 12 years
4. 13 – 15 years
5. 16 – 17 years

**[IF S2TEEN = 5, ASK S3TEEN; ELSE SKIP TO PREINFO2]**

S3TEEN. We have a brief survey that we would like a teenager (ages 16-17) to answer about products they may have purchased. Is a teenager (ages 16-17) living in your household available to participate in this survey?
1. Yes, I will allow the 16-17-year-old teenager to participate in this survey with my supervision
2. No, I will not allow the 16-17-year-old teenager to participate in this survey **[SKIP TO PRE_INFO2]**
3. The 16-17-year-old teenager is not available to participate right now **[SKIP TO PRE_INFO2]**

**[PRE_INFO]** Please **only observe** the teenager between 16-17 years of age while they are completing the survey. Please have the teenager press to ">" to begin the survey.

S4TEEN. Before continuing with this survey, please carefully read these instructions:
• Please take this survey in one session.
• While taking this survey, please do not, at any time, open any other windows or tabs on this computer or device or any other computer or device.
• Please do not view any other written material while taking this survey.
• Please do not consult or talk with any person while taking this survey.
• You will not be able to go back to previous screens to change your answers.

1. I have read the above instructions and understand them, and I will adhere to these instructions.
2. I do not understand the above instructions, or I don't wish to agree to them. **[SCREEN OUT]**

**[PRE_INFO2]** Thank you. We are still interested in hearing about your opinions. To continue with the survey, click the ">" button.

S4.    Are you…?
1. Male
2. Female
3. Non-binary
4. Other
5. Prefer not to answer **[SCREEN OUT]**
**[ADULTS: TERMINATE IF GENDER DOES NOT MATCH PANEL DATA]**

**[IF TEENAGER (S3TEEN = 1 & S4TEEN=1), SKIP TO S6]**

S5.  Please select your age. **[PROVIDE DROP DOWN BOX WITH AGE – MUST BE 18 OR OLDER.]**
Prefer not to answer **[SCREEN OUT**]
**[TERMINATE IF AGE DOES NOT MATCH PANEL DATA]**

S6.  Please select from the following:
1. I currently live in the United States
2. I currently live outside of the United States **[SCREEN OUT]**
3. Prefer not to answer **[SCREEN OUT]**

S7.  In which state do you currently reside?
**[INSERT DROP DOWN BOX WITH STATE; US STATES AND DC ONLY; INCLUDE OPTION FOR "Outside the US" AND SCREENOUT IF SELECTED]**

S8.  Please enter your zip code.
**[SCREEN OUT IF STATE & ZIP DO NOT MATCH]**

S9.  In the <u>past month</u>, have you taken a survey on any of the following topics?
*(Select all that apply)* **[RANDOMIZE 1-6]**
1. Makeup **[SCREEN OUT]**
2. Sunscreen
3. Skin care products
4. Kitchen appliances
5. Women's clothing or accessories
6. Home cleaning products
7. None of these **[ANCHOR; EXCLUSIVE]**
8. Don't know / unsure **[ANCHOR; EXCLUSIVE; SCREEN OUT]**

S10.  Do you or do any members of your household work for any of the following?
*(Select all that apply)* **[RANDOMIZE 1-7]**
1. A market research or advertising company **[SCREEN OUT]**
2. A company that makes or sells cosmetics **[SCREEN OUT]**
3. A company that makes or sells sunscreen
4. A company that makes or manufactures clothing
5. A clothing retailer
6. A company that makes or manufactures skin care products
7. A home goods retailer
8. None of these **[ANCHOR; EXCLUSIVE]**
9. Don't know / unsure **[ANCHOR; EXCLUSIVE; SCREEN OUT]**

S11.  In the past 6 months, which of the following, if any, have you purchased? [**RANDOMIZE 1-12**] *(Select all that apply)*
1. Mascara
2. Eye liner
3. Sunscreen
4. Moisturizer
5. Bedding
6. Window treatment
7. Food processor
8. Slow cooker
9. Winter jacket
10. Athletic wear
11. Anti-aging face cream
12. Facial toner
13. None of these **[ANCHOR; EXCLUSIVE]**
14. Don't know / unsure **[ANCHOR; EXCLUSIVE; SCREENOUT]**

