UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENEFIT COSMETICS LLC,<br><br>Plaintiff,<br><br>v.<br><br>E.L.F. COSMETICS, INC.,<br><br>Defendant. | Case No. 23-cv-00861-RS<br><br>**ORDER ON MOTIONS TO EXCLUDE, BENEFIT'S MOTION TO STRIKE, AND SEALING MOTIONS** |

## I. INTRODUCTION

In this trademark and trade dress infringement case, Plaintiff Benefit Cosmetics LLC ("Benefit") avers Defendant e.l.f. Cosmetics, Inc. ("e.l.f.") infringed on intellectual property associated with Benefit's Roller Lash mascara. Benefit and e.l.f. have filed cross-motions to exclude various expert witness opinions. Benefit has also filed a motion to strike allegedly improper deposition testimony from e.l.f.'s experts, documents not produced in fact discovery and related opinions, and theories of functionality not disclosed in fact discovery and corresponding opinions. Finally, the parties have filed several sealing motions. For the reasons below, e.l.f.'s motion to exclude is granted in part and denied in part, Benefit's motion to exclude is granted in part and denied in part, and Benefit's motion to strike is granted in part and denied in part. The sealing motions are addressed in further detail below.

## II. BACKGROUND

Benefit and e.l.f. are globally known cosmetics companies that sell competing mascaras: Benefit's "Roller Lash"-branded mascara, and accompanying "Hook 'N' Roll"-branded brush, and

e.l.f.'s "Lash 'N Roll"-branded mascara. Benefit avers it has been using these marks since at least 2015. In January 2023, Benefit became aware e.l.f. was selling mascara under e.l.f.'s Lash 'N Roll mark using, Benefit claims, Benefit's Roller Lash trade dress. Benefit notified e.l.f. of its registered trademark and common law trade dress rights and requested e.l.f. cease and desist from its alleged acts of infringement. Benefit filed suit when e.l.f. continued selling its Lash 'N Roll mascara. The case proceeded through a motion to dismiss and fact and expert discovery. A bench trial is scheduled to begin on August 26, 2024.

On June 13, 2024, the parties filed cross-motions to exclude various expert witness opinions. E.l.f. moved to exclude rebuttal opinions offered by Benefit expert Tim P. Fletcher, while Benefit moved to exclude opinions offered by e.l.f. experts Victoria Colby, Glenn May, and Sarah Butler. Benefit also moved to strike expert opinions and evidence it argues were disclosed after the close of fact discovery or otherwise constituted improper rebuttal. Oral argument was heard on these motions on July 18, 2024.

### III. MOTIONS TO EXCLUDE

#### A. Legal Standard

Rule 702 of the Federal Rules of Evidence requires that a witness proffered as an expert by a party be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Under the test laid out in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), expert opinion testimony is reliable if it has a "basis in the knowledge and experience of [the relevant] discipline." *Id.* at 592. The following factors, among others, are to be considered when evaluating whether an expert's proposed testimony is reliable: (1) "whether a theory or technique . . . can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) the known or potential error rate of the particular scientific theory or technique, and (4) the degree to which the scientific technique or theory is accepted in a relevant scientific community. *Id.* at 593–94; *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999) (*Daubert* factors are not exhaustive). "[T]he *Daubert* gatekeeping obligation is less pressing in connection with a bench trial." *Volk v. United States*, 57 F. Supp. 2d 888, 896 n.5 (N.D. Cal. 1999).

The proponent of an expert's opinions bears the burden of establishing their admissibility. *Lust ex rel. Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). Where a witness relies solely on experience as the basis for expertise, they must explain how their experience supports their conclusions. *See* Fed. R. Evid. 702 advisory committee's note to the 2000 amendments. Courts reviewing *Daubert* motions focus on the principles and methodology employed by the expert, not the conclusions the expert ultimately reaches. *See Daubert*, 509 U.S. at 595. As such, expert testimony may not be excluded simply because it is impeachable. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### B. E.l.f.'s Motion to Exclude

E.l.f. moves to exclude the opinions and testimony of Benefit's rebuttal expert, Tim P. Fletcher, on the grounds he has insufficient experience in the beauty industry, did not support his opinions with testing or data, spent little time on this case, and relied on discredited theories. First, E.l.f. claims Fletcher lacks sufficient experience to be "qualified to testify about beauty products or on consumer perception in the beauty industry." Dkt. 84-2, at 6. In e.l.f.'s telling, Fletcher is an industrial designer familiar with the design of consumer products for infants, exercise equipment, and other categories of goods unrelated to the beauty industry such that there is no basis for him to opine about "the beauty industry or cosmetic products." *Id.* at 8. E.l.f. contends Fletcher spent, by his own estimation, only a few hours perusing the parties' (and third-parties') websites to learn about consumers' online shopping experience.

