Seth B. Herring (SBN 253907)
Email: sherring@reedsmith.com
Adaline J. Hilgard (SBN 173213)
Email: ahilgard@reedsmith.com
Quynh La (SBN 341162)
Email: qla@reedsmith.com
REED SMITH LLP
101 Second St., Suite 1800
San Francisco, CA 94105
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

Attorneys for Plaintiff,
BENEFIT COSMETICS LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| BENEFIT COSMETICS LLC, | Case No. 3:23-cv-00861-RS |
| Plaintiff, | **PLAINTIFF BENEFIT COSMETICS LLC'S TRIAL BRIEF** |
| v. | |
| E.L.F. COSMETICS, INC. | Judge: Hon. Richard Seeborg |
| | Courtroom: 3 |
| Defendant. | Trial Date: Aug. 26, 2024 |
| | **REDACTED** |

*REED SMITH LLP*
*A limited liability partnership formed in the State of Delaware*

## TABLE OF CONTENTS

**Page**

I.   FACTUAL BACKGROUND ...................................................................................... 1

   A.   Benefit and Roller Lash Mascara ............................................................... 1

   B.   e.l.f. and its Lash 'N Roll Mascara Product ................................................ 2

   C.   Benefit Files Suit Against e.l.f. .................................................................. 4

II.   LEGAL DISCUSSION ........................................................................................... 5

   A.   e.l.f.'s LASH 'N ROLL Mark Infringes Benefit's ROLLER LASH and HOOK 'N' ROLL Trademarks. .................................................................. 5

      1.   Benefit's ROLLER LASH and LASH 'N ROLL Marks Are Valid and Enforceable. .................................................................................. 5

      2.   There is a Likelihood of Confusion Between the Parties' Marks. ................... 6

         (a)   Benefit's Asserted Trademarks Are Strong. ..................................... 7

         (b)   The Parties' Goods Are the Same. ................................................... 9

         (c)   e.l.f.'s LASH 'N ROLL Mark is Substantially Similar to Benefit's ROLLER LASH and HOOK 'N' ROLL Marks. ................. 9

         (d)   Factors Two and Three Give Rise to an Inference of Actual Confusion. ................................................................................ 11

         (e)   The Parties' Marketing Channels Directly Overlap ........................ 12

         (f)   The Degree of Purchaser Care is Low. .......................................... 13

         (g)   e.l.f. Intentionally and Methodically Copied Benefit's Trademarks. ............................................................................ 14

         (h)   The Likelihood of Expansion of Product Lines Factor Is Neutral. ................................................................................... 16

   B.   e.l.f.'s Lash 'N Roll Mascara Infringes Benefit's Roller Lash Trade Dress ............. 16

      1.   The Roller Lash Trade Dress Is Valid and Protectable ................................ 17

         (a)   The Roller Lash Trade Dress Is Inherently Distinctive .................... 17

         (b)   The Roller Lash Trade Dress Has Acquired Distinctiveness Through Secondary Meaning ...................................................... 19

         (c)   The Roller Lash Trade Dress is Not Generic .................................. 21

         (d)   The Roller Lash Trade Dress Is Nonfunctional .............................. 22

      2.   There is a Likelihood of Confusion Between the Parties' Trade Dress. ............. 24

         (a)   The Roller Lash Trade Dress is Strong. .......................................... 25

         (b)   The Parties' Goods Are the Same. ................................................. 26

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(c)     e.l.f.'s Lash 'N Roll Trade Dress is Substantially Similar to Benefit's Roller Lash Trade Dress............................................... 26

(d)     Factors Two and Three Give Rise to an Inference of Actual Confusion. ..................................................................................... 27

(e)     The Parties' Marketing Channels Directly Overlap.......................... 27

(f)     The Degree of Purchaser Care is Low. .............................................. 27

(g)     e.l.f. Intentionally and Methodically Copied Benefit's Trade Dress. ................................................................................................ 27

(h)     The Likelihood of Expansion of Product Lines Factor Is Neutral............................................................................................... 27

C.     Benefit is Entitled to Injunctive Relief ...................................................... 28

D.     Benefit Is Entitled to Disgorgement of Defendant's Profits ....................... 29

III.     CONCLUSION........................................................................................................ 30

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

PLAINTIFF BENEFIT COSMETICS LLC'S TRIAL BRIEF

**TABLE OF AUTHORITIES**

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**Page(s)**

**Cases**

*Aktiengesellchaft v. Knorr Sols., Inc.*,
   No. CV 10-08155 GAF, 2012 U.S. Dist. LEXIS 199995 (C.D. Cal. Apr. 5, 2012)..........11, 27

*Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*,
   No. 18-CV-06663-TSH, 2019 U.S. Dist. LEXIS 63616 (N.D. Cal. Apr. 12, 2019) ................6

*Am., Inc. v. Skechers United States*,
   No. 3:15-cv-01741-HZ, 2017 U.S. Dist. LEXIS 122459
   (D. Or. Aug. 3, 2017) .......................................................................................21, 22, 23, 24

*AMF, Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979) ........................................................................................ *passim*

*Anhing Corp. v. Thuan Phong Co.*,
   No. CV 13-05167 BRO, 2014 U.S. Dist. LEXIS 186739 (C.D. Cal. Oct. 24, 2014).............15

*ATS Logistics Servs. v. Gregory*,
   No. 04-3975, 2004 U.S. Dist. LEXIS 25556 (D. Minn. Dec. 17, 2004)...............................10

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
   457 F.3d 1062 (9th Cir. 2006) ...........................................................................................22

*Blumenthal Distrib., Inc. v. Herman Miller*,
   963 F.3d 859 (9th Cir. 2020) ............................................................................................23

*Boost Beauty, LLC v. Woo Signatures, LLC*,
   No. 2:18-cv-02960-CAS-Ex, 2022 U.S. Dist. LEXIS 24515 (C.D. Cal. Feb. 7,
   2022) ..............................................................................................................................13

*Brookfield Communs., Inc. v. W. Coast Ent. Corp.*,
   174 F.3d 1036 (9th Cir. 1999) ...............................................................................7, 11, 14

*Century 21 Real Estate LLC v. Ed/Var Inc.*,
   No. 5:13-cv-00887 EJD, 2014 U.S. Dist. LEXIS 94672 (N.D. Cal. July 10, 2014) ..............28

*Charles Schwab & Co. v. Hibernia Bank*,
   665 F. Supp. 800 (N.D. Cal. 1987) .................................................................................8, 25

*Chicago's Pizza Inc. v. KSM Pizza, Inc.*,
   No. 2:19-cv-02373-DJC-CKD, 2024 U.S. Dist. LEXIS 8567 (E.D. Cal. Jan. 17,
   2024) ..............................................................................................................................14

*Clamp Mfg. Co. v. Enco Mfg. Co.*,
   870 F.2d 512 (9th Cir. 1989) ...........................................................................................19

PLAINTIFF BENEFIT COSMETICS LLC'S TRIAL BRIEF

*Cleary v. News Corp. Corp.*,
    30 F.3d 1255 (9th Cir. 1994) ..................................................................................5, 16

*Clicks Billiards, Inc. v. Sixshooters Inc.*,
    251 F.3d 1252 (9th Cir. 2001) ................................................................... *passim*

*CytoSport, Inc. v. Vital Pharms., Inc.*,
    617 F. Supp. 2d 1051 (E.D. Cal. 2009)........................................................8, 11, 27

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
    109 F.3d 1394 (9th Cir. 1997) ..........................................................................7, 12

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
    967 F.2d 1280 (9th Cir. 1992) ............................................................................5, 9

*E. & J. Gallo Winery v. Gallo Nero*,
    782 F. Supp. 457 (N.D. Cal. 1991) .........................................................................13

*Entrepreneur Media, Inc. v. Smith*,
    279 F.3d 1135 (9th Cir. 2002) ...............................................................7, 9, 14, 15

*Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*,
    741 F. Supp. 2d 1165 (C.D. Cal. 2010) ..................................................................18

*Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*,
    198 F.3d 1143 (9th Cir. 1999) ..................................................................................5

*First Brands Corp. v. Fred Meyer, Inc.*,
    809 F.2d 1378 (9th Cir. 1987) ................................................................................20

*Fitness Anywhere LLC v. Woss Enters. LLC*,
    No. 14-cv-01725-BLF, 2018 U.S. Dist. LEXIS 198095 (N.D. Cal. Nov. 20, 2018)..............30

*Fly v. Dollar Park & Fly*,
    469 U.S. 189 (1985)..................................................................................................6

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
    826 F.2d 837 (9th Cir. 1987) .....................................................................15, 23, 24

*Glam & Glits Nail Design, Inc. v. iGel Beauty, LLC*,
    No. SACV 20-88 JVS (DFMx), 2022 U.S. Dist. LEXIS 137002 (C.D. Cal. June
    24, 2022) ..................................................................................................................6

*Glow Indus. v. Lopez*,
    252 F. Supp. 2d 962 (C.D. Cal. 2002) ....................................................................14

*GoTo.com, Inc. v. Walt Disney Co.*,
    202 F.3d 1199 (9th Cir. 2000) ......................................................................7, 9, 10

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

PLAINTIFF BENEFIT COSMETICS LLC'S TRIAL BRIEF

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Harman Int'l Indus., Inc. v. Jem Access., Inc.*,
   668 F. Supp. 3d 1025 (C.D. Cal. 2023) ............................................................8

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
   456 U.S. 844 (1982) ..............................................................................19

*Jason Scott Collection, Inc. v. Trendily Furniture, LLC*,
   68 F.4th 1203 (9th Cir. 2023) ............................................................6, 20

*Levi Strauss & Co. v. Blue Bell, Inc.*,
   778 F.2d 1352 (9th Cir. 1985) ............................................................19

*Lindy Pen Co. v. Bic Pen Corp.*,
   982 F.2d 1400 (9th Cir. 1993), abrogated on other grounds by *SunEarth, Inc. v.*
   *Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016) ..................................29

*Lolicel (PTY) Ltd. v. Stanmar Int'l (USA) Inc.*,
   No. 22cv926-LL-BGS, 2023 U.S. Dist. LEXIS 73926 (S.D. Cal. Apr. 27, 2023) ..............17