S12.  In the next 3 months, which of the following, if any, are you likely to purchase? **[DISPLAY IN SAME ORDER AS S11]** *(Select all that apply)*
1. Mascara
2. Eye liner
3. Sunscreen
4. Moisturizer
5. Bedding
6. Window treatment
7. Food processor
8. Slow cooker
9. Winter jacket
10. Athletic wear
11. Anti-aging face cream
12. Facial toner
13. None of these **[ANCHOR; EXCLUSIVE]**
14. Don't know / unsure **[ANCHOR; EXCLUSIVE]**

**[TO CONTINUE S11 OR S12 MUST = 1]**

S13. Approximately how many times each week, if at all, do you do each of the following? *(Select one response per row.)*

|  | Never or less than 1 time each week | 1 time each week | 2 times each week | 3 times each week | 4 times each week | 5 times each week | More than 5 times each week | Don't know / unsure |
|---|---|---|---|---|---|---|---|---|
| Engage in strenuous | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| activity for 30 minutes or more | | | | | | | | |
| Watch a full-length movie | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ |
| Please select [1-5] time[s] each week for this item | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ |
| Go out to eat in a restaurant | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ |
| Go to a bar or club | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ |

**[IF S13R3=RANDOM SELECTION, CONTINUE, ELSE SCREEN OUT]**

**[INTRO FOR MAIN QUESTIONNAIRE; NEW SCREEN]**

**[RANDOMIZE RESPONDENTS TO TEST OR CONTROL CELL]**

Thank you for participating in today's survey. If you do not know or do not have an opinion about any of the questions, please select "Don't know / unsure." Please do not guess. Click ">" to proceed.

**[NEXT PAGE]**

Next, you will see a video of a woman applying makeup. Please watch the video carefully. When you are ready, click the arrow to start the video. Once the video is complete, you may watch it again. If you are finished watching the video, please click ">" to advance the survey. *Please note the video does not have sound. If you wear contact lenses or eyeglasses, please put them on now.*

**[NEXT PAGE]**

The play button will appear once the file has buffered.
Click to play when you are ready.

**[SHOW VIDEO– AFTER COMPLETION INCLUDE REPLAY BUTTON WHICH ALLOWS RESPONDENT TO WATCH AGAIN – RECORD IF VIDEO SHOWN TWICE]**

7

**[TEST VIDEO]**    **[CONTROL VIDEO]**

 

**[SHOW ONE QUESTION PER PAGE]**

**Q1.** Were you able to see the video clearly? **[RANDOMIZE 1-2]**
1. Yes
2. No **[SCREEN OUT]**
3. Don't know / unsure **[ANCHOR] [SCREEN OUT]**

**Q2.** Please think back to what you observed in the video. Did you recognize any of the products shown in the video?
1. Yes
2. No **[SKIP TO END]**
3. Don't know / unsure **[SKIP TO END]**

**Q3.** What brand(s) did you notice? *(Please type in your response.)* **[INSERT 5 TEXT BOXES; REQUIRE AT LEAST ONE RESPONSE]**

**Q4.** You may have already mentioned this, but which of the following brands, if any, were shown in the video? *(Select all that apply.)* **[RANDOMIZE 1-12]**
1. Benefit
2. Maybelline
3. L'Oréal
4. e.l.f.
5. Dior
6. Urban Decay
7. MAC
8. Chanel
9. Lancome
10. CoverGirl
11. Revlon
12. Clinique
13. Some other brand *(Please specify)* _____
14. None of these **[ANCHOR; EXCLUSIVE; SKIP TO END]**
15. Don't know / no opinion **[ANCHOR; EXCLUSIVE; SKIP TO END]**

**Q4a.** Why do you say that? *(Please type in your response.)* **[TEXT BOX]**

**END:** Thank you for your participation. Those are all the questions we have today!