Fletcher has more than 30 years of experience and two degrees in the design field and is the named inventor on a number of design and utility patents. He has served as an expert witness in cases involving a wide array of consumer products, including nail polish bottles.[1] To support

---

[1] Fletcher's experience with nail polish bottle design is particularly relevant given e.l.f.'s claim he has no experience in the beauty sector. Even if Fletcher did not have this experience, e.l.f. does not

the expert opinions he offers in this case, Fletcher performed both online research on a number of websites and in-person research at "two separate retailers that carry both Roller Lash and Lash 'N Roll, in which he observed how the products were sold from a consumer's perspective." Dkt. 95, at 9. Fletcher's in-person research in this case accords with his general practice of engaging in retail environment research to understand product design. All told, Fletcher has extensive experience in "product and packaging design for consumer products," and he is sufficiently qualified to apply that experience to the beauty industry. *Id.* at 11; *see Sumotext Corp. v. Zoove, Inc.*, No. 16-cv-1370, 2020 WL 533006, at *10 (N.D. Cal. Feb. 3, 2020) (permitting witness to apply broad expertise to products at issue). E.l.f. may challenge Fletcher on cross-examination to the degree it believes his experience with various consumer products does not translate to mascara products or to the beauty industry more generally.

 E.l.f. also objects to Fletcher's use of Gestalt Theory and Familiarity Theory in forming his opinions, claiming they are outdated, unreliable theories rejected by science and courts alike such that exclusion of opinions based on them is required. Gestalt Theory involves the perception of "whole objects or figures rather than isolated bits and pieces of sensory information." Dkt. 84-3, Rebuttal Expert Report of Tim P. Fletcher ¶ 34 (Mar. 29, 2024) ("Fletcher Report"). E.l.f. premises its argument that the scientific community has rejected Gestalt Theory on excerpts from two of the pieces of scholarship Fletcher cites but ignores a number of other publications upon which Fletcher relies. Fletcher's sources include discussion of how the theory's shortcomings have been addressed over time to ensure its continued reliability. Expert reliance on Gestalt Theory, furthermore, is not new. *See Delta T, LLC v. Dan's Fan City, LLC*, No. 8:19-cv-1731-VMC-SPF, 2021 WL 458022, at *6 (M.D. Fla. Feb. 9, 2021) (permitting testimony about Gestalt perception theory); *Oralabs, Inc. v. Kind Grp. LLC*, No. 13-cv-00170-PAB-KLM, 2015 WL 4694138, at *3 (D. Colo. Aug. 7, 2015) (permitting, provided adequate foundation, testimony about Gestalt

---

make a persuasive showing that design principles are nontransferable across consumer product sectors.

Theory in design context).² E.l.f.'s selective quotations from two of Fletcher's cited sources do not lead to the conclusion that the scientific community or courts have rejected the theory. Exclusion of Fletcher's opinions on this basis is unwarranted.

E.l.f. takes issue with Fletcher offering testimony or opinions based on Familiarity Theory because that theory "has not been tested on humans—only monkeys" and is, therefore, "*de facto* unreliable." Dkt 84-2, at 12, 13. Familiarity Theory involves the study of "how the brain recognizes objects, even if they are modified, and how quickly." Fletcher Report ¶ 41. Fletcher references the animal studies upon which Familiarity Theory is based in his report. As Benefit points out, "animal studies are not per se inadmissible and should be subjected to substantive analysis, just like other scientific evidence." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 842 (9th Cir. 2001). E.l.f.'s criticisms of the theory go to the weight, not admissibility, of Fletcher's opinions.