*Mattel, Inc. v. MGA Entm't, Inc.*,
   782 F. Supp. 2d 911 (C.D. Cal. 2010) ............................................................17

*Millennium Labs. v. Ameritox, Ltd.*,
   817 F.3d 1123 (9th Cir. 2016) ............................................................22

*Moroccanoil, Inc. v. Marc Anthony Cosmetics, Inc.*,
   57 F. Supp. 3d 1203 (C.D. Cal. 2014) ............................................................18, 25

*Moroccanoil, Inc. v. Moroccan Gold, LLC*,
   590 F. Supp. 2d 1271 (C.D. Cal. 2008) ............................................................14

*Morton & Bassett, LLC v. Organic Spices, Inc.*,
   No. 15-cv-01849-HSG, 2017 U.S. Dist. LEXIS 137176 (N.D. Cal. Aug. 25, 2017) ..............18

*Nat'l Lead Co. v. Dannenfelser*,
   223 F.2d 195 (9th Cir. 1955) ............................................................20, 25

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
   638 F.3d 1137 (9th Cir. 2011) ............................................................5, 16

*Nutri/System, Inc. v. Con-Stan Indus., Inc.*,
   809 F.2d 601 (9th Cir. 1987) ............................................................12

*P & P Imps. LLC v. Johnson Enters., LLC*,
   46 F.4th 953 (9th Cir. 2022) ............................................................6

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
   782 F.2d 1508 (9th Cir. 1986) ............................................................11

*Playboy Enters. v. Netscape Communs. Corp.*,
    354 F.3d 1020 (9th Cir. 2004) ...................................................................................14

*Pom Wonderful LLC v. Hubbard*,
    775 F.3d 1118 (9th Cir. 2014) ......................................................................................5

*Quia Corp. v. Mattel, Inc.*,
    No. C 10-1902 JF (HRL), 2011 U.S. Dist. LEXIS 76157 (N.D. Cal. July 14,
    2011) ...........................................................................................................................29

*Rearden LLC v. Rearden Commerce, Inc.*,
    683 F.3d 1190 (9th Cir. 2012) ......................................................................................6

*Rebelution, LLC v. Perez*,
    732 F. Supp. 2d 883 (N.D. Cal. 2010) .........................................................................25

*Romag Fasteners, Inc. v. Fossil Grp., Inc.*,
    590 U.S. 212 (2020) .....................................................................................................29

*San Diego Comic Convention v. Dan Farr Prods.*,
    336 F. Supp. 3d 1172 (S.D. Cal. 2018)..........................................................................7

*Sas v. Sawabeh Info. Servs. Co.*,
    No. CV 11-04147 GAF, 2013 U.S. Dist. LEXIS 195115 (C.D. Cal. Dec. 6, 2013) .........11, 27

*SEC v. JT Wallenbrock & Assocs.*,
    440 F.3d 1109 (9th Cir. 2006) ....................................................................................29

*Stephen W. Boney, Inc. v. Boney Servs.*,
    127 F.3d 821 (9th Cir. 1997) .......................................................................................17

*Sun Microsystems, Inc. v. Microsoft Corp.*,
    999 F. Supp. 1301 (N.D. Cal. 1998) ............................................................................28

*Sunburst Prods., Inc. v. Derrick Law Co.*,
    1991 U.S. App. LEXIS 352 (9th Cir. Jan. 9, 1991)......................................................20

*Tex. Tech Univ. v. Spiegelberg*,
    461 F. Supp. 2d 510 (N.D. Tex. 2006) .........................................................................23

*TrafFix Devices, Inc. v. Mktg. Displays*,
    532 U.S. 23 (2001).......................................................................................................22

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992).....................................................................................................19

*United States v. Cal. State Bd. of Equalization*,
    650 F.2d 1127 (9th Cir. 1981) .....................................................................................30

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

*Vision Sports, Inc. v. Melville Corp.*,
   888 F.2d 609 (9th Cir. 1989) ...................................................................16, 17, 25

*Wal-Mart Stores v. Samara Bros.*,
   529 U.S. 205, 120 S. Ct. 1339 (2000).................................................................17

*Wrenn v. BSA*,
   No. C 03-04057 JSW, 2008 U.S. Dist. LEXIS 91913 (N.D. Cal. Oct. 28, 2008) ..................15

*Young v. 3.1 Phillip Lim, LLC*,
   No. SA CV 16-1556-DOC, 2016 U.S. Dist. LEXIS 158931 (C.D. Cal. Nov. 16,
   2016) ..............................................................................................7

**Statutes**

15 U.S.C. § 1114....................................................................................4, 5

15 U.S.C. § 1115.......................................................................................5

15 U.S.C. § 1116......................................................................................28

15 U.S.C. § 1117......................................................................................29

15 U.S.C. § 1125..........................................................................4, 5, 6, 16

28 U.S.C. § 1961......................................................................................30

Cal. Bus. & Prof. Code §17200...................................................................4, 5, 16

**Other Authorities**

3 McCarthy on Trademarks and Unfair Competition § 23:8 (5th ed.) .......................6, 7

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

This is an infringement case involving nearly identical marks and trade dress and competing products marketed and sold through the same channels to the same consumers. It is also a case of blatant and intentional copying carried out for the purpose—and result—of increasing sales. The evidence at trial will show that Defendant e.l.f. Cosmetics, Inc. ("e.l.f." or "Defendant") copied Plaintiff Benefit Cosmetics LLC's ("Benefit") well-known trademarks and trade dress in a calculated effort to trade on Benefit's goodwill. Benefit will establish that e.l.f. has infringed Benefit's trademark and trade dress rights associated with its Roller Lash mascara, necessitating an injunction to prevent further irreparable harm and justifying the disgorgement of e.l.f.'s profits unlawfully realized through the sales of its copy product, Lash 'N Roll mascara.

## I.    FACTUAL BACKGROUND

### A.    Benefit and Roller Lash Mascara

For over 50 years, Plaintiff Benefit Cosmetics LLC ("Benefit"), headquartered in San Francisco, has been an innovator of cosmetics. Through its quality products, creative packaging and effective marketing efforts, Benefit has become one of the largest makeup and beauty companies, designing, manufacturing, and selling a wide variety of cosmetic products sold throughout the U.S. and in over 55 countries.

Over the course of three years starting in early 2012, Benefit thoughtfully designed and developed from scratch a new curling mascara branded ROLLER LASH ("the Roller Lash mascara"), including by creating a new formula for the mascara, designing unique packaging in which the product is sold, innovating a new mascara brush branded HOOK 'N' ROLL to be used with the mascara, and crafting the advertising and marketing materials and strategies that, over the course of nine years since the mascara's launch, has helped it to reach best-seller and award-winning status. As with its other products, Benefit designed the primary packaging for its Roller Lash mascara—*i.e.*, the mascara tube—to be unique and stand out in the marketplace. The primary packing consists of a mascara tube with a pink top, black base, and lettering on the black base that matches the color of the top (the "Roller Lash Trade Dress"):

REED SMITH LLP
A limited liability partnership formed in the State of Delaware



Shortly after launching the Roller Lash mascara in 2015, Benefit obtained federal registrations for its trademarks. The ROLLER LASH trademark is registered with the United States Patent and Trademark office (USPTO) under Registration No. 4752213, and has been registered since June 09, 2015, for "mascara; cosmetics." The HOOK 'N' ROLL trademark is registered with the USPTO under Registration No. 4796514, and has been registered since August 18, 2015, for "a makeup applicator sold as a component of cosmetics." Both the ROLLER LASH and HOOK 'N' ROLL trademarks have attained incontestable status.[1]

Benefit's trademarks and the Roller Lash Trade Dress was as unique when they were initially conceived as they are now. Current mascara offerings on retailer and competitor websites reveals no widespread third-party use of a similar name or the Roller Lash Trade Dress.

**B.**    **e.l.f. and its Lash 'N Roll Mascara Product**

e.l.f., founded in 2004, is also a makeup and beauty company but unlike Benefit, it specializes in the practice of "duping," or creating products that have a function substantially similar to other products and selling those products at a lower price. This case, however, addresses an e.l.f. product that was made not only to mimic the *function* of Benefit's successful Roller Lash mascara, but to also look, sound, and appear like the Roller Lash mascara so as to cause consumers to instantly think of Roller Lash when seeing Lash 'N Roll. In a sense, this is a dupe *plus* intentional infringement case.

Internal documents reveal that e.l.f. determined that its mascara offerings were underperforming in the market. So in late 2019—over four years after Roller Lash had launched— e.l.f. decided to add to its own mascara line-up a "new" curling mascara. But rather than design and develop a curling mascara from scratch as Benefit did with Roller Lash mascara, ███████████ ████████████████████████████████████████████████████████████████████ ████████. Thereafter, from start to finish, e.l.f. patterned its "new" product and packaging ██████████

---

[1] Collectively, Benefit's asserted trademarks and the Roller Lash Trade Dress are referred to herein as "the Benefit IP."

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████ As
will be shown at trial, internal documents confirm ███████████████████
██████████

- **Formula:** From many options, e.l.f. ██████████████████████
  ████████████████████████████

- **Name**: e.l.f. chose to launch its product under the name "Lash 'N Roll" to create what e.l.f.'s Design Director, Packaging predicted would be ██████████████████
  ██████████████████████████████████████████████████████
  ██████████████████████████████████████████████████████
  ███████████████████████████████████████

- **Package Design**: e.l.f. "███████████████████████████████████
  ████████████████████: (i) e.l.f. chose pink and black colors for the packaging of its new product; (ii) e.l.f. rejected alternative mascara tube designs—including mascaras with swirly designs, black caps, and all-pink tubes—in favor of the Roller Lash Trade Dress; (iii) e.l.f.'s Director of Innovation sent an alternative design back to the design drawing board because █████████████████████████; (iv) e.l.f. moved its logo text from the cap to the base, recognizing █████████████████████████████████; and (iv) when an all pink design could not be realized in time to meet e.l.f.'s preferred launch date, e.l.f. chose to move forward with the Roller Lash Trade Dress on its "new" mascara component, rather than push out its launch date, re-design its packaging, or change the name of the product.