Nor does Fletcher unreliably apply either theory to this case. E.l.f. argues Fletcher should have *also* applied Common Region Theory³ to account for Gestalt Theory's failure "to account for contextual factors" because e.l.f. products and Benefit products are "brand blocked" (i.e., grouped together) in stores. Dkt. 84-2, at 13–14. Fletcher did, despite this criticism, look at relevant products in the context of their surrounding online and physical environments as part of his research. E.l.f. offers no authority to support its claim that Fletcher was *required* to apply Common Region Theory. E.l.f. further insists that Fletcher misapplied these theories by not deeming Roller Lash's diamond pattern on its cap or its "ribbed collar" "primary design element[s]." *Id.* at 15–16. To the extent Fletcher used his expertise to decide which design elements of the products he studied constituted primary design elements, e.l.f. may criticize those

---

² E.l.f. cites one case critical of Gestalt Theory but acknowledges that decision involved a party claiming an expert should be excluded for *their lack of experience* with Gestalt Theory. *See GeigTech East Bay LLC v. Lutron Elecs. Co.*, No. 18 Civ. 05290 (CM), 2023 WL 6614486 (S.D.N.Y. Sept. 20, 2023). This case is inapposite.

³ This theory involves "the tendency of elements that lie within the same bounded area or region to be grouped together." Dkt. 84-2, at 14.

1   decisions on cross-examination.

2         Finally, e.l.f. seeks exclusion of a number of Fletcher's opinions because he did not gather
3   empirical data (such as conducting experiments or interviewing consumers) to support his
4   conclusions. It is worth noting May and Colby, two of e.l.f.'s experts, also declined to conduct
5   surveys or otherwise collect data in support of their expert conclusions. The conclusions Fletcher
6   draws in his report rest on his application of Gestalt Theory and Familiarity Theory, his extensive
7   design experience, and his in-person and online research in this case. *See* Dkt. 95, at 19
8   (explaining Fletcher applies these theories only after considering "the exact environments in which
9   consumers encounter Benefit['s] and e.l.f.'s mascaras"). Experts are not required to support their
10  conclusions with empirical data, and e.l.f. points to no authority suggesting otherwise. *See Fujifilm*
11  *Corp. v. Motorola Mobility LLC*, No. 12–cv–03587, 2015 WL 1737951, at *3 (N.D. Cal. Apr. 8,
12  2015). Fletcher was entitled to apply his theories and experience to the facts of this case and draw
13  conclusions. E.l.f. can cross-examine Fletcher on his application of Gestalt Theory and Familiarity
14  Theory to discern the products' primary and secondary design elements to the extent it finds the
15  results of that method arbitrary. *See* Dkt. 102, at 8.

16        That said, some of Fletcher's opinions come close to constituting improper speculation.
17  Fletcher opines, for instance, about what a consumer can learn about a product by examining it for
18  a few minutes online versus in person. At trial, Fletcher—like other witnesses—will be permitted
19  to offer opinions only to the extent those opinions are grounded in his experience. E.l.f also
20  objects to Fletcher's opinions about differences between third-party products to which May and
21  Colby point in their own reports as evidence, for instance, that pink and black color schemes are
22  common in the mascara industry. To the extent Fletcher purports to, product by product, identify
23  physical differences between Roller Lash and the products May and Colby reference, such
24  testimony is excludable. *See* Fletcher Report ¶¶ 116–17. As explained below in addressing the
25  motion to exclude May and Colby's reports, an expert is not permitted to step into the factfinder's
26  shoes and compare products distinguishable by a layperson without adding some layer of
27  expertise. *See Lanard Toys Ltd. v. Anker Play Products, LLC*, No. CV 19-4350-RSWL-AFMx,
28

United States District Court
Northern District of California

2020 WL 6873647, at *6 (C.D. Cal. Nov. 12, 2020). Such testimony does not aid the trier of fact. E.l.f.'s motion to exclude Fletcher's opinions is granted in part and denied in part.

### C. Benefit's Motion to Exclude

Benefit moves to exclude opinions offered by three of e.l.f.'s experts: Victoria Colby, Glenn May, and Sarah Butler.

#### 1. Glenn May and Victoria Colby

##### a. Product comparisons and conclusions

Benefit seeks exclusion of May's and Colby's product comparisons and conclusions regarding consumers' likelihood of confusion and perception of Roller Lash and Lash 'N Roll. It argues that unlike Fletcher, who applied scientific theories to "opine[] on how a *consumer* would undertake the relevant comparisons," Dkt. 95, at 6, May and Colby impermissibly "usurp the role of the factfinder" when they compare the relevant products without applying expertise, Dkt. 79-2, at 10–11.