- **Marketing Materials**: e.l.f. "████████████████████████████ by using black and pink colors, repeated images of the Lash 'N Roll name and tube bearing the Roller Lash Trade Dress, and including in its marketing materials images of hair curlers, a dog, and plays on the words "curl" and "girl"—just as Benefit did with its marketing materials for Roller Lash mascara.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   The culmination of e.l.f.'s efforts resulted in its Lash 'N Roll mascara, which is packaged in a

2   tube with a black base, a pink cap, and lettering on the black base that matches the color of the pink

3   cap:

4   

5

6   To add insult to injury, e.l.f. decided to sell its infringing Lash 'N Roll Mascara at some of the

7   same retailers where Benefit's Roller Lash mascara is sold, including brick and mortar stores like Ulta

8   at Target and their online counterparts. In fact, Target and Ulta are top retailers for Lash 'N Roll and

9   Ulta is the top retailer for Roller Lash. e.l.f. also sells its products through the TikTok Shop, and its

10  marketing channels also substantially overlaps with Benefit's, with both parties promoting their

11  mascaras via Google Ads, visual merchandising, retail displays, internet banner ads, and social media

12  earned and paid promotion, including advertisements on YouTube, Facebook and TikTok.

13  e.l.f.'s efforts ████████████████████████████ to generate more sales worked.

14  Since its release in December 2022, Lash 'N Roll has become e.l.f.'s best-selling mascara.

15  **C.    Benefit Files Suit Against e.l.f.**

16  After unsuccessfully attempting to resolve this dispute without court intervention, Benefit was

17  forced to file this lawsuit against e.l.f. to protect it rights to the Benefit IP. Benefit alleges that e.l.f.'s

18  use of the LASH 'N ROLL mark on e.l.f.'s curling mascara product infringes Benefit's federally-

19  registered, incontestable trademarks ROLLER LASH and HOOK 'N' ROLL and that e.l.f.'s use of a

20  mascara tube with a pink top, black base, and lettering on the black base that matches the color of the

21  top infringes Benefit's common law trade dress rights. Benefit further claims that e.l.f.'s infringement

22  of the Benefit IP was willful and an intentional effort to trade off Benefit's goodwill. Benefit's

23  Complaint states claims for (i) federal trademark infringement under the Lanham Act, 15 U.S.C.

24  §1114; (ii) false designation of origin under the Lanham Act, 15 U.S.C. §1125(a); (iii) trade dress

25  infringement under the Lanham Act, 15 U.S.C. § 1125(a); (iv) common law trademark infringement

26  under California Law; (v) common law trade dress infringement under California Law; and (vi) unfair

27  competition under Cal. Bus. & Prof. Code §17200.

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## II.    LEGAL DISCUSSION

Based on the evidence that will be presented at trial, it is readily apparent that (1) the asserted trademarks and trade dress are valid and protectible, and (2) e.l.f.'s Lash 'N Roll mascara infringes both of Benefit's trademarks as well as Benefit's trade dress. Although Benefit need only show infringement of *one* of its two marks *or* its trade dress to obtain injunctive relief and disgorgement of e.l.f.'s profits, the evidence exposes e.l.f.'s infringement of *all three* elements of Benefit's IP.

### A.    e.l.f.'s LASH 'N ROLL Mark Infringes Benefit's ROLLER LASH and HOOK 'N' ROLL Trademarks.

e.l.f.'s use of the LASH 'N ROLL mark infringes its ROLLER LASH and HOOK 'N' ROLL trademarks under federal and state statutory law and California common law. 15 U.S.C. § 1114; 15 U.S.C. § 1125(a); Cal. Bus. & Prof. Code § 17200. Benefit's state and federal trademark infringement claims are "substantially congruent," and thus may be proven based on the same evidence. *See Cleary v. News Corp. Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994). Benefit will prove (1) an ownership interest in a protectable mark; and (2) that Defendant's use of the mark is likely to cause consumer confusion. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011). "The core element of trademark infringement is the likelihood of confusion, *i.e.*, whether the similarity of the marks is likely to confuse customers about the source of the products." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992). Here, consumers are likely to be confused as to the source, affiliation, or sponsorship of Lash 'N' Roll, believing that is in fact, or that it is affiliated with or sponsored by, Roller Lash mascara. Consumers' confusion may occur at any or all points in time from when they first take an interest in Lash 'N Roll up through the point of sale.

#### 1.    Benefit's ROLLER LASH and LASH 'N ROLL Marks Are Valid and Enforceable.

It is undisputed that Benefit is the registrant of the ROLLER LASH and HOOK 'N' ROLL marks and that they are valid and enforceable, have attained incontestable status, and Benefit enjoys priority in them.[2] *Pom Wonderful*, 775 F.3d at 1124; *Filipino Yellow Pages, Inc. v. Asian Journal*

---

[2] "Registration of a mark is prima facie evidence of the validity of the mark, the registrant's ownership of the mark, and the registrant's exclusive right to use the mark in connection with the goods specified in the registration." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) (citing 15

*Publ'ns, Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999); *Park 'n Fly v. Dollar Park & Fly*, 469 U.S. 189, 196 (1985).

### 2.    There is a Likelihood of Confusion Between the Parties' Marks.

e.l.f.'s Design Director, Packaging was correct in observing that ██████████████ ████████████████████████████████████████████████████████████ This observation and ████████████████████████████████████████████ ████████████████ underscores the existence of a strong likelihood of confusion between e.l.f.'s LASH 'N ROLL mark and Benefit's ROLLER LASH and HOOK 'N' ROLL trademarks.

The Lanham Act protects against another's use of "any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion, or to cause mistake . . . as to the origin . . . of his or her goods." *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1212-13 (9th Cir. 2023) (citing 15 U.S.C. § 1125(a)(1)(A)). "The confusion that is remedied by trademark and unfair competition law is confusion not only as to source, but also as to affiliation, connection or sponsorship." 3 McCarthy on Trademarks and Unfair Competition § 23:8 (5th ed.); *see also* 15 U.S.C. § 1125(a). The likelihood of confusion inquiry considers "whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012).

As the plaintiff, Benefit need not show that its marks and trade dress are specifically associated with *it* as a manufacturer; it need only show that they are "associate[ed] with single—even anonymous—source." *P & P Imps. LLC v. Johnson Enters., LLC*, 46 F.4th 953, 960-61 (9th Cir. 2022) (explaining that the Ninth Circuit has "long-established precedents requiring association with only a single—even anonymous—source" and that this "'anonymous source' test" also applies to trade dress, which "is a subcategory of trademarks"); *see Glam & Glits Nail Design, Inc. v. iGel Beauty, LLC*, No. SACV 20-88 JVS (DFMx), 2022 U.S. Dist. LEXIS 137002, at *20-22 (C.D. Cal. June 24, 2022) (holding that, to show secondary meaning, plaintiff need only show that its trade dress is associated

---

U.S.C. § 1115(a)); *see also Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*, No. 18-CV-06663-TSH, 2019 U.S. Dist. LEXIS 63616, at *11 (N.D. Cal. Apr. 12, 2019) (same).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

with "a single anonymous source," because "[t]he law does not require [plaintiff] to show that the trade dress is specifically associated with it as a manufacturer").

Likelihood of confusion is assessed under the eight-factor analysis in *Sleekcraft*, which considers the: (1) strength of the senior mark; (2) relatedness or proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). While courts generally consider all eight factors, "it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of factors." *Brookfield Communs., Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).

"Some factors are much more helpful than others, and the relative importance of each [is] case specific." *Id.* Three of the factors—the similarity of the marks, the relatedness or proximity of the two companies' products or services, and the marketing channels used—constitute "the most crucial body of the *Sleekcraft* analysis." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000). Furthermore, "in a close case . . . , doubts are resolved in favor of the senior user." *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1404 n.14 (9th Cir. 1997). Similarly, evidence of copying "is strong evidence of a likelihood of confusion." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002) (quotations omitted). Indeed, "[w]hen the alleged infringer knowingly adopts a mark similar to another's, courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Id.* (quoting *Sleekcraft*, 599 F.3d at 354).

### (a)    Benefit's Asserted Trademarks Are Strong.

The ROLLER LASH and HOOK 'N' ROLL marks are strong. When assessing the strength of a mark, courts consider both conceptual and commercial strength. *See GoTo.com*, 202 F.3d at 1207. "The stronger the mark, the more likely it is that encroachment on it will produce confusion." 1 McCarthy § 11:73 (quotations omitted).

Where, as here, "a court is dealing with incontestable marks, these marks are presumed to be strong marks." *San Diego Comic Convention v. Dan Farr Prods.*, 336 F. Supp. 3d 1172, 1186 (S.D. Cal. 2018) (quotations omitted); *Young v. 3.1 Phillip Lim, LLC*, No. SA CV 16-1556-DOC (KESx),

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

2016 U.S. Dist. LEXIS 158931, at *8 (C.D. Cal. Nov. 16, 2016) ("Absent a showing that the mark is generic, an incontestable mark is considered to have a high conceptual strength."). "Commercial strength may be demonstrated by commercial success, extensive advertising, length of exclusive use, and public recognition." *Harman Int'l Indus., Inc. v. Jem Access., Inc.*, 668 F. Supp. 3d 1025, 1039 (C.D. Cal. 2023) (quotations omitted). "The more extensively advertised and readily identifiable a mark and dress are in the relevant market, the stronger the mark and dress." *CytoSport, Inc. v. Vital Pharms., Inc.*, 617 F. Supp. 2d 1051, 1070 (E.D. Cal. 2009).

Benefit's trademarks are conceptually strong, as both word marks are inherently distinctive and incontestable. Moreover, there is no evidence of any third-party use of the ROLLER LASH or HOOK 'N' ROLL marks. At most, e.l.f. points to a handful of trademark registrations for non-mascara products that include the word "roll." This is insufficient. *See Charles Schwab & Co. v. Hibernia Bank*, 665 F. Supp. 800, 806 (N.D. Cal. 1987) (rejecting argument that third-party use weakened the strength of a mark because mere proof of registration "is not proof of third party uses for showing a crowded field and relative weakness of the mark").