In particular, Benefit contends May and Colby simply compare the parties' mascara products and opine on their visually distinguishing characteristics. It cites (among other cases) *Lanard Toys Ltd.*, where the district court excluded trademark infringement and likelihood of confusion expert opinions where those opinions "stem[med] from [the expert's] personal observations of the products, which are within the province of the jury." 2020 WL 6873647, at *6. E.l.f. responds that May and Colby rely on their respective decades of experience dealing with cosmetics and personal care products packaging (May) and in branding and graphic design (Colby) to the extent they compare the products. Dkt. 94, at 2, 4. Such experience, broadly speaking, can provide an adequate foundation for expert testimony. *See Lucido v. Nestle Purina Petcare Co.*, 217 F. Supp. 3d 1098, 1102 (N.D. Cal. 2016); *but see GPNE Corp. v. Apple, Inc.*, No. 12-cv-2885, 2014 WL 1494247, at *4 (N.D. Cal. Apr. 16, 2014) (experience alone not always sufficient basis for expert testimony). The reliability of non-scientific testimony offered by an expert "depends heavily on the *knowledge and experience* of the expert" rather than *Daubert* factors meant to assess scientific testimony, such as error rate. *Hangarter v. Provident Life & Acc.*

*Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (citation omitted).

However, to the extent May and Colby offer opinions where they simply identify visually apparent differences between the mascara products and conclude those differences allow consumers to distinguish them, exclusion is appropriate. Such observations do not assist the trier of fact. *See, e.g.*, Dkt. 82-2, Expert Report of Victoria Colby (Mar. 1, 2024) ("Colby Report") ¶ 89 (comparing the products' fonts). On the other hand, where May and Colby offer opinions about how consumers distinguish between products that are rooted in their industry experience, exclusion is unwarranted. *See, e.g.*, *id.* ¶ 91 (opining on brand themes within industry). May and Colby are entitled to explain differences between the products that may affect consumers where their experience provides a basis for them to do so. Exclusion is appropriate as to opinions that, without more, note physical differences between the products.

Benefit also criticizes May and Colby for failing to perform "any consumer surveys" or speak to "a single consumer." Dkt. 79-2, at 13. Of course, Benefit's rebuttal expert, Fletcher, did not perform consumer surveys either. Though Benefit portrays e.l.f.'s experts' opinions as "speculative and unhelpful proxies" for how consumers might perceive the products, Fletcher also makes assumptions about how consumers would act and perceive products without gathering consumer data. Dkt. 79-2, at 13. The fact that May and Colby (and, for that matter, Fletcher) did not survey consumers bears on the weight of their testimony about consumer perception of Roller Lash and Lash 'N Roll.

Next, Benefit objects to May and Colby offering "conclusions regarding an ultimate issue in this case" namely, "the likelihood of confusion." Dkt. 79-2, at 12. Consumer confusion is the "*sine qua non* of trademark infringement," and a number of factors are relevant to assessing the likelihood of consumer confusion. *Network Automation, Inc. v. Adv. Sys. Concepts, Inc.*, 638 F.3d 1137, 1142 (9th Cir. 2011) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003)). The parties do not dispute an expert can testify about individual *Sleekcraft* factors, which include the:

> [1] strength of the mark; [2] proximity of the goods; [3] similarity of the marks; [4] evidence of actual confusion; [5] marketing channels used; [6] type of goods and the degree of care likely to be exercised by the purchaser; [7] defendant's intent in selecting the mark; and [8] likelihood of expansion of the product lines.

*Id.* at 1145 (citation omitted). Most of the statements to which Benefit points as improper conclusions include language about how elements of a product differentiate it from another product. See Dkt. 79-2, App'x A. Such statements (while potentially excludable for other reasons discussed above) appear to bear on the *Sleekcraft* factors, such as the similarity of the marks, without constituting improper conclusions about likelihood of confusion. On the other hand, May and Colby opine on likelihood of confusion in other places by using different words. *See, e.g.*, Colby Report ¶ 110 (opinion that customers will readily differentiate between products); May Report ¶ 22(H) (similar). Such statements go beyond mere analysis of confusion with respect to individual *Sleekcraft* factors. Exclusion of this latter sort of opinion is appropriate.