Benefit's trademarks are also commercially strong. As Benefit's witnesses will testify at trial, U.S. sales of Roller Lash mascara has generated over $300 million in revenues. Roller Lash mascara also enjoys strong actual marketplace recognition on account of Benefit's extensive marketing efforts, including through visual merchandising, advertising, influencers and other social media users, other marketing strategies, press exposure, and numerous industry awards it has received. By way of example, whether paid or organic, the marketing and promotion of Roller Lash mascara on social media has an Earned Media Value ("EMV")[3] of over $131 million as of December 2023. Roller Lash mascara is also recognized as a best-seller internally at *Benefit*, within *e.l.f.* (who thus copied it), *and* within the broader mascara market.

e.l.f.'s internal documents will reveal at trial that e.l.f. itself recognized the strength of Benefit's ROLLER LASH and HOOK 'N' ROLL trademarks among consumers, ███████████ ████████████████████████████████████████████████████████████████

---

[3] EMV is a metric that Benefit and other companies track to assess the monetary value of the promotional boost that their products receive from social media influencers.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   ███████   Indeed, e.l.f. gave its new curling mascara a name substantially similar to the Roller Lash

2   trademark—"Lash 'N Roll"—which e.l.f. recognized and intended would cause consumers to draw an

3   instant connection to Benefit's Roller Lash mascara.

4       Thus, the ROLLER LASH and HOOK 'N' ROLL marks are strong and the first *Sleekcraft*

5   factor weighs in Benefit's favor.

6       *(b)      The Parties' Goods Are the Same.*

7       The relatedness of the parties' products also supports a finding of infringement because they

8   are the same. Relatedness of the goods reflects the common-sense conclusion that the danger of

9   consumer confusion increases where the goods are related or complementary. *E. & J. Gallo Winery*,

10  967 F.2d at 1291 ("Where goods are related or complementary, the danger of consumer confusion is

11  heightened."). Here, both parties' products are mascara—specifically, curling mascara. When

12  developing Lash 'N Roll, e.l.f. ████████████████████████████████████████████

13  ██████████████████████████████████████████████████████████████████

14  ████████████████████████████████████

15      The second *Sleekcraft* factor weighs strongly in Benefit's favor because, just as e.l.f. intended,

16  the parties' goods not just closely related—they are the same.

17      *(c)      e.l.f.'s LASH 'N ROLL Mark is Substantially Similar to Benefit's*

18              *ROLLER LASH and HOOK 'N' ROLL Marks.*

19      The name "Lash 'N Roll" is extremely similar to Benefit's ROLLER LASH and HOOK 'N'

20  ROLL marks—a factor that is "considered [the] critical question in the likelihood-of-confusion

21  analysis." *GoTo.com*, 202 F.3d at 1205. "[T]he greater the similarity between the two marks at issue,

22  the greater the likelihood of confusion." *Id.* at 1206. The Ninth Circuit applies "three axioms" to the

23  similarity analysis: "1) Marks should be considered in their entirety and as they appear in the

24  marketplace; 2) Similarity is best adjudged by appearance, sound, and meaning; and 3) Similarities

25  weigh more heavily than differences." *Entrepreneur Media*, 279 F.3d at 1144.

26      "Lash 'N Roll" is nearly identical to "Roller Lash." They are highly similar in appearance, as

27  they are the same length and both contain the "Roll" and "Lash" elements. Indeed, Lash 'N Roll is

28  merely a variant on the same key terms as presented in "Roller Lash." Each mark is also exactly three

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

syllables, with prominent R and L sounds. These marks also appear on the primary packaging of the parties' respective products, which are both curling mascaras that share the same trade dress, with each mark written in pink lettering against a black base on a mascara tube with a cap that matches the lettering. The marks also appear on the secondary packaging of the parties' respective products as well as in their advertisements and marketing materials, which consistently feature the products' primary packaging (the mascara tubes bearing the "Roller Lash" and "Lash 'N Roll" marks) and the asserted Roller Lash Trade Dress. Therefore, the similarities of these two marks are stark and properly weighed more heavily than any minimal differences.

Internal e.l.f. documents also show that e.l.f.'s own Design Director, Packaging observed that ███████████████████████████████████████████████████████████████████████████ ██████████████████████████ Another e.l.f. design team member also remarked that ██████████ ████████████████████████████████████████████████████████████████████████████

"Lash 'N Roll" is also nearly identical to Benefit's HOOK 'N' ROLL mark. They too are also highly similar in appearance, being the same length, beginning with a four-letter word, and ending with the exact same 'N' ROLL elements. The marks are highly similar in sound, as each mark is exactly three syllables and shares a monosyllabic first element followed by the identical 'N' ROLL elements. Both marks are also apparent when viewing the products' respective secondary packaging as well as the marketing materials for each mascara.

As Benefit will show at trial, e.l.f.'s own ███████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Yet e.l.f. proceeded to launch its Lash 'N Roll mascara anyway—*and, what's more, embedded the "Lash 'N Roll name within a packaging that also mimics the Roller Lash Trade Dress*—after learning of, and despite, these findings. *See GoTo.com*, 202 F.3d at 1206 ("Marks should be considered . . . as they appear in the marketplace.").

Finally, the similarities between e.l.f.'s "Lash 'N Roll" and Benefit's trademarks are heightened by the fact that "Lash 'N Roll" is essentially a conglomeration of "Roller Lash" and "Hook 'N' Roll." *See ATS Logistics Servs. v. Gregory*, No. 04-3975 (DWF/RLE), 2004 U.S. Dist. LEXIS

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

25556, at *11 (D. Minn. Dec. 17, 2004) (finding that similarity of the marks factor "weighs strongly in favor of the [p]laintiff" because "[d]efendants merely combined two of [p]laintiff's marks to create their business name"). By taking Benefit's trademarks and combining them into "Lash 'N Roll," e.l.f. demonstrated that it actively intends to trade upon the goodwill associated with Benefit's registered trademarks.

The commercial impression created by the parties' marks is highly similar and the third *Sleekcraft* factor weighs strongly in Benefit's favor.

> (d)    *Factors Two and Three Give Rise to an Inference of Actual Confusion.*

The high level of similarity between the parties' goods and the parties' marks results in an inference of actual confusion. High similarity between an allegedly infringing mark and an asserted mark "use[d] on identical products," may give rise to an "infer[ence] [of] the existence of actual confusion." *Aktiengesellchaft v. Knorr Sols., Inc.*, No. CV 10-08155 GAF (RZx), 2012 U.S. Dist. LEXIS 199995, at *16 (C.D. Cal. Apr. 5, 2012); *see also CytoSport*, 617 F. Supp. 2d at 1076 ("[D]ue to the glaring similarity between plaintiff's and defendant's marks and trade dresses, the court can also properly infer likely instances of actual customer confusion."); *Sas v. Sawabeh Info. Servs. Co.*, No. CV 11-04147 GAF (MANx), 2013 U.S. Dist. LEXIS 195115, at *22 (C.D. Cal. Dec. 6, 2013) ("However, given the similarity of the marks and their use on identical products, it would not be a stretch to infer the existence of actual confusion.").

The fact that e.l.f.'s LASH 'N ROLL mark is highly similar to Benefit's trademarks, and used in connection with the same types of products that are packaged in the same trade dress as Benefit's Roller Lash mascara, gives rise to an inference that there are likely instances of actual consumer confusion. What's more, Benefit filed this lawsuit *less than three months* after e.l.f. first launched Lash 'N Roll in late December 2022; the parties' products have not been co-existing in the market for long. And, under Ninth Circuit precedent, "actual confusion is hard to prove [and thus] difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy." *Brookfield*, 174 F.3d at 1050; *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 782 F.2d 1508, 1509 (9th Cir. 1986) ("Though the trial court found no evidence of actual confusion, this is merely one factor to be considered . . . and it is not determinative.").

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Further, e.l.f.'s survey on the issue of likelihood of confusion is faulty and should not be given any weight. Among other things, it failed to adequately replicate marketplace conditions, cherry-picked distractors that don't reflect the retail environment, used photos from different stores, and failed to test the likelihood of confusion of the trademarks. For example, the survey improperly placed the products placed side-by-side (which is not how they appear in the marketplace), and the marks—displayed on the mascara packaging depicted in photos—also were far too small for respondents to adequately view, particularly if they took the survey on their cell phones.

Notably, the Ninth Circuit has held that survey evidence is not necessary to prove a likelihood of confusion. Rather, "[t]here are at least three types of proof of likelihood of confusion: (1) survey evidence; (2) evidence of actual confusion; and (3) an argument based on an inference arising from a judicial comparison of the conflicting marks themselves and the context of their use in the marketplace. In a close case amounting to a tie, doubts are resolved in favor of the senior user." *Dr. Seuss Enters.*, 109 F.3d at 1404 n.14. Here, Benefit, the senior user, will present extensive evidence establishing an inference of the likelihood of confusion.

The fourth *Sleekcraft* factor weighs in Benefit's favor.

### (e)     The Parties' Marketing Channels Directly Overlap.

Benefit and e.l.f. market and sell their products in packaging bearing highly similar marks through overlapping same channels. "Convergent marketing channels increase the likelihood of confusion." *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987). Both parties sell their respective goods both online and in brick-and-mortar stores, including at Ulta and Target stores and at Ulta.com, Target.com, and TikTok Shop. Ulta, in fact, is a top retailer for both parties' curling mascara products.

Moreover, e.l.f.'s argument that its product is in a "mass" category while Benefit's product is in a "prestige" category is of no moment. The evidence is clear that (i) e.l.f. considers Benefit a competitor and vice versa; (ii) both companies sell their products at the same *mass* and online retailer, Target and Target.com, and at the same *prestige* retailer, Ulta and Ulta.com, and at the Tic Tok Shop; (iii) the parties and witnesses agree that consumers shop across prestige and mass market categories and that these categories now blend into a so-called "masstige" market; (iv) the target consumers both

PLAINTIFF BENEFIT COSMETICS LLC'S TRIAL BRIEF

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    mascaras are Gen Z consumers, who shop across prestige and mass; and (v) e.l.f. appears on the same

2    prestige and industry-wide tracking tools as Benefit, along with many other prestige brands.