### b. Secondary meaning

Next, Benefit seeks exclusion of May's and Colby's opinions regarding secondary meaning and whether the claimed trade dress is widespread. Benefit argues that May and Colby base their opinions about the ubiquity of pink and black colors in comparable products on essentially no data and offer irrelevant conclusions about "pink and black branding" generally rather than the "*specific orientation* and *combination* of those colors" Benefit asserts. Dkt. 79-2, at 15. These expert opinions are relevant given Benefit's assertions related to its use of pink and black on its product. Benefit may cross-examine e.l.f.'s witnesses at trial about whether other products deploy pink and black color schemes in precisely the way Benefit does, but this argument does not justify exclusion. May and Colby are entitled to rely on their decades of industry experience in opining about common color schemes in beauty products. That said, May's and Colby's opinions occasionally veer into impermissibly speculative territory, such as Colby's unsupported assertion about what consumers remember and do not remember about color pairings. *See* Colby Report ¶ 65. There is a difference between opinions about color use predicated on industry experience generally and unsupported guesses about what consumers do and do not

remember. The latter will be excluded at trial.

Additionally, Benefit points to at least one instance where May appears to offer a legal conclusion. *See* Dkt. 82-3, Expert Report of Glenn May (Mar. 1, 2024) ¶ 136 ("[I]t would be anti-competitive for any single company or brand to claim that black and pink branding is proprietary and constitutes protectable trade dress."). Such legal conclusions are improper and will be excluded. Benefit's motion to exclude May's and Colby's opinions relating to secondary meaning, thus, is granted in part and denied in part.

### c. Level of sophistication and product "dupes"

Benefit also seeks exclusion of Colby's opinions relating to consumers' level of sophistication because, it asserts, they are based on five articles from questionable online sources and reliant on underlying data and studies with which Colby is unfamiliar. Indeed, though Colby cites these articles as sources of empirical data about the "savviness" or "sophistication" of beauty consumers in the United States, she appears to be relying on "cherry-picked articles summarizing surveys she did not conduct" and otherwise did not interrogate for accuracy. Dkt. 79-2, at 20; *see Koger v. Costco Wholesale Corp.*, No. 20-cv-8759, 2023 WL 8188842, at *2 (N.D. Cal. Nov. 27, 2023) (excluding expert's recitation of reports absent interrogation of underlying data or methodologies). Benefit's motion to exclude Colby's opinions on beauty consumers' level of sophistication is granted to the extent Colby relies on these articles as sources of empirical data. That said, Colby will not be precluded from testifying at trial about consumers' sophistication where such testimony is based on her industry experience.

Colby's opinions about the presence and function of "dupes" in the beauty industry in general are also appropriate to the extent her opinions are based on her industry experience. The term "dupe" is one that appears to have specific meaning in the beauty industry. Colby may testify generally about what "dupes" are and the role they play in the beauty industry. That said, several of Colby's opinions about dupes are speculative. *See, e.g.*, Dkt. 82-1 ¶ 55 (regarding dupes, "the consumer is acutely aware that they are purchasing an alternative product from a different company at a lower price point" and "there is no misunderstanding as to what the consumer is

buying"). Such statements are unsupported generalizations about what consumers know, and the data to which Colby points in support of these opinions are of questionable reliability. *See* Dkt. 79-2, at 22 (referencing, for instance, the number of views of dupe-related hashtags on TikTok and drawing inferences from this data). Benefit's motion to exclude is granted as to Colby's opinions that go beyond what her experience can support and speculate about what consumers necessarily know (or do not know) about dupes and the legality of dupes. Further, exclusion of Colby's references to statistics about dupes is warranted.

### 2. Sarah Butler's Post-Sale Survey Opinions

Butler conducted a post-sale survey in which participants watched a video and then were asked whether they recognized any of the products depicted in the video. Benefit seeks exclusion of Butler's post-sale survey opinions as irrelevant because Benefit does not allege post-sale confusion. Benefit further criticizes this survey as unreliable because it "only tests whether consumers would recognize product brand names post-sale, instead of testing for confusion as to source, sponsorship, or association." Dkt. 79-2, at 24. E.l.f., for its part, acknowledged at oral argument that Benefit is not currently pursuing a post-sale confusion theory. E.l.f. does not offer any other basis for the relevancy of the post-sale survey besides this possibility that Benefit will pursue such a theory. Given the parties' representations that Benefit is not alleging post-sale confusion in this case, Benefit's motion to exclude is granted as to Butler's post-sale survey.