3      Both parties also advertise and promote their products using similar strategies and primarily

4    through social media and online advertising as well as through beauty influencers. And e.l.f.'s

5    marketing materials ██████████████████ by using black and pink; featuring the

6    name "Lash 'N Roll," which is nearly identical to Benefit's marks; and incorporating notable elements

7    from Benefit's Roller Lash ads—such as hair curlers, dogs, and plays on the words "curls" and

8    "girls"—to advertise its Lash 'N Roll product.

9      The fifth *Sleekcraft* factor strongly weighs in Benefit's favor.

10      (f)  *The Degree of Purchaser Care is Low.*

11     "Confusion between marks is generally more likely where the goods at issue involve relatively

12   inexpensive, impulse products to which the average, unsophisticated consumer does not devote a great

13   deal of care and consideration in purchasing." *E. & J. Gallo Winery v. Gallo Nero*, 782 F. Supp. 457,

14   464-65 (N.D. Cal. 1991) (quotations omitted).

15     Here, the products at issue are relatively inexpensive. Roller Lash retails for $29 for the full

16   version and $15 for the mini version, while Lash 'N Roll retails for $6. Additionally, mascara

17   purchasers are impulse shoppers who exercise minimal care when purchasing mascara. That is why,

18   for example, Benefit and other cosmetic companies pitch to have their products in "grab 'n go" and

19   cash register placements in retail stores. Indeed, consumers are more likely to make a quick decision

20   without devoting a great deal of care and consideration when purchasing, and e.l.f.'s expert's

21   speculation to the contrary was based on unreliable "research." e.l.f.'s expert failed to, and cannot,

22   establish that her position stands on solid ground.

23     Moreover, this case does not involve consumers considering skin treatments (*i.e.*, acne

24   products) or products known to impact one's health (skincare products, sunscreen and fragrance).

25   Mascara is widely popular, contains no warnings or risk factors, is externally applied to the eyelashes,

26   and costs under $30. Thus, no case law authority concludes that mascara consumers exercise a high

27   degree of care and e.l.f.'s caselaw on this subject is readily distinguishable. *Contra Boost Beauty, LLC*

28   *v. Woo Signatures, LLC*, No. 2:18-cv-02960-CAS-Ex, 2022 U.S. Dist. LEXIS 24515, at *30 (C.D.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Cal. Feb. 7, 2022) (finding that consumers exercise a higher degree of care and brand consciousness with regard to more expensive "cosmetic products that consumers must apply to a sensitive portion of the body"); *Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1280 (C.D. Cal. 2008) ("[C]ourts have recognized that purchasers of fragrances and skin care products also exercise a higher degree of care and brand consciousness."); *Glow Indus. v. Lopez*, 252 F. Supp. 2d 962, 1001 (C.D. Cal. 2002) ("Courts have previously recognized, however, that purchasers of fragrances and skin care products tend to exercise a high degree of care and brand consciousness.").

Because consumers exercise a low amount of care when purchasing mascara, the sixth *Sleekcraft* factor weighs in Benefit's favor.

### (g)    e.l.f. Intentionally and Methodically Copied Benefit's Trademarks.

e.l.f. expressly launched its product using the name "Lash 'N Roll" to draw a connection to, and conjure in consumers' minds, Roller Lash Mascara in order to increase sales. Evidence of a defendant's intent to deceive "is strong evidence of a likelihood of confusion." *Entrepreneur Media*, 279 F.3d at 1148. Indeed, "[w]hen the alleged infringer knowingly adopts a mark similar to another's, courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Id.; see also Sleekcraft*, 599 F.2d at 354.

Furthermore, "[w]here an alleged infringer chooses a mark he knows to be similar to another, one can infer an intent to confuse." *Entrepreneur Media*, 279 F.3d at 1148 (quotations omitted); *see also Brookfield*, 174 F.3d at 1059 (explaining that "[the intent] factor favors the plaintiff where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark"); *Playboy Enters. v. Netscape Communs. Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004) ("A defendant's intent to confuse constitutes probative evidence of likely confusion: Courts assume that the defendant's intentions were carried out successfully."); *Chicago's Pizza Inc. v. KSM Pizza, Inc.*, No. 2:19-cv-02373-DJC-CKD, 2024 U.S. Dist. LEXIS 8567, at *14-15 (E.D. Cal. Jan. 17, 2024) (finding intent factor weighed in favor of plaintiff where defendant attempted to "replicate plaintiff's menu" and "plaintiff contacted defendant twice demanding that defendant immediately cease and desist from using its logo," which "support[ed] an inference that defendant [wa]s aware of the value of plaintiff's logo and took purposeful and calculated actions to profit from the consumer goodwill

associated with plaintiff's logo"); *Wrenn v. BSA*, No. C 03-04057 JSW, 2008 U.S. Dist. LEXIS 91913, at *23 (N.D. Cal. Oct. 28, 2008) (finding intent favored trademark holder despite declaratory judgment plaintiff's "contention that he was entitled to use the term as he believes it to be generic" because "there is no question from the record that [plaintiff] knew that the term 'Scout' was similar to the well-known Boy Scouts"); *Anhing Corp. v. Thuan Phong Co.*, No. CV 13-05167 BRO (MANx), 2014 U.S. Dist. LEXIS 186739, at *35-36 (C.D. Cal. Oct. 24, 2014) (noting defendant "likely acted in bad faith" based on "[d]efendant's familiarity with [p]laintiff's marks").

Here, there is no dispute that e.l.f.'s retained third party trademark clearance firm ██████ ████████████████████████████████████████████████████ But that didn't stop e.l.f. And, as set forth above, e.l.f.'s internal development documents show ████████████ ████████████████████████████████████████[4]

The evidence demonstrates that (1) e.l.f. had knowledge of Benefit's marks, and (2) the similarity between those marks and the Lash N Roll mark is sufficient to "infer an intent to confuse." *Entrepreneur Media*, 279 F.3d at 1148; *see also Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 845-46 (9th Cir. 1987) (explaining that "[a] showing that the defendant intended to adopt the plaintiff's trade dress is . . . entitled to great weight because a defendant is presumed able to accomplish this purpose") (quotations omitted); *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1266 (9th Cir. 2001) (holding that "evidence of intent to copy" was "yet another of the factors tending to show likelihood of confusion").

e.l.f.'s argument that it did not intend to infringe Benefit's trademarks, but rather merely intended to "dupe" Roller Lash, goes nowhere for many reasons. To start, whether a product is dupe is irrelevant to whether or not it infringes a trademark. A dupe is simply a product intended to provide the same results as the product being duped. Thus, like any other products, dupes can be non-infringing, such as where they do not use another company's trademarks or trade dress. On the other hand, they can be infringing where, as here, they intentionally use confusingly-similar trademarks and trade dress. The evidence also shows that e.l.f. knows how to lawfully "dupe" another product—even

---

[4] There is no dispute that even when first proposing "Lash 'N Roll" as the name for e.l.f.'s new product, the employee who proposed the name was well aware that ████████████████████████████ ████

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

another Benefit product—*without* infringing its competitor's rights (*i.e.*, because it has duped other products but not, at the same time, copied their names or trade dress). But here, e.l.f. strived not only to achieve the same results as the Roller Lash mascara, but also to ███████████████ which it did every step of the way, for the purpose of driving sales by causing confusion in the minds of consumers. Another fatal flaw in e.l.f.'s "dupe defense" is that, as e.l.f.'s own expert conceded during her deposition, a dupe is not necessarily a product that is unaffiliated with the duped product. Many beauty companies sell products under different brands and/or across market tiers, such as Lancôme and Maybelline (both owned by L'Oréal). At bottom, merely affixing the title of "dupe" to a product does not release it from liability for trademark and trade dress infringement, as e.l.f. apparently argues. In sum, whether Lash 'N Roll is "dupe" of Roller Lash is irrelevant and this Court should reject outright e.l.f.'s "dupe defense."

The evidence of intentional copying is powerful and likely dispositive. The seventh *Sleekcraft* factor weighs heavily in Benefit's favor.

### (h)    The Likelihood of Expansion of Product Lines Factor Is Neutral.

Where, as here, the parties already compete directly, the likelihood of expansion factor need not be considered. *See Network Automation*, 638 F.3d at 153. The eighth *Sleekcraft* factor is neutral.

Accordingly, the evidence at trial will establish intentional trademark infringement and false designation of origin under the Lanham Act and unfair competition under California law.

### B.    e.l.f.'s Lash 'N Roll Mascara Infringes Benefit's Roller Lash Trade Dress.

e.l.f.'s Lash 'N Roll mascara also infringes Benefit's rights in its claimed Roller Lash Trade Dress under federal and state statutory law and California common law. 15 U.S.C. § 1125(a); Cal. Bus. & Prof. Code § 17200.[5]

"Trade dress involves the total image of a product and may include features such as size, shape, color, color combinations, texture, or graphics." *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 613 (9th Cir. 1989) (quotations omitted). At trial, Benefit will prove that its asserted trade dress is: "(1) . . . inherently distinctive or has acquired distinctiveness through secondary meaning; (2) there is

---

[5] Benefit's federal and state law causes of action relating to trade dress infringement are also "substantially congruent" (*see Cleary*, 30 F.3d at 1262-63) and are proven based on evidence establishing e.l.f.'s infringement of Benefit's claimed dress.

a likelihood that the public will be confused by the infringing use; and (3) the trade dress is nonfunctional." *Stephen W. Boney, Inc. v. Boney Servs.*, 127 F.3d 821, 828 (9th Cir. 1997) (quotations omitted). "Likelihood of confusion in the trade dress context is evaluated by reference to the same factors used in the ordinary trademark context." *Vision Sports*, 888 F.2d at 616.

### 1.   <u>The Roller Lash Trade Dress Is Valid and Protectable</u>

The Roller Lash Trade Dress is inherently distinctive, has acquired secondary meaning, is non-functional and is not generic. The Roller Lash Trade Dress is therefore valid and protectable, and Benefit owns valid and subsisting common law trade dress rights in its Roller Lash Trade Dress.