### IV. BENEFIT'S MOTION TO STRIKE

Benefit moves to strike what it alleges are e.l.f.'s improper redirect deposition examinations of its experts May and Abel Teshome, a spreadsheet offered alongside Teshome's redirect examination, cost-related documents attached to Teshome's expert report not produced in fact discovery and Teshome's related opinions, and the theories of functionality and related expert opinions e.l.f. did not disclose during fact discovery.

Federal Rule of Civil Procedure 26 governs the disclosure of expert testimony, requiring that parties make disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Parties are obligated to supplement expert disclosures upon learning "that in some

1  material respect the disclosure or response is incomplete or incorrect. Fed. R. Civ. P. 26(e)(1)(A).

2  Rule 37 forbids the use of information a party failed to disclose pursuant to Rule 26(a) "unless the

3  failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Factors relevant to

4  determining whether a failure to disclose was justified or harmless include "(1) prejudice or

5  surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the

6  prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in

7  not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th

8  Cir. 2010).

### A. May's Sur-Rebuttal Testimony

The relevant scheduling order for this case contemplated initial expert disclosures to be followed by rebuttal expert disclosures. A stipulation by the parties and entered by the Court in March 2024 acknowledged the parties had not agreed to allow sur-rebuttal reports to address the other party's rebuttal opinions. *See* Dkt. 71. Thus, Benefit claims, e.l.f.'s subsequent decision to use two of its experts—May and Teshome—to offer sur-replies to Benefit's experts' rebuttal opinions was improper and prejudicial.

May's testimony on re-direct concerning his views of Gestalt Theory and Familiarity Theory went beyond mere supplementation or explanation of his initial report. *See Edwards Lifesciences Corp. v. Meril Life Sciences Pvt. Ltd.*, No. 19-cv-6593, 2022 WL 254348, at *7 (N.D. Cal. Jan. 27, 2022) ("subsequently-given deposition testimony is not a substitute for adequate disclosure in the expert's original report" (citation omitted)). E.l.f.'s argument that Benefit had the opportunity to cross-examine May at his deposition does not address the fact Benefit did not know May would be offering sur-rebuttal opinions until he did so. As a matter of fairness, Benefit should not, as e.l.f. suggests, have had to re-open an expert's deposition at a later date in order to question that expert on their new sur-rebuttal opinions.

That said, prejudice to Benefit is limited by Benefit's ability to cross-examine May on his criticisms of Fletcher's rebuttal report at trial. *See also Contour IP Holding v. GoPro, Inc., LLC*, No. 17-cv-4738, 2021 WL 75666, at *4 (N.D. Cal. Jan. 8, 2021) (permitting rebuttal information

elicited in deposition to be testified to at trial solely to the extent it served as rebuttal evidence). Part of the basis for May's sur-rebuttal testimony are the very sources Fletcher cites in his rebuttal report. May will be permitted at trial to respond to Fletcher's criticisms of his report to the extent he seeks to rebut those specific criticisms, but to avoid prejudice to Benefit, will not be permitted to offer such testimony outside the rebuttal context. For instance, May is precluded from rebutting Fletcher's report by criticizing Fletcher's experience or qualifications.

### B. Teshome's Sur-Rebuttal Testimony

Benefit's damages expert, John Hansen, provided a rebuttal report critiquing Teshome's report about costs and apportionment. In particular, Hansen criticized Teshome's decision to use a 12-month time frame in his analysis and argued the entire 15-month time frame during which e.l.f.'s product was sold was a more appropriate baseline. Benefit argues Teshome had no right to respond to this rebuttal report but nevertheless did so on re-direct examination. On cross, Teshome was asked why did not use a longer time frame in his analysis. Teshome answered, in part, that using a longer time period would have raised a potential issue that he had not referenced in his report. Then, on re-direct examination, Teshome offered a fuller explanation of that newly-expressed justification. It was improper for e.l.f. to seek to add this new theory to Teshome's opinions on re-direct examination. *See also City & County of San Francisco v. Purdue Pharma L.P.*, No. 18-cv-7951, 2022 WL 1203075, at *2 (N.D. Cal. Apr. 22, 2022) ("Using a rebuttal report as a backdoor to introduce analysis that could have been included in the opening report is squarely foreclosed by Rule 26."). E.l.f.'s contention Benefit "opened the door" to this testimony does not persuade where Teshome could have offered, on cross, the reason presented in his report rather than a new explanation and Hansen did not raise the subject of the new testimony in his report.