### (a)   *The Roller Lash Trade Dress Is Inherently Distinctive*

The Roller Lash Trade Dress is inherently distinctive because it is product packaging that is not a common or basic design, is unique in the mascara market, is not simply a variation on existing mascara designs, and is recognizable to consumers apart from its trademarks.

"Trade dress commonly falls into one of two main categories: product design or product packaging." *Lolicel (PTY) Ltd. v. Stanmar Int'l (USA) Inc.*, No. 22cv926-LL-BGS, 2023 U.S. Dist. LEXIS 73926, at *10 (S.D. Cal. Apr. 27, 2023). "Product design typically relates to the protected nature and design of an actual, physical product," while "[p]roduct packaging . . . typically is not the product itself, but rather the 'dressing' or manner in which the product is presented to the public." *Id.* (quotations omitted). While product packaging may be inherently distinctive, product "design . . . is not inherently distinctive" and trade dress owner must show acquired secondary meaning. *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 212, 120 S. Ct. 1339, 1344 (2000).

Packaging is inherently distinctive if its "intrinsic nature serves to identify [a] particular source." *Wal-Mart Stores*, 529 U.S. at 210. Under the Lanham Act, "[t]he predominant test for inherent distinctiveness asks whether (1) the design or shape is a common, basic shape or design; (2) it was unique or unusual in a particular field; and (3) it was a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods which consumers view as mere ornamentation." *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 1004 (C.D. Cal. 2010) (quotations omitted). "In other words, if the trade dress is of such an unusual design that a buyer will immediately rely on it to differentiate the source of the product, then it is inherently distinctive." *Id.*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

(quotations omitted). Courts look at the trade dress as a whole when assessing its inherent distinctiveness. *Clicks Billiards*, 251 F.3d at 1259.

Consumers purchase the Roller Lash mascara for the mascara product contained inside the plastic tube (the primary packaging)—not for the plastic tube itself. There is no evidence, for example, that consumers purchase the mascara for some other purpose, such as for collecting the tubes. Therefore, the Roller Lash Trade Dress constitutes product packaging, not product design. *See Moroccanoil, Inc. v. Marc Anthony Cosmetics, Inc.*, 57 F. Supp. 3d 1203, 1222-23 (C.D. Cal. 2014) (finding trade dress encompassing colors, lettering, and graphics on "an amber bottle packaged in a rectangular turquoise box" constituted product packaging) (quotations omitted); *Morton & Bassett, LLC v. Organic Spices, Inc.*, No. 15-cv-01849-HSG, 2017 U.S. Dist. LEXIS 137176, at *4-5 (N.D. Cal. Aug. 25, 2017) (explaining that it is a "commonsense conclusion" that plaintiff's "customers purchase its products to consume the spices contained inside the bottles, as opposed to for some other purpose, such as collecting the bottles"); *Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1176 (C.D. Cal. 2010) (finding plaintiff's bottle and label for mineral water constituted product-packaging trade dress).

Further, as Benefit's designer will explain at trial, Benefit designed the Roller Lash Trade Dress from scratch based on inspiration from multiple non-mascara sources, including hair curlers and elements of retro, 1950s styles. The Roller Lash design is in no way based on or a variation of other mascara tubes; in fact, the idea was to design an original tube *unlike* any competitor's tube on the market.

The inherent distinctiveness of the Roller Lash Trade Dress is also underscored by the fact it is not common or widespread. Of the thousands of mascara tube designs that have been offered on the market that come in all different colors and shapes and configurations, e.l.f. has selected an assortment that it contends renders the Roller Lash Trade Dress not inherently distinctive. But most of Defendant's alleged third-party uses do not actually reflect the asserted trade dress because, for instance, they use a pink base and black cap or do not include pink lettering on the base that matches the pink cap. Others are discontinued and/or were sold only briefly and in unknown or *de minimis* quantities, including through limited channels. Thus, the purported "third party use" evidence e.l.f. will point to at trial is

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

insufficient because, among other things, there is no extent of use evidence to back up any claim of widespread use.

Beyond that, as Benefit will demonstrate at trial, out of the 386 mascaras sold through Ulta and the over 200 sold through Target, where both Benefit and e.l.f. sell their respective mascaras, the Roller Lash and Lash 'N Roll mascaras are the only ones sold in packaging with a pink cap and black base (let alone with pink lettering on the base matching the pink cap).

Furthermore, the evidence indicates that the Roller Lash Trade Dress is recognizable to consumers apart from Benefit's trademarks. That is why, for example, e.l.f. copied it to create the design for Lash 'N Roll.

Because the Roller Lash Trade Dress is inherently distinctive, the Court need not address secondary meaning, but extensive, uncontroverted evidence also establishes secondary meaning.

*(b)*     *The Roller Lash Trade Dress Has Acquired Distinctiveness Through Secondary Meaning*

The Ninth Circuit defines secondary meaning as "the mental association by a substantial segment of consumers and potential consumers between the alleged mark and a single source of the product." *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985) (quotations omitted). Consumers need not be able to identify the source of the product by name. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769-770 (1992). To establish acquired distinctiveness through secondary meaning, a trade dress owner "must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982).

In determining whether a plaintiff's trade dress has acquired secondary meaning, courts consider the following factors: "whether actual purchasers of [plaintiff's product] associate the [trade dress] with [plaintiff]; the degree and manner of [plaintiff's] advertising; the length and manner of [plaintiff's] use of the [trade dress]; and whether [plaintiff's] use of the [trade dress] has been exclusive." *Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 517 (9th Cir. 1989). "Evidence of use and advertising over a substantial period of time is enough to establish secondary meaning." *Id.*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    In this case, the evidence of e.l.f.'s copying—especially in light of the facts that the parties

2    directly compete and e.l.f. chose to copy specifically to boost its sales by trading off the consumer

3    goodwill associated with Benefit's best-selling mascara, ████████████████████████

4    ████████████—is alone sufficient to support an inference of secondary meaning. *Clicks Billiards*,

5    251 F.3d at 1264 (stating that the Ninth Circuit has "recognize[d] that evidence of deliberate copying

6    is relevant to a determination of secondary meaning" and "in appropriate circumstances, deliberate

7    copying may suffice to support an inference of secondary meaning").

8    In addition, the evidence will show that Benefit has expended, and continues to expend,

9    considerable efforts advertising and promoting the Roller Lash mascara in ways that feature the Roller

10   Lash Trade Dress. As set forth above in the discussion of secondary meaning of Benefit's trademarks,

11   Benefit consistently and prominently features both its marks *and* the Roller Lash Trade Dress by

12   showing the primary packaging in advertising, marketing and promotional materials. Benefit has also

13   continued to market Roller Lash since its launch including through influencers on social media, visual

14   merchandising, online advertising, promotional sets, and events and campaigns where Roller Lash is

15   featured. This marketing has resulted in over $300 million in sales, extensive press coverage, multiple

16   awards, and an EMV of more than $131 million. *See Jason Scott*, 68 F.4th at 1216 (affirming finding

17   that plaintiff established secondary meaning, where Plaintiff's furniture pieces "were prominently

18   displayed at trade shows; were featured in various retailers' magazines, social media, and media

19   advertisements; and were the subject of numerous presentations," "won several awards," and "w[as]

20   featured in other national and regional magazines").[6]

21   As noted above, Defendant's alleged third party uses also fail to establish any widespread or a

22   common design. *See Nat'l Lead Co. v. Dannenfelser*, 223 F.2d 195, 204 (9th Cir. 1955) (considering,

---

[6] Contrary to e.l.f.'s assertion, "look for" advertising in which the trade dress holder specifically calls attention to elements of its trade dress is not required to establish secondary meaning based on marketing and advertising. The Ninth Circuit has rejected this argument, distinguishing the prior Ninth Circuit opinion (*First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378 (9th Cir. 1987)), on which Defendant's authority relies:

> Advance suggests that *First Brands* should be applied literally, arguing that Sunburst can establish secondary meaning only if its advertising and promotions 'urged the customer to 'look for' the six claimed elements' of its trade dress. We disagree. *First Brands* does not require such an exact fit between secondary meaning and the image portrayed. It merely requires that the advertising 'feature in some way the trade dress itself.'"

*Sunburst Prods., Inc. v. Derrick Law Co.*, 1991 U.S. App. LEXIS 352, *7-9 (9th Cir. Jan. 9, 1991).

and rejecting, evidence of third-party use because use within the relevant market, for paint, was *de minimis*). Thus, by any measure, the Roller Lash Trade Dress has acquired secondary meaning and is therefore valid and protectable. Indeed, it is precisely because of that association in the minds of consumers that e.l.f. copied the Roller Lash Trade Dress in the first place.

*(c)     The Roller Lash Trade Dress is Not Generic*

Benefit will handily meet its burden of setting forth a *prima facie* case of non-genericness. The proper focus for the genericness inquiry is not on individual elements but on the "the combination of elements" that comprise the alleged trade dress. *Am., Inc. v. Skechers United States*, No. 3:15-cv-01741-HZ, 2017 U.S. Dist. LEXIS 122459, at *22 (D. Or. Aug. 3, 2017) (citing *Clicks Billiards*, 251 F.3d at 1259 ("We emphasize here that, in evaluating functionality as well as the other elements of a trade dress claim, it is crucial that we focus not on the individual elements, but rather on the overall visual impression that the combination and arrangement of those elements create. Trade dress is the composite tapestry of visual effects.")).

The Roller Lash Trade Dress is not generic because the combination of elements is not overbroad or indefinite, and therefore gives Defendant sufficient notice of what is protected. *Adidas,* 2017 U.S. Dist. LEXIS 122459, at *21; *see also* ECF 30 at pp. 7-8 ("The trade dress description included in the Complaint is adequately detailed to put Defendant on notice of the alleged infringement, and Defendant's general assertion that it has not received adequate notice is implausible."). Likewise, the trade dress is not merely a variation of another trade dress. Benefit created it to be unique in the field, and it is. Nor is the trade dress generic because it is "so common in the industry that it cannot be said to identify a particular source." *Adidas*, 2017 U.S. Dist. LEXIS 122459, at *12-13. Indeed, there is no evidence of any widespread or common use of the trade dress and in fact, out of the more than 500 mascaras listed on Ulta and Target's websites, none (except Roller Lash and Lash 'N Roll) use the asserted trade dress.