Defense counsel also marked new exhibits to support Teshome's new testimony, including a spreadsheet with calculations that Teshome created after Hansen's deposition but that was not disclosed to Benefit before the deposition. Teshome's new analysis and spreadsheet go beyond mere supplementation of his initial report, and Benefit was prejudiced by being forced to respond

to this new theory and evidence, on the fly, at Teshome's deposition. Benefit was not required to "hold open Mr. Teshome's deposition" or "ask e.l.f. or the Court to make him available for another deposition." *See* Dkt. 96-3, at 12. Benefit's motion to strike this testimony and the supportive spreadsheet is granted.

**C. Cost Documents**

Benefit also seeks to strike cost documents disclosed for the first time in Teshome's expert report after fact discovery had closed. These documents ostensibly relate to e.l.f.'s marketing expenses relating to a photoshoot and sampling campaign. Benefit argues e.l.f.'s late disclosure of these documents caused it prejudice because Benefit had already conducted three fact depositions of Defendant's witnesses about e.l.f.'s marketing expenses without knowledge of these documents that should have been produced in response to Benefit's discovery requests. Benefit had no ability to investigate the cost materials in order to determine "how they relate to the accused product." Dkt. 80, at 14.

Pursuant to Rule 37(c)(1), where a party fails to provide required discovery information, it is "not allowed to use that information . . . to supply evidence on a motion, at a hearing, or a trial, unless the failure was substantially justified or is harmless." E.l.f. admits it produced documentation for only "90% of its marketing expenses during fact discovery" and does not appear to dispute the challenged documents should also have been disclosed during fact discovery. Dkt. 96-3, at 14. E.l.f. justifies its late disclosure of additional marketing expenses on the grounds these cost documents were only identified as part of Teshome's preparation of his expert report. That Teshome identified these documents while preparing his report does not mean they were unavailable in an easily producible format during fact discovery. *Cf. Tortilla Factory, LLC v. GT's Living Foods, Inc.*, No. CV 17-7539 FMO (GJSx), 2022 WL 3134458, at *2 (C.D. Cal. June 9, 2022) (declining to exclude cost information where it did not exist in an easily producible format before expert discovery). Rather, their late disclosure deprived Benefit of a full opportunity to investigate the invoices. Though some of the materials appear self-explanatory, in part because they reference a marketing project for the Lash 'N Roll, others are not. *See* Dkt. 96-3, at 16

(referencing Uber receipts). Benefit, even assuming the documents in Appendices C and D are identifiable, had no opportunity to question fact witnesses about them. Benefit's argument that it is prejudiced by this late disclosure is persuasive; to the extent Teshome's opinions rely on the challenged cost documents, Benefit's motion to strike is granted.

**D. Functionality Theories**

Lastly, Benefit seeks to strike e.l.f.'s theories relating to the functionality of the Roller Lash trade dress along with May's and Colby's opinions regarding those theories on the grounds they should have been, but were not, disclosed in fact discovery. Benefit claims prejudice because it was not able to investigate these late-disclosed theories in fact discovery.

"A rule that an accused infringer may wait until its expert rebuttal report to set forth theories of non-infringement for the first time would forfeit the benefits of contention interrogatories." *Asia Vital Components Co. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1003 (N.D. Cal. 2019).[4] Though e.l.f. contends Benefit's interrogatory did not specifically request e.l.f.'s *theories* of functionality, this is a semantic argument undercut by e.l.f.'s response to that interrogatory by arguing the product's color scheme was aesthetically functional. *See* Dkt. 80, at 15. E.l.f.'s disclosure of additional functionality opinions in May's and Colby's expert reports was clearly late, and Benefit was deprived of an opportunity to conduct *fact discovery* into those additional theories of functionality. E.l.f.'s argument that it objected to the interrogatory and thus had no obligation to respond further is contradicted by its willingness to respond, initially, with one of its theories of functionality. E.l.f.'s arguments that some of its additional functionality theories were hinted at in fact depositions do not persuade that relief to Benefit is unwarranted.