Against this backdrop, e.l.f.'s argument that the trade dress is somehow generic based on the use of black and pink colors in the industry *in general* and/or on depictions of third-party products that use black and/or pink on mascara tubes fails to survive scrutiny. The proper inquiry focuses on the *particular trade dress* at issue—a "divide and conquer" approach and consideration of color usage as

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

a whole is improper. *Adidas*, 2017 U.S. Dist. LEXIS 122459, at \*22; *Clicks Billiards*, 251 F.3d at 1259. Here, Benefit seeks to protect a trade dress that is a *specific combination and configuration of elements*; it does not seek to protect any of the individual elements of its asserted trade dress, such as use of black or pink, or pink and black, on a mascara tube.

Moreover, there are thousands of colors and color combinations that are used in the mascara industry, as demonstrated by, among other things, the offerings on the parties' websites and the websites of online retailers Target and Ulta, where both parties sell their products. The evidence will establish that there is ***not*** any particular emphasis on, concentration of, or preference for, the use of pink caps and black tubes together (even without pink lettering on the base), and that mascaras tubes come in all shades of blue, lavender, gold, bronze, green, yellow, and other colors. There is no one color or color combination that stands out as more "common" than others—and certainly no evidence that use of black bases with pink caps is widespread. That e.l.f. collected all the pink and black mascaras it could find out of thousands of mascara tubes available in different colors does not and cannot establish genericness of the asserted trade dress.

At bottom, the evidence will show that the Roller Lash Trade Dress is unique and far from generic.

### (d)   The Roller Lash Trade Dress Is Nonfunctional

The Ninth Circuit utilizes a two-part test in determining whether a trade dress is nonfunctional. *Millennium Labs. v. Ameritox, Ltd.*, 817 F.3d 1123, 1128-1129 (9th Cir. 2016). For the first step, "courts inquire whether the alleged 'significant non-trademark function is essential to the use or purpose of the article [or] affects [its] cost or quality.'" *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1072 (9th Cir. 2006) (quoting *TrafFix Devices, Inc. v. Mktg. Displays*, 532 U.S. 23, 32-33 (2001)). If the claimed trade dress is determined to be functional under the first step, then "the inquiry is over." *Id.* at 1072. If not, the second question is "whether protection of the feature as a trademark would impose a significant non-reputation-related competitive disadvantage." *Id.*

A proper functionality analysis, which focuses "not on the individual elements, but rather on the overall visual impression that the combination and arrangement of those elements create," confirms that the Roller Lash Trade Dress is not functional. *Clicks Billiards*, 251 F.3d at 1259;

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

*Fuddruckers*, 826 F.2d at 842 ("[O]ur inquiry is not . . . whether individual elements of the trade dress fall within the definition of functional, but . . . whether the whole collection of elements taken together are functional."). The Ninth Circuit has identified several factors to consider regarding trade dress functionality: "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." *Clicks Billiards*, 251 F.3d at 1260 (quotations omitted). Additionally, the Ninth Circuit has held trade dress has aesthetic functionality (as opposed to utilitarian functionality) only "if it serves an aesthetic purpose wholly independent of any source identifying function, such that the trade dress's protection under trademark law would impose a significant non-reputation related competitive disadvantage on its owner's competitors." *Blumenthal Distrib., Inc. v. Herman Miller*, 963 F.3d 859, 862 (9th Cir. 2020) (quotations omitted).

As for the first step in the functionality analysis, there is no utilitarian advantage gained by the asserted trade dress. First, the purpose of mascara, and the reason consumers use mascara, is to lengthen the eyelashes, make them more voluminous and/or lift and curl the eyelashes. Nothing about the Roller Lash Trade Dress is essential to these uses or purposes of mascara uses. Second, it is uncontroverted that there are thousands of alternative packaging designs for mascara, including designs that both Benefit and e.l.f. have used for other mascara products. Third, none of Benefit's advertising touts any utilitarian advantages of the design. Finally, Benefit did not choose the trade dress for any manufacturing-related or cost advantages; there are no cost savings associated with using pink and black and lettering in the manner associated with the Roller Lash Trade Dress. *See Adidas*, 2017 U.S. Dist. LEXIS 122459, at *37-44; *see also Tex. Tech Univ. v. Spiegelberg*, 461 F. Supp. 2d 510, 520 (N.D. Tex. 2006) (finding scarlet and black color scheme was nonfunctional, stating: "the use of a color (or combination of colors) as a trademark does not offend the functionality doctrine").

As for the second step, protection of the Roller Lash Trade Dress would not impose any significant non-reputation-related competitive disadvantage. Considered as a whole, if the Roller Lash Trade Dress is protected, there would remain countless alternative mascara tube designs available to competitors, as evidenced by (i) the sheer number of alternative designs currently on the market; (ii)

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

the parties' own other mascara products that are sold in multiple different, alternative tube designs; and (iii) the fact that when e.l.f. was designing Lash 'N Roll, it considered and rejected multiple alternative designs that did not use the asserted trade dress. There would be no negative competitive impact caused by protecting the Roller Lash Trade Dress.

Notably, e.l.f.'s functionality arguments primarily and improperly focus on a single element of the Roller Lash Trade Dress: the use of the color black on the base of the mascara tube. e.l.f. argues, for example, that using the color black on the base of a mascara tube hides the fill line on the tube, but any opaque color would suffice to do accomplish that purpose. e.l.f. also argues that the black base shows the color of the mascara product inside the tube, but there is no evidence of this and in any event, focusing on a single element of the trade dress is improper.[7] *Adidas,* 2017 U.S. Dist. LEXIS 122459, at *37-44 (citing *Clicks Billiards*, 251 F.3d at 1259); *Fuddruckers*, 826 F.2d at 842. Benefit is not claiming as its trade dress "the use of black on the mascara tube"; it is claiming a specific configuration of pink and black with pink lettering that matches the pink cap. e.l.f.'s functionality arguments are not persuasive and do not establish that the Roller Lash Trade Dress is functional.

e.l.f. also claims that the Roller Lash Trade Dress is aesthetically functional. However, this argument is unavailing, as the Roller Lash Trade Dress does not serve any aesthetic purpose wholly independent of any source identifying function. In addition, protection of the trade dress would not impose any significant non-reputation related competitive disadvantage on Benefit's competitors. The Roller Lash Trade Dress exclusively serves a source-identifying purpose and Benefit prominently, and intentionally, features the trade dress in its extensive marketing materials that cement association in the minds of consumers.

In short, the Roller Lash Trade Dress is not functional.

## 2. <u>There is a Likelihood of Confusion Between the Parties' Trade Dress.</u>

As with trademark infringement, an assessment of the *Sleekcraft* factors shows that there is a likelihood of confusion between e.l.f.'s Lash 'N Roll trade dress and Benefit's Roller Lash Trade

---

[7] Of course, the default color of mascara is black and most mascara tube designs, including Defendant's, do not use the color black on the base of the tube for this purpose. Many colors are used on the base of mascara tubes (blue, gold, bronze, to name a few) and they do not, as a general matter, serve the purpose of identifying the color of the mascara inside the tube, which is usually black.

Dress. "Trade dress protection is broader in scope than trademark protection, both because it protects aspects of packaging and product design that cannot be registered for trademark protection and because evaluation of trade dress infringement claims requires the court to focus on the plaintiff's entire selling image, rather than the narrower single facet of trademark." *Vision Sports*, 888 F.2d at 613. "Courts in the Ninth Circuit also apply the eight *Sleekcraft* factors to trade dress claims." *Moroccanoil*, 57 F. Supp. 3d at 1223.

(a)     *The Roller Lash Trade Dress is Strong.*

Benefit's use of a pink top, black base, and lettering on the black base that matches the color of the top for its primary packaging constitutes a strong trade dress.

Regarding conceptual strength, the Roller Lash Trade Dress is a unique combination of elements that also renders that design distinctive in the marketplace:

- Benefit intentionally designed the Roller Lash Trade Dress to be unique and stand out in the marketplace.

- The Roller Lash Trade Dress is strongly associated with Benefit in the minds of consumers, a conclusion supported by extensive evidence, including e.l.f.'s ███████████ ███████████████████████████████

- Benefit's trade dress is a specific combination and configuration of elements that, out of the thousands of different mascara tube designs that have been sold, only a handful of third-parties have ever even approached. And for those that have, there is no evidence of their extent of use and/or the use has been discontinued and/or the use has been *de minimis*, including over a short time period and/or in limited channels. *See Nat'l Lead*, 223 F.2d at 204. (9th Cir. 1955) (considering, and rejecting, evidence of third-party use because use within the relevant market, for paint, was *de minimis*); *see also Rebelution, LLC v. Perez*, 732 F. Supp. 2d 883, 891-93 (N.D. Cal. 2010) ("[W]ithout evidence of the scope of use by third-parties, the degree to which plaintiff's mark was wakened by these users cannot be determined."); *Charles Schwab*, 665 F. Supp. at 806 (holding that over 40 alleged third-party uses were unpersuasive because defendant failed to put forth any evidence "showing how extensive the uses are and how long they have continued").

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   Regarding commercial strength, as discussed above, nearly $300 million in Roller Lash

2   mascara has been sold in the U.S. alone, and Benefit's Roller Lash mascara has won numerous awards

3   and received recognition from influencers, press, and social media users. Benefit's marketing of Roller

4   Lash has prominently displayed the Roller Lash Trade Dress, including throughout Benefit's

5   marketing channels.

6   The Roller Lash Trade Dress is strong and the first *Sleekcraft* factor weighs in Benefit's favor.

7   *(b)   The Parties' Goods Are the Same.*

8   The second *Sleekcraft* factor weighs in Benefit's favor for the same reasons as discussed above

9   with regard to Benefit's trademark infringement claim.

10   *(c)   e.l.f.'s Lash 'N Roll Trade Dress is Substantially Similar to Benefit's*

11   *Roller Lash Trade Dress.*

12   The Lash 'N Roll trade dress is essentially the same as the Roller Lash Trade Dress. Their stark

13   similarity is all the more pronounced in view of the thousands of alternative mascara tube designs on

14   the market, which come in wide array of different colors, shapes, color combinations, and use a wide

15   variety of graphics and lettering placements.