The remaining question, then, relates to remedy. E.l.f. asserts that exclusion of these theories and expert opinions referencing them would be too drastic a sanction where Benefit could have raised these issues months earlier and mitigated its prejudice then. Though Benefit objects to e.l.f.'s proposed remedy of further expert discovery and depositions on the basis that this would

---

[4] Here, the expert report is an opening (rather than rebuttal) report.

1  make depositions "endless," it does not otherwise explain why it would be prejudiced by such an

2  outcome. Dkt. 100, at 15. Benefit will be entitled to conduct up to two additional depositions—

3  with associated costs and fees to be borne by e.l.f.—in order to mitigate the prejudice caused by

4  e.l.f.'s late disclosure of additional functionality arguments. These depositions (if conducted)

5  should take place within 14 days of this order so as not to delay trial.

## V. SEALING MOTIONS

7  The parties have filed several sealing motions in this case.

**Dkt. 79**

9  Benefit filed an administrative motion to consider whether materials e.l.f. designated as

10 confidential should be sealed. This motion includes Benefit's motion to exclude and attached

11 exhibits, *see* Dkt. 79, as well as its motion to strike and attached exhibits, *see* Dkt. 80. Counsel for

12 e.l.f. subsequently filed a declaration seeking an order sealing those materials on the grounds they

13 constitute sensitive business information. Benefit argues this submission was deficient because it

14 references the underlying protective order in this case and refers in general terms to the potentially

15 sealable material as sensitive business information.

16 E.l.f.'s sealing request is overbroad. For instance, E.l.f. seeks to seal entire deposition

17 transcript excerpts without regard to non-business sensitive information contained in those

18 excerpts, as well as other non-sensitive information. *See, e.g.*, Dkt. 79-15; Dkt. 79-2, at 14;

19 Dkt. 80, at 8, 13, Dkt. 80-2. As detailed below, e.l.f. is directed to file more limited sealing

20 requests within 14 days of this order.

**Dkt. 84**

22 E.l.f. filed an administrative motion to consider whether Benefit's materials should be

23 sealed. Benefit has since responded that none of the information to which e.l.f. refers to in its

24 sealing motion is confidential. E.l.f. is directed to file its motion to exclude, as well as the attached

25 expert report and deposition transcript, on the public docket without redactions within seven days

26 of the date of this order.

**Dkt. 96**

E.l.f. has filed an administrative motion to file portions of its opposition to Benefit's motion to exclude, as well as of accompanying exhibits, under seal. As before, e.l.f.'s sealing requests are overbroad. *See, e.g.*, Dkt. 96-3, at 5 n.1, 8, 11; Dkt. 96-8; Dkt. 96-9. As detailed below, e.l.f. is directed to file more limited sealing requests within 14 days of this order.

**Dkt. 98**

E.l.f. filed an administrative motion to consider whether Benefit's materials should be sealed. Benefit is directed to respond to e.l.f.'s motion and indicate the material it wishes to keep under seal within seven days of the date of this order.

## VI. CONCLUSION

E.l.f.'s motion to exclude is granted in part and denied in part, and Benefit's motion to exclude is granted in part and denied in part. Benefit's motion to strike is granted in part and denied in part. Benefit will be entitled to conduct up to two additional depositions, with associated costs and fees to be borne by e.l.f., in order to mitigate the prejudice caused by e.l.f.'s late disclosure of its additional functionality arguments.

Regarding sealing motions, e.l.f. is directed to file its renewed sealing requests in a single omnibus sealing motion within 14 days of this order. This motion should respond to Benefit's sealing motion (Dkt. 79) and identify, with particularity, only that information which is properly subject to sealing, and the specific reason for sealing that information. E.l.f. is further directed to propose more narrowly tailored sealing requests than those currently contained within e.l.f.'s opposition to Benefit's motion to exclude and attached exhibits (Dkt. 96). Second, e.l.f. is directed to file its motion to exclude (Dkt. 84), as well as the attached expert report and deposition transcript, on the public docket without redactions within seven days of this order. Third, Benefit is directed to respond to e.l.f.'s sealing motion in its current form (Dkt. 98) and identify material it designated as confidential (if any) and that it wishes to keep under seal with seven days of this order.

**IT IS SO ORDERED**.

Dated: July 25, 2024

_____
RICHARD SEEBORG
Chief United States District Judge