16   The "primary design elements" of a product's packaging are its general overall shape,

17   proportion, color, and appearance of the design, and are quickly and easily perceived by a consumer.

18   In this case, the primary design elements of the Roller Lash and Lash 'N Roll are a two-part cylindrical

19   shape with (1) a pink top, (2) a black base, and (3) pink lettering on the black portion of the product—

20   all of which are present in the parties' respective mascaras.

21   The similarities between the mascara tubes far outweigh any minor differences, and considered

22   in their entireties, the tubes would be perceived by consumers as the same given the online and retail

23   environments in which they are sold.[8]

24   [8] The "secondary design elements" are subtler and concern smaller details of a design that a consumer

25   would not perceive or remember as readily as the primary design elements which create the overall
     impression. Here, the secondary design elements of the Roller Lash mascara and Lash 'N Roll mascara

26   include: (1) a barely perceptible taper in the cylinder of the Roller Lash mascara, (2) texture on the top
     of the Roller Lash versus no texture on the Lash 'N Roll, (3) the percentage difference in length of the

27   pink versus black parts, and (4) presence of a small ribbed collar on the Roller Lash mascara that
     matches the color of the base. These are not perceived in the overall impression especially considering

28   the online and in store retail environments in which the products are sold.

The similarity of the parties' trade dress is further supported by the fact that e.l.f. ████ ████████████████████ and then included in its secondary packaging (the box in which the mascara tube is sold) a see-through window that shows to the consumer nearly the entire tube and trade dress. Both parties' primary packaging is also featured prominently in their marketing materials and in the retail environment.

The parties' respective trade dresses are essentially the same, and the third *Sleekcraft* factor weighs strongly in Benefit's favor.

        *(d)*     *Factors Two and Three Give Rise to an Inference of Actual Confusion.*

As with the trademark infringement analysis, although there is no direct evidence of instances of actual confusion, the fact that e.l.f.'s Lash 'N Roll trade dress is highly similar to and is used on the same type of product as Benefit's Roller Lash Trade Dress gives rise to an inference that there are likely instances of actual consumer confusion. *See Aktiengesellchaft*, 2012 U.S. Dist. LEXIS 199995, at *16; *CytoSport*, 617 F. Supp. 2d at 1076; *Sas*, 2013 U.S. Dist. LEXIS 195115, at *22.

For the reasons set forth above, no weight should be afforded to e.l.f.'s consumer confusion survey. The fourth *Sleekcraft* factor weighs in Benefit's favor.

        *(e)*     *The Parties' Marketing Channels Directly Overlap.*

The fifth *Sleekcraft* factor weighs in Benefit's favor for the same reasons as discussed above with regard to Benefit's trademark infringement claim

        *(f)*     *The Degree of Purchaser Care is Low.*

The sixth *Sleekcraft* factor weighs in Benefit's favor for the same reasons as discussed above with regard to Benefit's trademark infringement claim

        *(g)*     *e.l.f. Intentionally and Methodically Copied Benefit's Trade Dress.*

As discussed above, the evidence at trial will show that e.l.f. ████████████ ████████████████████████████████████. The seventh *Sleekcraft* factor weighs heavily in Benefit's favor.

        *(h)*     *The Likelihood of Expansion of Product Lines Factor Is Neutral.*

The eighth *Sleekcraft* factor need not be considered for the same reasons as discussed above with regard to Benefit's trademark infringement claim.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    In sum, there exists a strong likelihood of confusion between e.l.f.'s Lash 'N Roll mascara and

2    the Roller Lash Trade Dress and e.l.f. has violated the Lanham Act and California law by its

3    infringement of Benefit's Roller Lash Trade Dress.

4         **C.   Benefit is Entitled to Injunctive Relief**

5    Given the strong likelihood of confusion in this case, an injunction is necessary to protect

6    Benefit from irreparable harm. The Lanham Act vests the Court with the "power to grant injunctions

7    according to principles of equity and upon such terms as the court may deem reasonable, to prevent

8    the violation of any right" of the trademark owner. 15 U.S.C. § 1116(a); *see Century 21 Real Estate*

9    *LLC v. Ed/Var Inc.*, No. 5:13-cv-00887 EJD, 2014 U.S. Dist. LEXIS 94672, at *19 (N.D. Cal. July

10   10, 2014) (granting permanent injunction upon finding of trademark infringement because "damages

11   cannot rectify the reputational damage that occurs from the unauthorized use of [plaintiff's] marks").

12   Where "a plaintiff demonstrates a likelihood of confusion, it is generally presumed that the plaintiff

13   will suffer irreparable injury if injunctive relief is not granted." *Sun Microsystems, Inc. v. Microsoft*

14   *Corp.*, 999 F. Supp. 1301, 1311 (N.D. Cal. 1998); 15 U.S.C. § 1116.

15   e.l.f.'s intentional infringement has harmed, and continues to harm, Benefit in that it usurps

16   Benefit's control over its brand image. Benefit takes great care in developing, creating, and launching

17   its products and brands, as it did with the Roller Lash mascara. Benefit has no visibility into what is

18   in the Lash 'N Roll mascara or how the Lash 'N Roll mascara was tested or created. Among other

19   things, consumer confusion between the Roller Lash mascara and the Lash 'N Roll mascara could lead

20   consumers to make inaccurate assumptions about Benefit and its products, which would be harmful to

21   Benefit. Moreover, on Tik Tok Shop and other websites, searching for "Roller Lash" or "Roller Lash

22   mascara" causes both Lash 'N Roll and Roller Lash to appear in the results. Clearly, the public interest

23   in protecting Benefit's intellectual property far outweighs any interest in permitting e.l.f. to continue

24   marketing and selling an infringing product to consumers.

25   The equities of this case, including Defendant's intentional copying of Benefit's trademarks

26   and trade dress, favor granting Benefit a permanent injunction.

27

28

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

### D.   <u>Benefit Is Entitled to Disgorgement of Defendant's Profits</u>

Additionally, Benefit is entitled to a disgorgement of e.l.f.'s profits through such time as when e.l.f. discontinues using the Lash 'N Roll name and trade dress, as well as pre- and post-judgment interest. Upon establishing a violation of the Lanham Act, "the plaintiff shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). A plaintiff may recover an infringing defendant's profits under the Lanham Act in two scenarios: (1) as a measure of the plaintiff's own damages; or (2) on a theory of disgorgement of the defendant's unjustly obtained profits. *See Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993), abrogated on other grounds by *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016); *see also Quia Corp. v. Mattel, Inc.*, No. C 10-1902 JF (HRL), 2011 U.S. Dist. LEXIS 76157, at *23-24 (N.D. Cal. July 14, 2011). In either scenario, a plaintiff need only prove "defendant's gross profits from the infringing activity with reasonable certainty." *Quia*, 2011 U.S. Dist. LEXIS 76157, at *23-24 (quotations omitted). Defendant then "must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a).

A disgorgement calculation should include "all gains flowing from the illegal activities," and "requires only a 'reasonable approximation of profits causally connected to the violation.'" *SEC v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1113-14 (9th Cir. 2006) (quotations omitted). Defendant's mental state is "a highly important consideration in determining whether an award of profits is appropriate." *Romag Fasteners, Inc. v. Fossil Grp., Inc.*, 590 U.S. 212, 219 (2020).

The facts and equities in this case, including Defendant's intentional infringement of the Benefit IP, strongly support an award of profit disgorgement. e.l.f.'s gross revenue from sales of Lash 'N Roll mascara in the United States through February 11, 2024, was ███████ and its earned profits were approximately ███████. As the evidence will show, the percentage of Lash 'N Roll's profits attributable to infringement is 60.4%. Applying this percentage, Benefit is entitled to disgorge **$1.5 million** in profits for sales through February 11, 2024, **plus an additional 60.4% of Lash 'N Roll profits from February 12, 2024 to such time as e.l.f. discontinues its infringement.**

Additionally, an award of pre-judgment interest is appropriate. "Awards of pre-judgment interest are governed by considerations of fairness and are awarded when it is necessary to make the

1  wronged party whole." *United States v. Cal. State Bd. of Equalization*, 650 F.2d 1127, 1132 (9th Cir.

2  1981); *see also Fitness Anywhere LLC v. Woss Enters. LLC*, No. 14-cv-01725-BLF, 2018 U.S. Dist.

3  LEXIS 198095, at *22 (N.D. Cal. Nov. 20, 2018) (awarding prejudgment interest on trademark

4  infringement claim based on "the willful and deliberate nature of [defendant's] infringement"). e.l.f.'s

5  infringement was both willful and deliberate, and prejudgment interest is proper and necessary to make

6  Benefit whole. Post-judgment interest is also appropriate, because "[p]ost-judgment interest is

7  automatic." *Fitness Anywhere*, 2018 U.S. Dist. LEXIS 198095, at *21. Under 28 U.S.C. § 1961(a),

8  "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."

9      Finally, as the evidence will show, this case is exceptional, and the parties have agreed to

10  address and brief exceptionality and attorneys' fees post-trial.

11  ## III.  <u>CONCLUSION</u>

12      Benefit looks forward to presenting its witnesses and documentary evidence which will show

13  that e.l.f.'s efforts to intentionally copy Benefit's Roller Lash mascara when developing its Lash 'N

14  Roll mascara has achieved precisely the result e.l.f. predicted: There is a strong likelihood that

15  consumers will confuse Lash 'N Roll with Roller Lash, thereby providing an unfair benefit to e.l.f. at

16  the expense of the goodwill that Benefit has built in its Roller Lash brand over the past nine years. For

17  the foregoing reasons, judgment on all claims should be entered in favor of Benefit, and Benefit should

18  be awarded a permanent injunction, disgorgement of e.l.f.'s profits, and pre- and post-judgment

19  interest, with exceptionality and an award of attorneys' fees to be addressed post-trial.

20  DATED:    August 21, 2024        REED SMITH LLP

21

22      By: /s/ Seth B. Herring

23      Seth B. Herring
    Adaline J. Hilgard

24      Quynh La

25      *Attorneys for Plaintiff*
    *BENEFIT COSMETICS LLC*

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware