1  ANTHONY F. LO CICERO (*admitted pro hac vice*)
   *alocicero@ARELAW.com*
2  CHESTER ROTHSTEIN (*admitted pro hac vice*)
   *crothstein@ARELAW.com*
3  RICHARD MANDARO (*admitted pro hac vice*)
   *rmandaro@ARELAW.com*
4  CHRISTOPHER LISIEWSKI (*admitted pro hac vice*)
   *clisiewski@ARELAW.com*
5  AMSTER ROTHSTEIN & EBENSTEIN LLP
   405 Lexington Avenue, 48th Floor
6  New York, New York 10174
   Telephone: (212) 336-8000
7  Facsimile: (212) 336-8001

8  STEPHEN C. STEINBERG (SBN 230656)
   *ssteinberg@bzbm.com*
9  BARTKO LLP
   1100 Sansome Street
10 San Francisco, California 94111
   Telephone: (415) 956-1900
11 Facsimile: (415) 956-1152

12 *Attorneys for Defendant e.l.f. Cosmetics, Inc.*

13                 UNITED STATES DISTRICT COURT

14       NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

15

16 BENEFIT COSMETICS LLC,                    Case No. 3:23-cv-00861-RS

17            Plaintiff,                      **DEFENDANT E.L.F. COSMETICS, INC.'S
                                             TRIAL BRIEF**
18        v.
                                             Trial Date:      August 26, 2024
19 E.L.F. COSMETICS, INC.,
                                             Judge:           Hon. Richard Seeborg
20            Defendant.

21

22

23

24

25

26

27

28

---

3039.000/2065722.2                                    Case No. 3:23-cv-00861-RS

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ................................................................................................ 1

II.     LEGAL STANDARD ......................................................................................... 3

III.    BENEFIT'S ASSERTED TRADE DRESS IS NOT PROTECTABLE .............................. 4

        A.  Benefit Has Misdescribed Its Asserted Trade Dress ............................... 5

        B.  Benefit's Asserted Trade Dress Is Not Inherently Distinctive .................... 6

        C.  Benefit's Asserted Trade Dress Has Not Acquired Distinctiveness ............. 8

            1.  Benefit's Asserted Trade Dress Does Not Have Secondary Meaning ......... 8
                a.  Length and Exclusivity of Use .................................................. 9
                b.  Sales, Advertising, and Marketing Materials ............................. 16
            2.  Benefit's Asserted Trade Dress Is Generic ...................................... 17

        D.  Benefit's Asserted Trade Dress Is Functional ........................................ 19

IV.     THERE IS NO LIKELIHOOD OF CONFUSION WITH RESPECT TO ANY OF
        BENEFIT'S INFRINGEMENT OR UNFAIR COMPETITION CLAIMS ...................... 21

        A.  There Is No Actual Consumer Confusion (Factor 6) ................................. 22

        B.  The Strength of the Mark Factor Favors e.l.f. (Factor 1) ........................... 24

            1.  Benefit's ROLLER LASH and HOOK 'N' ROLL Marks Are Weak .............. 24
            2.  Benefit's Asserted Trade Dress Is Weak .......................................... 25

        C.  The Relevant Consumers Are Sophisticated (Factor 3) ............................. 26

        D.  There Is Limited Marketing Channel Convergence (Factor 5) ..................... 27

        E.  The Proximity of the Goods Factor Favors e.l.f. (Factor 2) ......................... 29

        F.  The Similarity of the Marks Favors e.l.f. (Factor 4) .................................. 30

            1.  ROLLER LASH and LASH 'N ROLL Are Not Similar ................................. 31
            2.  HOOK 'N' ROLL and LASH 'N ROLL Are Not Similar .............................. 34
            3.  Benefit's Asserted Trade Dress and e.l.f.'s Lash 'N Roll Mascara Are Not
                Similar ..................................................................................... 34

        G.  e.l.f. Did Not Have an Intent to Confuse Consumers (Factor 7) ................... 36

        H.  Likelihood of Product Expansion (Factor 8) ........................................... 38

        I.  Summary of *Sleekcraft* Factors ........................................................ 38

V.      BENEFIT'S CLAIM FOR MONETARY RECOVERY MUST FAIL ............................. 38

        A.  Benefit Is Not Claiming Actual Damages ............................................... 38

  B. Benefit Is Not Automatically Entitled to a Disgorgement of Profits ............................ 38

  C. The Parties Agree on the Proper Methodology to Compute e.l.f.'s
    Profits and on the Methodology for Apportionment ....................................................... 40

  D. e.l.f.'s Apportionment Analysis Is Correct ................................................................. 41

VI. BENEFIT IS NOT ENTITLED TO INJUNCTIVE RELIEF ............................................... 42

VII. CONCLUSION ............................................................................................................................ 43

DEFENDANT E.L.F. COSMETICS, INC.'S TRIAL BRIEF

1

## **TABLE OF AUTHORITIES**

2

3

**Cases**                                                                                                                                **Page(s)**

4

*Am. Auto. Ass'n of N. Cal., Nev. & Utah v. Gen. Motors LLC,*
   367 F. Supp. 3d 1072 (N.D. Cal. 2019) ................................................................................ 39

5

*AMF Inc. v. Sleekcraft Boats,*
   599 F.2d 341 (9th Cir. 1979) ................................................................................... 21, 26

6

7

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.,*
   68 F. Supp. 3d 1170 (C.D. Cal. 2014) ..................................................................... 17, 18

8

*Applied Info. Scis. Corp. v. eBay, Inc.,*
   511 F.3d 966 (9th Cir. 2007) ........................................................................................... 3

9

10

*Audio-Technica Corp. v. Music Tribe Commercial MY Sdn. Bhd,*
   No. 2:21-cv-09009, 2022 U.S. Dist. LEXIS 82094 (C.D. Cal. May 5, 2022) ........................... 9

11

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.,*
   963 F.3d 859 (9th Cir. 2020) ......................................................................................... 19

12

13

*Boost Beauty, LLC v. Woo Signatures, LLC,*
   No. 2:18-cv-02960, 2022 U.S. Dist. LEXIS 24515 (C.D. Cal. Feb. 7, 2022) ........................ 26

14

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.,*
   174 F.3d 1036 (9th Cir. 1999) .............................................................................. 22, 24-25

15

16

*Cachet Fin. Servs. v. Cachet Fin. Sols., Inc.,*
   No. CV 13-1546, 2015 U.S. Dist. LEXIS 189136 (C.D. Cal. Sept. 21, 2015) ........................ 32

17

*Cairns v. Franklin Mint Co.,*
   24 F. Supp. 2d 1013 (C.D. Cal. 1998) ..................................................................... 23, 24

18

19

*Carter-Wallace, Inc. v. Procter & Gamble Co.,*
   434 F.2d 794 (9th Cir. 1970) ......................................................................................... 15

20

*CG Roxane LLC v. Fiji Water Co. LLC,*
   569 F. Supp. 2d 1019 (N.D. Cal. 2008) ......................................................................... 16

21

22

*Clicks Billiards, Inc. v. Sixshooters, Inc.,*
   251 F.3d 1252 (9th Cir. 2001) ......................................................................................... 5

23

*Cohn v. Petsmart, Inc.,*
   281 F.3d 837 (9th Cir. 2002) ................................................................................. 22, 30-31

24

25

*Cont'l Lab. Prods. v. Medax Int'l, Inc.,*
   114 F. Supp. 2d 992 (S.D. Cal. 2000) ........................................................................... 6-7

26

27

28

*Dayva Int'l, Inc. v. Award Prods. Corp.*,
　　No. CV-94-7331, 1996 U.S. Dist. LEXIS 22973 (C.D. Cal. Dec. 30, 1996) .......................... 37

*Deere & Co. v. MTD Holdings, Inc.*,
　　2003 U.S. Dist. LEXIS 19161 (S.D.N.Y. Oct. 27, 2003) ........................................... 8

*Diana Princess of Wales Mem'l Fund v. Franklin Mint Co.*,
　　216 F.3d 1082 (9th Cir. 1999) ................................................................. 24

*Disc Golf Ass'n v. Champion Discs, Inc.*,
　　158 F.3d 1002 (9th Cir 1998) ................................................................. 19

*E & J Gallo v. Proximo Spirits, Inc.*,
　　No. CV-F-10-411, 2012 U.S. Dist. LEXIS 10669 (E.D. Cal. Jan. 27, 2012) .................... 22-23

*Entrepreneur Media, Inc. v. Smith*,
　　279 F.3d 1135 (9th Cir. 2002) ............................................................ 25, 29, 30

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
　　778 F.3d 1059 (9th Cir. 2015) ........................................................... 38, 39

*First Brands Corp. v. Fred Meyer, Inc.*,
　　809 F.2d 1378 (9th Cir. 1987) ................................................................. 16

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
　　826 F.2d 837 (9th Cir. 1987) ................................................................. 36

*Glob. Tobacco, LLC v. R.K. Co.*,
　　No. 15-cv-05227, 2015 U.S. Dist. LEXIS 190441 (C.D. Cal. Sept. 24, 2015) ................. 26, 37

*Glow Indus v. Lopez*,
　　273 F. Supp. 2d 1095 (C.D. Cal. 2003) .................................................... 27, 30

*GoSmile, Inc. v. Levine*,
　　769 F. Supp. 2d 630 (S.D.N.Y. 2011) ......................................................... 27

*GoTo.com, Inc. v. Walt Disney Co.*,
　　202 F.3d 1199 (9th Cir. 2000) ................................................................. 30

*Greenberg v. Johnston*,
　　No. 14-cv-04605, 2014 U.S. Dist. LEXIS 194325 (C.D. Cal. Oct. 22, 2014) ................................ 4

*Grocery Outlet Inc. v. Albertson's Inc.*,
　　497 F.3d 949 (9th Cir. 2007) ................................................................. 3

*GS Holistic, LLC v. Pudasaini*,
　　No. 23-cv-00753, 2024 U.S. Dist. LEXIS 29733 (N.D. Cal. Feb. 21, 2024) .......................... 4

*H.I.S.C., Inc. v. Franmar Int'l Imps., Ltd., No.*,
    No. 3:16-cv-00480, 2018 U.S. Dist. LEXIS 174670 (S.D. Cal. Oct. 10, 2018) ........................ 7

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,
    28 F.4th 35 (9th Cir. 2022) ............................................................................................... 38, 39

*His & Her Corp. v. Shake-N-Go Fashion, Inc.*,
    No. 2:11-cv-05323, 2015 U.S. Dist. LEXIS 44874 (C.D. Cal. Mar. 30, 2015) ...................... 27

*Huddly AS v. Suzhou Washeng Tech. Co.*,
    No. 21-cv-03617, 2022 U.S. Dist. LEXIS 113246 (N.D. Cal. Apr. 21, 2022) .......................... 4

*Hyde Park Storage Suites Daytona, LLC v. Crown Park Storage Suites, LLC*,
    631 F. Supp. 3d 1203 (M.D. Fla. 2022) ................................................................................ 7

*iCall, Inc. v. Tribair, Inc.*,
    No. C-12-2406, 2012 U.S. Dist. LEXIS 166695 (N.D. Cal. Nov. 21, 2012) .......................... 32

*Indonesian Imports, Inc. v. B. H. Smith*,
    No. C97-3534, 1999 U.S. Dist. LEXIS 4237 (N.D. Cal. Mar. 30, 1999) ......................... 17-18

*James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.*,
    No. SACV 11-1309-DOC, 2013 U.S. Dist. LEXIS 24824 (C.D. Cal. Feb. 21, 2013) ............ 23

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
    58 F.3d 27 (2d Cir. 1995) .................................................................................................... 20

*Juice Generation, Inc. v. GS Enters, LLC*,
    794 F.3d 1334 (Fed. Cir. 2015) ........................................................................................... 25

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*,
    150 F.3d 1042 (9th Cir. 1998) ............................................................................................... 4

*La Canada Ventures, Inc., v. MDAlgorithms, Inc.*,
    No. 22-CV-07197, 2024 U.S. Dist. LEXIS 137560 (N.D. Cal. Aug. 2, 2024) ................. 22, 29

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*,
    762 F.3d 867 (9th Cir. 2014) ............................................................................................... 27

*Levi Strauss & Co. v. Blue Bell, Inc.*,
    778 F.2d 1352 (9th Cir. 1985) ............................................................................................. 15

*Lolicel (PTY) Ltd. v. Stanmar Int'l (USA) Inc.*,
    No. 22-cv-926, 2023 U.S. Dist. LEXIS 73926 (S.D. Cal. Apr. 27, 2023) ................................ 6

*M2 Software, Inc. v. Madacy Ent.*,
    421 F.3d 1073 (9th Cir. 2005) ........................................................................................ 25, 26

*Mana Prod., Inc. v. Columbia Cosms. Mfg., Inc.*,
  65 F.3d 1063 (2d Cir. 1995) ............................................................................... 18, 21

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*,
  290 F. Supp. 2d 1083 (C.D. Cal. 2003) .......................................................................... 31

*Mercado Latino, Inc. v. Indio Prod., Inc.*,
  No. 13-cv-01027, 2017 U.S. Dist. LEXIS 55304 (C.D. Cal. Apr. 11, 2017) ............................ 7

*Monster Energy Co. v. Integrated Supply Network, LLC*,
  533 F. Supp. 3d 928 (C.D. Cal. 2021) ......................................................... 38, 39, 40

*Moroccanoil, Inc. v. Moroccan Gold, LLC*,
  590 F. Supp. 2d 1271 (C.D. Cal. 2008) ....................................................................... 26-27

*Morton & Bassett, LLC v. Organic Spices, Inc.*,
  No. 15-CV-01849-HSG, 2016 U.S. Dist. LEXIS 120092 (N.D. Cal. Sept. 6, 2016) ......... 17, 18

*Mosaic Brands, Inc. v. Ridge Wallet LLC*,
  No. 2:20-cv-04556, 2021 U.S. Dist. LEXIS 193285 (C.D. Cal. Aug. 5, 2021) ..................... 15

*Network Automation, Inc. v. Advanced Sys. Concepts*,
  638 F.3d 1137 (9th Cir. 2011) .......................................................................... 24, 29

*Network Automation, Inc. v. Hewlett-Packard Co.*,
  No. 08-cv-4675, 2009 U.S. Dist. LEXIS 125835 (C.D. Cal. Sept. 14, 2009) ........................ 23

*Nutri/System, Inc. v. Con-Stan Indus.*,
  809 F.2d 601 (9th Cir. 1987) ........................................................................................ 25

*One Indus., LLC v. Jim O'Neal Distrib.*,
  578 F.3d 1154 (9th Cir. 2009) ..................................................................................... 21

*Playboy Enters. v. Netscape Commus. Corp.*,
  354 F.3d 1020 (9th Cir. 2001) ..................................................................................... 29

*Polo Fashions, Inc. v. Dick Bruhn, Inc.*,
  793 F.2d 1132 (9th Cir. 1986) ..................................................................................... 39

*Pom Wonderful LLC v. Hubbard*,
  775 F.3d 1118 (9th Cir. 2014) ..................................................................................... 21

*QS Wholesale, Inc. v. Rox Volleyball, Inc.*,
  No. SACV13-0512, 2014 U.S. Dist. LEXIS 207325 (C.D. Cal. Dec. 31, 2014) ..................... 24

*Qualitex Co. v. Jacobson Prods., Co.*,
  514 U.S. 159 (1995) ...................................................................................................... 7

*Rearden LLC v. Rearden Com., Inc.*,
   683 F.3d 1190 (9th Cir. 2012) ............................................... 4

*Red Bridge Law, P.C. v. Legal Experts Inc.*,
   No. 5:20-cv-08527, 2022 U.S. Dist. LEXIS 80199 (N.D. Cal. May 3, 2022) ........................ 4

*Romag Fasteners, Inc. v. Fossil, Inc.*,
   590 U.S. 212 (2020) ............................................................. 38, 39

*Sazerac Co. v. Fetzer Vineyards, Inc.*,
   251 F. Supp. 3d 1288 (N.D. Cal. 2017) ................................. 26

*Schering-Plough HealthCare Prods. v. Ing-Jing Huang*,
   2007 TTAB LEXIS 67 (T.T.A.B. June 18, 2007) ................. 31

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ............................................... 40

*Steven Madden, Ltd. v. Yves Saint Laurent*,
   No. 18-CV-7592 (VEC), 2019 U.S. Dist. LEXIS 77863 (S.D.N.Y. May 8, 2019) ................... 8

*Stone Brewing Co., LLC v. MillerCoors LLC*,
   No. 3:18-cv-00331, 2022 U.S. Dist. LEXIS 135699 (S.D. Cal. July 29, 2022) ..................... 39

*Surfvivor Media, Inc. v. Survivor Prods.*,
   406 F.3d 625 (9th Cir. 2005) ............................................... 22

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
   532 U.S. 23 (2001) ............................................................... 19

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
   505 U.S. 763 (1992) ............................................................. 4

*Vital Pharms. v. PHD Mktg.*,
   No. 20-cv-6745, 2021 U.S. Dist. LEXIS 254038 (C.D. Cal. Mar. 12, 2021) ........................ 42

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
   529 U.S. 205 (2000) ............................................................. 6, 7, 8, 20

*Walker & Zanger, Inc. v. Paragon Indus., Inc.*,
   549 F. Supp. 2d 1168 (N.D. Cal. 2007) ............................... 8, 16, 17, 18

*Walter v. Mattel, Inc.*,
   31 F. Supp. 2d 751 (C.D. Cal. 1998) ................................... 31

*World Champ Tech LLC v. Peloton Interactive, Inc.*,
   No. 21-CV-03202, 2024 U.S. Dist. LEXIS 27975 (N.D. Cal. Feb. 16, 2024) ........................ 23

*Zest Anchors, LLC v. Geryon Ventures, LLC*,
   No. 22-55704, No. 22-55778, 2023 U.S. Dist. LEXIS 8093 (9th Cir. Apr. 5, 2023) ......... 20-21

1

**Statutes**

2

15 U.S.C. § 1052(d) ................................................................................................ 33

3

15 U.S.C. § 1114 .................................................................................................... 3

15 U.S.C. § 1116 .................................................................................................... 42

4

15 U.S.C. § 1117 .................................................................................................... 38

5

15 U.S.C. § 1125 .................................................................................................... 3, 6

6

Cal. Bus. & Prof. Code § 17200 ............................................................................ 3, 4

7

Civil Local Rule 16-10(b)(8)................................................................................... 1

Trademark Manual for Examining Procedure § 704.02.......................................... 33

8

9

**Other**

10

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition (5th ed. 2024)  ....  *passim*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT E.L.F. COSMETICS, INC.'S TRIAL BRIEF

Pursuant to Rule D.5 of the Court's Guidelines for Final Pretrial Conference in Bench Trials and Civil Local Rule 16-10(b)(8), Defendant e.l.f. Cosmetics, Inc. ("e.l.f.") respectfully submits the following Trial Brief.

## I.  INTRODUCTION

In this case, Plaintiff Benefit Cosmetics LLC ("Benefit") asserts claims for trademark infringement, trade dress infringement, and unfair competition, alleging that the sale of e.l.f.'s Lash 'N Roll mascara product ("e.l.f.'s Lash 'N Roll Mascara") infringes upon Benefit's rights in its ROLLER LASH and LASH 'N' ROLL word marks, as well as its purported trade dress for the Roller Lash mascara product ("Benefit's Roller Lash Mascara"). At trial, Benefit will be unable to sustain its burdens of proving that: (1) its asserted trade dress—which it describes as "a mascara tube with [] a pink top, [] a black base, and [] pink lettering on the black portion of the product which matches the color of the pink top" (Complaint, ECF No. 1 ¶ 32)—is protectable; (2) assuming arguendo the asserted trade dress is valid, there is a likelihood of confusion with e.l.f.'s Lash 'N Roll Mascara; and (3) there is a likelihood of confusion between Benefit's ROLLER LASH and/or HOOK 'N' ROLL word marks and e.l.f.'s LASH 'N ROLL trademark. Specifically, the evidence will demonstrate that:

- In a transparent attempt to artificially portray e.l.f.'s Lash 'N Roll mascara as a confusingly similar product, Benefit intentionally misdescribed its trade dress by ignoring prominent features of its actual commercial embodiment, including the diamond pattern on the cap, the ribbed collar, and the reverse-tapered base, leaving an overly-broad and invalid trade dress commonly used for cosmetics and devoid of secondary meaning.

- Benefit's asserted trade dress constitutes product design—rather than product packaging—and cannot, as a matter of law, be considered inherently distinctive. In any event, Benefit's asserted trade dress is not inherently distinctive.

- Benefit has not met its evidentiary burden of proving that its asserted trade dress has acquired distinctiveness through secondary meaning. Benefit has failed to produce any direct evidence of acquired distinctiveness, such as a secondary meaning survey, which

leads to an adverse inference that such survey would have produced unfavorable results.

- Benefit's purported circumstantial evidence of secondary meaning (*e.g.*, sales, advertising, exclusive use, etc.) does not overcome the adverse inference because it fails to demonstrate any consumer association between the asserted trade dress and the source of the product. Specifically, because all of Benefit's circumstantial evidence pertains to the **actual embodiment** of Benefit's Roller Lash Mascara (which includes Benefit's asserted trade dress <u>and</u> the diamond pattern on the cap, the ribbed collar, and the reverse-tapered base), Benefit cannot satisfy its evidentiary burden to prove that any evidence of secondary meaning is attributable to Benefit's asserted trade dress rather than the actual product embodiment.

- Benefit's circumstantial evidence of secondary meaning is further diminished by the multiplicity of third-party uses of pink and black mascara tubes, which demonstrates the lack of exclusivity of use of Benefit's asserted trade dress.

- Benefit cannot meet its burden of demonstrating that its asserted trade dress is not functional. The use of the color black is highly functional with respect to mascara for many reasons. For example, the black base identifies to consumers that the mascara formula therein is black or very dark. In fact, Benefit previously had a brown formula version of Benefit's Roller Lash Mascara where the base of mascara tube and secondary packaging was color-coded to brown.

- Benefit admits there is no actual confusion, despite sales of more than two million units of e.l.f.'s Lash 'N Roll Mascara and millions of social media impressions, and Benefit failed to conduct a survey to show whether there is a likelihood of confusion, despite having the financial means to do so, warranting an adverse inference. In fact, the only survey performed in this case was conducted by e.l.f.'s expert, Sarah Butler, which demonstrated that confusion was not likely.

- There is no likelihood of confusion under the *Sleekcraft* analysis between (1) Benefit's ROLLER LASH and/or HOOK 'N' ROLL word marks and e.l.f.'s LASH 'N ROLL trademark; or (2) Benefit's asserted trade dress and e.l.f.'s Lash 'N Roll Mascara,

1  because Benefit's word marks and asserted trade dress are weak and entitled to only a

2  narrow scope of protection; the relevant consumers are sophisticated and the products

3  are not competitive in light of their different trade channels and price points; the parties'

4  marks and packaging have prominent differences; and e.l.f. did not intend to cause

5  confusion in the marketplace.

6      With respect to damages, Benefit admits that it has suffered no actual damages and is only

7  seeking disgorgement of profits from sales of e.l.f.'s Lash 'N Roll Mascara. In the Ninth Circuit,

8  profit disgorgement is equitable in nature and typically not awarded where the plaintiff, as here,

9  suffered no damages and there is no palming off. However, if the Court finds that profit

10 disgorgement is appropriate, the parties' experts agree on e.l.f.'s sales volume, its cost of goods, and

11 its marketing expenses. Crucially, the parties also agree that it is appropriate to apportion profits to

12 isolate those profits attributable to use of the accused trademark and trade dress, and agree on the

13 methodology for doing so. The only differences between the damages experts' profit calculations

14 are which benchmark products and what time period should be used in the apportionment analysis.

15 **II.    LEGAL STANDARD**

16      In its Complaint (ECF No. 1, the "Complaint"), Benefit asserts claims for (1) trademark

17 infringement of its federally registered ROLLER LASH and HOOK 'N' ROLL marks under 15

18 U.S.C. § 1114 (First and Second Causes of Action); (2) false designation of origin with respect to

19 its ROLLER LASH and HOOK 'N' ROLL marks under 15 U.S.C. § 1125(a) (Third and Fourth

20 Causes of Action); (3) infringement of Benefit's Asserted Trade Dress under 15 U.S.C. § 1125(a)

21 (Fifth Cause of Action); (4) trademark and trade dress infringement under California common law

22 (Sixth, Seventh, and Eighth Causes of Action); and unfair competition under Cal. Bus. & Prof. Code

23 § 17200 (Ninth Cause of Action).

24      Under Section 32(1) of the Lanham Act, "[t]o establish infringement of a registered

25 trademark, the trademark holder must show that it is (1) the owner of a valid, protectable mark, and

26 (2) that the alleged infringer is using a confusingly similar mark." *Grocery Outlet Inc. v. Albertson's*

27 *Inc.*, 497 F.3d 949, 951 (9th Cir. 2007); *see also Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d

28 966, 969 (9th Cir. 2007); 15 U.S.C. § 1114(1). The elements for claims of federal false designation

of origin, federal trade dress infringement, trademark infringement under California common law, and unfair competition under Cal. Bus. & Prof. Code § 17200 all mirror those for federal trademark infringement under the Lanham Act. *See GS Holistic, LLC v. Pudasaini*, No. 23-cv-00753, 2024 U.S. Dist. LEXIS 29733, at \*14 (N.D. Cal. Feb. 21, 2024) ("The elements of a claim for false designation of origin under § 1125 are virtually the same as the elements of a claim for trademark infringement under § 1114, although a § 1114 claim requires ownership of a registered trademark while a § 1125 claim does not."); *Huddly AS v. Suzhou Washeng Tech. Co.*, No. 21-cv-03617, 2022 U.S. Dist. LEXIS 113246, at \*17 (N.D. Cal. Apr. 21, 2022) ("The elements of a trade dress infringement claim mirror those for a trademark infringement under the Lanham Act[.]"); *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1221 (9th Cir. 2012) ("It is undisputed that Appellants' state law trademark infringement claim (as well as their claim under the UCL to the extent it is based on infringement grounds) is subject to the same legal standards as their Lanham Act trademark claim."); *Red Bridge Law, P.C. v. Legal Experts Inc.*, No. 5:20-cv-08527, 2022 U.S. Dist. LEXIS 80199, at \*10 (N.D. Cal. May 3, 2022) ("The elements for establishing unfair competition under California Business and Professions Code § 17200 by trademark infringement and common law trademark infringement are essentially the same as those for the Lanham Act.").

Here, all nine of Benefit's causes of action fail because the evidence does not support a finding that Benefit's asserted trade dress is protectable or that there is a likelihood of confusion between the parties' word marks or trade dresses.

## III.   BENEFIT'S ASSERTED TRADE DRESS IS NOT PROTECTABLE

To establish a protectable trade dress, a plaintiff must: (1) "adequately define the trade dress for which it claims protection"; (2) demonstrate that its trade dress is distinctive; and (3) demonstrate that its trade dress is nonfunctional. *Greenberg v. Johnston*, No. 14-cv-04605, 2014 U.S. Dist. LEXIS 194325, at \*6 (C.D. Cal. Oct. 22, 2014); *see also Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998). With respect to the second prong, a trade dress is "distinctive and capable of being protected if it either (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992).

**A.      Benefit Has Misdescribed Its Asserted Trade Dress**

In a transparent attempt to encompass e.l.f.'s Lash 'N Roll Mascara, Benefit limits the description of its alleged trade dress for Benefit's Roller Lash Mascara to coloring, as follows:

> a mascara tube with:
>
> 1)   a pink top,
>
> 2)   a black base, and
>
> 3)   pink lettering on the black portion of the product which matches the color of the pink top.

("Benefit's Asserted Trade Dress," images of Benefit's Asserted Trade Dress and its secondary/carton packaging are shown below). (*See* Complaint, ECF No. 1 ¶ 32.)



**Benefit's Roller Lash Mascara**

The product images reveal that Benefit's written description of its asserted trade dress speciously excludes any mention of the most prominent features of the commercial product, including: (i) the diamond pattern on the cap; (ii) the ribbed collar; and (iii) the reverse-tapered base shape. Benefit's distorted definition ignores the importance in the Ninth Circuit "of evaluating the . . . combination of visual elements that, taken together, may create a distinctive visual impression." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001) (internal quotation marks and alterations omitted). While Benefit is entitled to assert unregistered trade dress rights in pink and black mascara tubes with pink writing—which is broader than its actual trade dress for Benefit's Roller Lash Mascara (which includes the prominent features mentioned above)—it must

bolster this assertion at trial by proving that Benefit's Asserted Trade Dress (rather than its actual trade dress) is protectable. Indeed, by asserting an overly-broad description of its purported trade dress so as to attempt to capture e.l.f.'s Lash 'N Roll Mascara, Benefit has exposed itself to a finding of trade dress invalidity since it has merely asserted rights in a common and obvious combination of colors often used for cosmetics that do not enjoy exclusivity or secondary meaning.

As discussed below, Benefit's Asserted Trade Dress is not protectable because: (1) it constitutes product design and cannot be inherently distinctive as a matter of law; (2) Benefit cannot demonstrate that it has acquired distinctiveness through secondary meaning; (3) it is generic; and (4) it is functional.

**B.      Benefit's Asserted Trade Dress Is Not Inherently Distinctive**

Trade dress is classically sorted into two categories: product design or product packaging. The issue is important, because **in cases of product design, the trade dress cannot be inherently distinctive as a matter of law**. *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 216 (2000) ("In an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectible, only upon a showing of secondary meaning."). In the Ninth Circuit, courts have distinguished between the two categories as follows: "[p]roduct design typically relates to the protected nature and design of an actual, physical product" whereas product packaging "typically is not the product itself, but rather the 'dressing' or manner in which the product is presented to the public." *Lolicel (PTY) Ltd. v. Stanmar Int'l (USA) Inc.*, No. 22-cv-926, 2023 U.S. Dist. LEXIS 73926, at *10 (S.D. Cal. Apr. 27, 2023) ("An example of a product design trade dress would be a three-dimensional product purchased by the consumer, whereas product packaging trade dress could be the labels, packaging, or design of that same purchased product.").

Where, as here, the trade dress encompasses essential parts of the goods at issue, it falls into the category of product design. *See Cont'l Lab. Prods. v. Medax Int'l, Inc.*, 114 F. Supp. 2d 992, 999 (S.D. Cal. 2000) (holding that a pipette container constituted product design because it was "physically and functionally inseparable from the whole of [the] product," "[t]he container performs several functions critical to the overall product," and "[t]he user does not discard the card-holding

container upon receipt of the product, but rather, the container remains until the customer has put all of the pipette tips to use."). Furthermore, courts in the Ninth Circuit recognize that when the trade dress at issue is alleged to include a container or bottle, product design is at issue. *Mercado Latino, Inc. v. Indio Prod., Inc.*, No. 13-cv-01027, 2017 U.S. Dist. LEXIS 55304, at *7 (C.D. Cal. Apr. 11, 2017) (holding that trade dress that included physical aspects of the candles like the cylindrical container and solid, single-color wax was product design); *H.I.S.C., Inc. v. Franmar Int'l Imps., Ltd.*, No. 3:16-cv-00480, 2018 U.S. Dist. LEXIS 174670, at *10 (S.D. Cal. Oct. 10, 2018) ("Defendants' alleged trade dress — the ornate weaving, the wide-fan appearance, the coconut shell top, and the smooth handle — are part of the broom product, itself, not some form of disposable packaging" and the components "make the broom product what it is and are intended not to identify the source, but to render the product itself more useful and more appealing."); *see also Hyde Park Storage Suites Daytona, LLC v. Crown Park Storage Suites, LLC*, 631 F. Supp. 3d 1203, 1214 (M.D. Fla. 2022) ("[C]ourts have found that when the trade dress is inseparable from the product, it is properly characterized as a product design.").

Under its own definition, Benefit's alleged trade dress covers the primary component "mascara tube," which clearly qualifies as "essential to the use or purpose" of the mascara product since it is required to hold and store the mascara formula. *Qualitex Co. v. Jacobson Prods., Co.*, 514 U.S. 159, 165 (1995). Since the mascara tube is not thrown away by the end user after purchase (as would be the cardboard packaging), the mascara tube is the product design. To find that Benefit's Asserted Trade Dress constitutes product packaging rather than product design would be nonsensical: if the mascara tube is product packaging, then what does the cardboard packaging it is sold in constitute? Moreover, the Supreme Court has advised that "[t]o the extent there are close cases" with regard to determining whether a trade dress constitutes product design or product packaging, "we believe that courts should err on the side of caution and classify ambiguous trade dress as product design, thereby requiring secondary meaning." *Wal-Mart Stores*, 529 U.S. at 215.

Even if the Court were to find that Benefit's Asserted Trade Dress constitutes product packaging, this finding would still require Benefit to prove acquired distinctiveness through secondary meaning since Benefit's Asserted Trade Dress is composed entirely of a color

arrangement. As the Supreme Court has noted, "at least one category of mark—colors . . . can [n]ever be inherently distinctive." *Wal-Mart Stores*, 529 U.S. at 211-212 ("It seems to us that design, like color, is not inherently distinctive."); *see also Deere & Co. v. MTD Holdings, Inc.*, 2003 U.S. Dist. LEXIS 19161, at *8-9 (S.D.N.Y. Oct. 27, 2003) (holding that because the claimed colors "are applied to the product itself, [p]laintiff's trade dress would fall into the product design category rather than the packaging or labeling category.").

Since Benefit's alleged trade dress constitutes product design, it cannot be inherently distinctive, and Benefit has the legal burden to prove acquired distinctiveness.

### C.   Benefit's Asserted Trade Dress Has Not Acquired Distinctiveness

"In order to allege that a design feature is 'distinctive,' the party asserting the dress must allege facts that plausibly show that it is (1) non-generic and (2) has acquired distinctiveness through secondary meaning in the marketplace." *Steven Madden, Ltd. v. Yves Saint Laurent*, No. 18-CV-7592 (VEC), 2019 U.S. Dist. LEXIS 77863, at *13-14 (S.D.N.Y. May 8, 2019). Here, Benefit cannot demonstrate that Benefit's Asserted Trade Dress has acquired distinctiveness through secondary meaning, and Benefit has failed to demonstrate that its trade dress is not generic.

### 1.   Benefit's Asserted Trade Dress Does Not Have Secondary Meaning

In the Ninth Circuit, secondary meaning is defined as "the mental association by a substantial segment of consumers and potential consumers between the alleged mark and a single source of the product." *Walker & Zanger, Inc. v. Paragon Indus., Inc*., 549 F. Supp. 2d 1168, 1179 (N.D. Cal. 2007). "An expert survey of purchasers typically provides the most persuasive evidence of secondary meaning." *Id.* Absent direct evidence of secondary meaning in the form of a consumer survey, the court must look to circumstantial evidence, which includes: "(1) the length and exclusivity of use of the trade dress; (2) the nature and extent of advertising and promotion of the trade dress (3) the existence of substantial advertising; (4) the product's established place in the market; (5) proof of intentional copying; and (6) 'look for' promotion that specifically directs a consumer's attention to those features claimed as trade dress." *Id.* at 1179-1180.

Here, Benefit had the opportunity to conduct a consumer survey to provide support for its claim of secondary meaning in Benefit's Asserted Trade Dress, yet it failed to do so. This failure

warrants an adverse inference against a finding of secondary meaning. *See Audio-Technica Corp. v. Music Tribe Commercial MY Sdn. Bhd*, No. 2:21-cv-09009, 2022 U.S. Dist. LEXIS 82094, at *10 (C.D. Cal. May 5, 2022) (noting that when the "plaintiff is financially capable of conducting a survey, the failure to do so may allow 'an inference that the results of such a survey would be unfavorable'" in the context of a secondary meaning analysis). Moreover, the circumstantial evidence in this case is insufficient to satisfy Benefit's burden.

### a.      Length and Exclusivity of Use

Although Benefit has used Benefit's Asserted Trade Dress for nine years (*see* DTX-7 at BENEFIT001721), this use has been far from exclusive. *See* 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 15:53 (5th ed. 2024) (noting that length of time "is merely one additional piece of evidence to be weighed with all others in determining the existence of secondary meaning."). Several third parties provided e.l.f. with declarations and evidence of their use of Benefit's alleged pink and black trade dress on mascara products, some of which were on the market even before the launch of Benefit's Roller Lash Mascara.[1] The below chart identifies the mascara products at issue in each of the third-party declarations:

| Declaration | Product Picture |
| --- | --- |
| Beauty 21 Declaration |  L.A. Colors Mascara Mix |

---

[1] *See* Third Party Beauty 21 Cosmetics, Inc.'s Declaration Authenticating Documents, dated February 21, 2024 (the "Beauty 21 Declaration") and supporting documents (DTX-171A); Declaration of Mary Santangelo, dated February 21, 2024 (the "Covergirl Declaration") and supporting documents (DTX-172A); Declaration of Gokcen Faiz, dated March 4, 2024 (the "Farmasi Declaration") (DTX-173A); Third Party Glamour Dolls Inc.'s Declaration Authenticating Documents, dated February 16, 2024 (the "Glamour Dolls Declaration") and supporting documents (DTX-174A); Declaration of Andreina Almazlinos Providing Testimony of L'Oreal USA, dated February 21, 2024 (the "L'Oreal Declaration") and supporting documents (DTX-176A); and Declaration of Anthony Caselle Providing Testimony of L'Oreal USA, dated February 16, 2024 (the "Maybelline Declaration") and supporting documents (DTX-171A).

| Declaration | Product Picture |
|---|---|
| Beauty 21 Declaration | <br>L.A. Colors - Mascara Defining Brush<br>ELFSAMPLE00032<br>[PTX027; DTX-171D] |
| Beauty 21 Declaration | <br>L.A. Colors 5 Mascara Set<br>ELFSAMPLE00008<br>[DTX-171C] |
| Beauty 21 Declaration | <br>L.A. Colors Drama Lash Mascara<br>ELFSAMPLE00007<br>[DTX-171B] |

| Declaration | Product Picture |
|---|---|
| Covergirl Declaration | <br><br>Covergirl Total Tease Waterproof Mascara<br>ELFSAMPLE00001<br>[PTX027; DTX-172B] |
| Farmasi Declaration | <br><br>Farmasi 3D Effect High Definition Mascara<br>ELFSAMPLE00030<br>[PTX027; DTX-173B] |
| Glamour Dolls Declaration | <br><br>Glamour Dolls Essentials Mascara<br>ELFSAMPLE00003<br>[PTX027; DTX-174B] |

| Declaration | Product Picture |
|---|---|
| L'Oreal Declaration | L'Oreal Paris Voluminous Mis Manga Mascara<br>ELFSAMPLE0038<br>[DTX-176B] |
| Maybelline Declaration | Maybelline New York Great Lash Mascara<br>(ELFSAMPLE0013)<br>[DTX-175B] |

In addition to the third-party declarations, e.l.f.'s beauty industry expert and packaging expert conducted independent research that revealed additional third-party mascara products that practice all (or most) of the elements of Benefit's Asserted Trade Dress. For example, the below array depicts third-party mascara products that e.l.f.'s beauty industry expert will testify about:



Finally, as part of fact discovery, e.l.f. produced numerous samples of third-party mascara products that incorporated all (or most) of the elements of Benefit's Asserted Trade Dress. The below chart summarizes information about the mascara products at issue:

| Product Picture | Product Name | Production Stamp | Purchase Date & Location |
|---|---|---|---|
|  | Peripera Ink Black Cara Mascara | ELFSAMPLE00002 [PTX027; DTX-179] | September 21, 2023 Amazon |
|  | Secret Xpress Control 4D Silk Fiber Mascara | ELFSAMPLE00004 [DTX-180] | September 21, 2023 Amazon |
|  | W7 More Lashes Mascara | ELFSAMPLE00005 [DTX-181] | October 17, 2023 Amazon |
|  | Revlon Ultra Volume Mascara | ELFSAMPLE00006 [DTX-182] | September 20, 2023 Amazon |

| Product Picture | Product Name | Production Stamp | Purchase Date & Location |
|---|---|---|---|
|  | Heimish "dailism" Smudge Stop Mascara | ELFSAMPLE00009 [DTX-183] | September 21, 2023 Amazon |
|  | Avon SuperShock Volume Light Mascara | ELFSAMPLE00037 [PTX027; DTX-184] | October 5, 2023 eBay |
|  | Lancome Lash idols Lash-Lifting & Volumizing Mascara | ELFSAMPLE0040 [DTX-185] | October 18, 2023 Walmart |
|  | Yves Saint Laurent Mascara Volume The Shock | ELFSAMPLE0041 [DTX-186] | October 5, 2023 eBay |

| Product Picture | Product Name | Production Stamp | Purchase Date & Location |
|---|---|---|---|
|  | Avon True Color Nourishing Mascara | ELFSAMPLE0042 [DTX-187] | October 5, 2023 Amazon |
|  | Bourjois Paris, Volume Glamour Ultra Curl Mascara | ELFSAMPLE0044 [DTX-188] | October 2, 2023 Amazon |

Though Benefit's Asserted Trade Dress has been used for a nine-year period, the overwhelming evidence of third-party use of mascara products that embody all (or most) of the elements of Benefit's Asserted Trade Dress defeats any claim of exclusivity and/or source identification. Thus, this factor weighs heavily against a finding of secondary meaning. *See, e.g.*, *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985) (affirming dismissal of federal infringement claim and noting that "[e]vidence of third party usage did exist and is relevant to disprove the existence of secondary meaning."); *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 802 (9th Cir. 1970) (finding that third-party use of the term "sure" in advertising "militat[ed] against a finding of secondary meaning in plaintiff's slogans" because of "lack of exclusivity."); *Mosaic Brands, Inc. v. Ridge Wallet LLC*, No. 2:20-cv-04556, 2021 U.S. Dist. LEXIS 193285, at *17 (C.D. Cal. Aug. 5, 2021) (finding no secondary meaning on summary judgment and noting that the "plethora of similar on products online lessens the possibility of SMCII's trade dress having a secondary meaning.").

1    Finally, e.l.f.'s beauty industry expert will opine that the third element in Benefit's Asserted

2    Trade Dress—namely, the color matching of letters on the base to the color of the cap—is a common

3    design practice.

4              **b.      Sales, Advertising, and Marketing Materials**

5              Benefit submits evidence of sales, advertising expenditures, and representative marketing

6    materials in support of its claim that Benefit's Asserted Trade Dress has acquired distinctiveness

7    through secondary meaning, but its purported evidence fails for at least two reasons.

8              First, Benefit's evidence of advertising and marketing materials does not emphasize,

9    highlight, or draw attention to the elements identified as part of Benefit's Asserted Trade Dress

10   (namely, the pink top, black base, and matching pink writing on the base) as source identifiers. *See*

11   *Walker & Zanger*, 549 F. Supp. 2d at 1180 (rejecting plaintiff's claim that eight million dollars of

12   advertising expenditures supports claim of secondary meaning in trade dress and noting that "[t]o

13   be probative of secondary meaning, the advertising must direct the consumer to those features

14   claimed as trade dress; merely 'featuring' the relevant aspect of the product does not suffice.")

15   Because none of Benefit's advertising or marketing materials directs consumers to "look for"

16   Benefit's Asserted Trade Dress, it is not probative of secondary meaning and the sales and

17   advertising expenditures do not suffice. *See First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378,

18   1383 (9th Cir. 1987) ("[A] large expenditure of money does not in itself create legally protectable

19   rights. . . . The test of secondary meaning is the effectiveness of the effort to create it." (Internal

20   quotation marks and citations omitted)); *CG Roxane LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d

21   1019, 1031 (N.D. Cal. 2008) (noting that "extensive" advertising expenditures may be insufficient

22   to support an inference of secondary meaning and finding that "plaintiff's advertisements do not

23   emphasize the mark as a distinct way to identify the producer of the product, which would be very

24   difficult considering the mark's widespread use in the industry."). Indeed, to hold otherwise and

25   "provide protection based on [mere] extensive advertising would extend trade dress protection to

26   the design of every product with national marketing." *Walker & Zanger*, 549 F. Supp. 2d at 1180.

27             Second, Benefit's purported evidence of secondary meaning does not support a finding of

28   acquired distinctiveness in Benefit's Asserted Trade Dress because all of the evidence features

Benefit's **actual** embodiment (which includes, *inter alia*, the diamond design on the cap, the ribbed collar, and the tapered base) rather than merely featuring Benefit's Asserted Trade Dress (the pink top, black base, and matching pink writing on the base). As a result, any purported evidence of secondary meaning is likely attributable to consumer association of the highly prominent, aforementioned design elements with Benefit rather than the commonplace elements comprising Benefit's Asserted Trade Dress. Accordingly, Benefit's sales, advertising, and marketing materials do not support a finding of secondary meaning in Benefit's Asserted Trade Dress.

Given the lack of direct and circumstantial evidence supporting secondary meaning, Benefit's Asserted Trade Dress is unprotectable because it has not acquired distinctiveness through secondary meaning.

### 2.     Benefit's Asserted Trade Dress Is Generic

In the context of trade dress, "the term 'genericness' covers three situations: (1) if the definition of a product design is overbroad or too generalized; (2) if a product design is the basic form of a type of product; or (3) **if the product design is so common in the industry that it cannot be said to identify a particular source**." *Walker & Zanger*, 549 F. Supp. 2d at 1174 (emphasis added). Where the plaintiff asserts infringement of unregistered trade dress, "non-genericness is a *prima facie* element of a plaintiff's claim for trade dress infringement." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 68 F. Supp. 3d 1170, 1175 (C.D. Cal. 2014); *see also Morton & Bassett, LLC v. Organic Spices, Inc.*, No. 15-CV-01849-HSG, 2016 U.S. Dist. LEXIS 120092, at *19 (N.D. Cal. Sept. 6, 2016) (dismissing trade dress infringement claim and holding that "plaintiff has the burden of proof in an unregistered mark case on the issue of genericness of the asserted mark in issue" and "[b]ecause Plaintiff has admitted that its trade dress is unregistered . . . its failure to plead that its trade dress is not generic also causes its trade dress infringement claim under the Lanham Act to fail."). The issue of non-genericness for an unregistered trade dress is a threshold question because "generic product designs are unprotectable even upon a showing of secondary meaning." *Walker & Zanger*, 549 F. Supp. 2d at 1174; *see also Indonesian Imports, Inc. v. B. H. Smith*, No. C97-3534, 1999 U.S. Dist. LEXIS 4237, at *24-25 (N.D. Cal. Mar. 30, 1999) ("Because

its claimed 'The Sak Trade Dress' is widely used in the industry, it is generic and unprotectable. Indonesian's evidence of secondary meaning is therefore irrelevant.").

As an initial matter, e.l.f. should be granted judgment on Benefit's trade dress infringement claims because Benefit has failed to meet its burden of proof to demonstrate that its asserted trade dress is not generic. Under the third prong of the genericness test, a trade dress is generic "if the product design is so common in the industry that it cannot be said to identify a particular source." *Walker & Zanger*, 549 F. Supp. 2d at 1174. Benefit has failed to provide any evidence demonstrating that its asserted trade dress is unique, uncommon, or exclusively used by Benefit in the beauty industry (generally) or mascara category (specifically). Benefit has done nothing to prove Benefit's Asserted Trade Dress is not generic other than attack e.l.f.'s substantial evidence of relevant and probative third-party use. Indeed, Benefit's failure to meet its burden of proof on this issue dates all the way back to its Complaint, where it failed to plead non-genericness as an element of its cause of action. (*See* Complaint, ECF No. 1 ¶ 95 ["[T]he Roller Lash Trade Dress has acquired distinctiveness and obtained secondary meaning when used in connection with the Roller Lash Mascara."]; *see also Amini Innovation*, 68 F. Supp. 3d at 1175 [non-genericness is "*prima facie* element" of a trade dress infringement claim]; *Morton & Bassett*, 2016 U.S. Dist. LEXIS 120092, at *19 [failure to plead non-genericness mandates dismissal].) Because Benefit has failed to provide any evidence on the issue of non-genericness—and, in fact, failed to even plead non-genericness as an element of its unregistered trade dress infringement claim—the Court must grant judgement to e.l.f. on the trade dress causes of action as a matter of law.

Notwithstanding the foregoing, the overwhelming evidence of third-party use of pink and black on mascara products supports the conclusion that Benefit's Asserted Trade Dress is highly commonplace in the beauty industry and, therefore, incapable of identifying Benefit exclusively. *See also Mana Prod., Inc. v. Columbia Cosms. Mfg., Inc.*, 65 F.3d 1063, 1071 (2d Cir. 1995) ("The color black does not . . . identify plaintiff as the source because there are countless numbers of cosmetic companies that sell black compacts. The district court properly recognized that the color black could not reasonably be given protection since it would be analogous to 'according trade dress protection to a product's 'plain brown wrapper' merely because it did not have to be brown.' We

agree that black is as common a color for a makeup case as brown is for a paper bag."). Accordingly, Benefit's Asserted Trade Dress is generic and unprotectable.

### D.     Benefit's Asserted Trade Dress Is Functional

In an action for unregistered trade dress infringement, "the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001). The Supreme Court has held that a product feature has utilitarian functionality and cannot serve as a trademark if it is "essential to the use or purpose of the article or if it affects the cost or quality of the article." *Id.* at 32. Alternatively, aesthetic functionality considers whether the asserted trade dress "would impose a significant non-reputation-related competitive disadvantage." *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 865 (9th Cir. 2020).

To assist courts in determining utilitarian functionality, the Ninth Circuit has offered several factors to consider: "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantage of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." *Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir 1998). Here, Benefit's Asserted Trade Dress yields clear utilitarian advantages. As e.l.f.'s product packaging expert will testify, the color black is highly functional and not viewed by consumers in an attention-grabbing or source-identifying fashion, regardless of whether it is paired with a unique or proprietary color. Namely, a black color base, among other things: (1) identifies to consumers that the mascara formula therein is black or very dark; (2) conveys a sense of luxury and elegance about the product; (3) hides the fill level of the mascara product so as to minimize potential consumer concern about the amount of product received; (4) obscures excess mascara product that collects on the top threaded perimeter of the base when the wand component is repeatedly removed and reinserted into the base; (5) readily coordinates with any color scheme or branding (*i.e.*, with alternate closure colors for potential future line extensions, as an example); (6) alleviates the often-difficult task of matching same targeted color for both closure and tube; and (7) facilitates incorporation of post-

consumer recycled resin (PCR). Indeed, Benefit even confirms one of these advantages—namely, that the color of the base identifies to consumers that the mascara formula is black or very dark.

In 2015, Benefit launched a black formula shade of Benefit's Roller Lash Mascara utilizing Benefit's Asserted Trade Dress with a black base on the primary component. (DTX-7 at BENEFIT001721.) Approximately one year later, in late 2016, Benefit released a brown formula shade of its Roller Lash mascara. (*Id.* at BENEFIT001721-BENEFIT001723, shown below):



The new brown shade of the Roller Lash mascara used a primary component with a brown base to indicate the brown shade of the mascara formula within the primary component. (*Id.*) Benefit's witnesses will admit that the base color of the mascara product's primary component was utilized so that customers would be able to easily distinguish black and brown at the point of purchase. The design of Benefit's Asserted Trade Dress has utilitarian functionality because of the prominent use of the color black on the base of the mascara, which provides a unique and useful method for purchasers to easily identify the color of the mascara formula within the mascara primary component at the point of purchase. *See Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d Cir. 1995) ("The fact that a trade dress is composed exclusively of commonly used or functional elements might suggest that that dress should be regarded as unprotectable[.]"); *see also Wal-Mart Stores*, 529 U.S. at 213 ("[P]roduct design almost invariably serves purposes other than source identification."). Moreover, alternative designs utilizing different colors for the base of a mascara's primary component could not have achieved the same utilitarian advantage.

With respect to aesthetic functionality, "product features that have aesthetic functionality serve an aesthetic purpose wholly independent of any source-identifying function." *Zest Anchors,*

*LLC v. Geryon Ventures, LLC*, No. 22-55704, No. 22-55778, 2023 U.S. Dist. LEXIS 8093, at *5 (9th Cir. Apr. 5, 2023) (citation and internal quotations marks omitted). Benefit's Asserted Trade Dress consists of an aesthetically functional color scheme in the beauty industry (the colors pink and black) that provides non-reputation-related competitive advantages. These competitive advantages include the following: black easily combines with any other color; black is indicative of the most common color of mascara; pink is commonly associated with romance and femininity (in fact, "pink sells" is a well-known and commonly used phrase in the beauty industry); and matching writing to another color used on the primary component is a common design technique that helps make the product look cohesive. *See also Mana Prod.*, 65 F.3d 1063, 1071 (2d Cir. 1995) ("The color black does not . . . identify plaintiff as the source because there are countless numbers of cosmetic companies that sell black compacts.").

Given the utilitarian and aesthetic advantages associated with using pink and black for a mascara product, Benefit cannot meet its burden to show that Benefit's Asserted Trade Dress is not functional. Accordingly, Benefit's Asserted Trade Dress is not protectable.

## IV.   THERE IS NO LIKELIHOOD OF CONFUSION WITH RESPECT TO ANY OF BENEFIT'S INFRINGEMENT OR UNFAIR COMPETITION CLAIMS

In the Ninth Circuit, courts "look to the eight [non-exhaustive] *Sleekcraft* factors for guidance in assessing the likelihood of consumer confusion: (1) strength of the protected mark; (2) proximity and relatedness of the goods; (3) type of goods and the degree of consumer care; (4) similarity of the protected mark and the allegedly infringing mark; (5) marketing channel convergence; (6) evidence of actual consumer confusion; (7) defendant's intent in selecting the allegedly infringing mark; and (8) likelihood of product expansion." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1125 (9th Cir. 2014) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)). These factors are flexible, and not all factors are equal: "applying the *Sleekcraft* test is not like counting beans," and "[s]ome factors are much more important than others, and the relative importance of each individual factor will be case-specific." *One Indus., LLC v. Jim O'Neal Distrib.*, 578 F.3d 1154, 1162 (9th Cir. 2009).

As discussed more fully below, an application of the *Sleekcraft* factors favors a finding that

1    there is no likelihood of confusion with respect to any of Benefit's infringement claims.

2        **A.    There Is No Actual Consumer Confusion (Factor 6)**

3        Actual confusion is often the best evidence of a likelihood of confusion among consumers.

4    *See Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 633 (9th Cir. 2005) ("Evidence of actual

5    confusion by consumers is strong evidence of likelihood of confusion."). By the same token, a lack

6    of actual confusion during a period of meaningful coexistence between two parties is powerful

7    evidence that there is no likelihood of confusion. *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843 (9th

8    Cir. 2002) (noting that "lack of evidence about actual confusion after an ample opportunity for

9    confusion can be a powerful indication that the junior trademark does not cause a meaningful

10   likelihood of confusion." (Internal quotation marks and citation omitted)); *Brookfield Commc'ns,*

11   *Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1050 (9th Cir. 1999) ("We cannot think of more

12   persuasive evidence that there is no likelihood of confusion between these two marks than the fact

13   that they have been simultaneously used for five years without causing any consumers to be

14   confused as to who makes what."); *Surfvivor Media*, 406 F.3d at 633 (noting that "scant evidence

15   of actual confusion in the record" and survey commissioned by the defendant showing an "absence

16   of significant confusion" caused this factor to weigh against a finding of likelihood of confusion).

17       Despite coexistence for nearly two years—including e.l.f.'s sale of more than two million

18   units of e.l.f.'s Lash 'N Roll Mascara and millions of impressions on social media—Benefit

19   concedes that there is no evidence of actual confusion between Benefit's Roller Lash Mascara and

20   e.l.f.'s Lash 'N Roll Mascara. (ECF No. 115, Plaintiff Benefit Cosmetics LLC's [Proposed] Findings

21   of Fact and Conclusions of Law ¶¶ 227, 250, 308.) This fact is undisputed and will be supported by

22   trial testimony from each of Benefit's witnesses. Because of the length of time during which there

23   has been coexistence and a high volume of products sold nationwide by both parties, the absence of

24   actual confusion is strong evidence that there is no likelihood of confusion. *See La Canada Ventures,*

25   *Inc., v. MDAlgorithms, Inc.*, No. 22-CV-07197, 2024 U.S. Dist. LEXIS 137560, at *9 (N.D. Cal.

26   Aug. 2, 2024) ("[A] plaintiff's failure to offer any proof indicating actual confusion despite years of

27   coexistence tends to show that this factor weighs in favor of the defendant."); *E & J Gallo v. Proximo*

28   *Spirits, Inc.*, No. CV-F-10-411, 2012 U.S. Dist. LEXIS 10669, at *46-47 (E.D. Cal. Jan. 27, 2012)

1  (holding that "lack of evidence of actual confusion" over "many months of coexistence" is

2  "significant," and that this factor "weighs heavily in favor of a finding of no likelihood of

3  confusion."); *World Champ Tech LLC v. Peloton Interactive, Inc.*, No. 21-CV-03202, 2024 U.S.

4  Dist. LEXIS 27975, at *35 (N.D. Cal. Feb. 16, 2024) ("Given that the parties' products have

5  coexisted in the marketplace since September 2020, the lack of evidence of actual confusion weighs

6  in the defendant's favor at the summary-judgment stage.").

7         Furthermore, Benefit provided no survey evidence of consumer confusion. Although survey

8  evidence is not required to show likelihood of confusion, Benefit's decision to provide no survey

9  evidence warrants an adverse inference that the results of such a survey would be unfavorable. *See*

10  *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1041 (C.D. Cal. 1998) ("[A] plaintiff's failure to

11  conduct a consumer survey, assuming it has the financial resources to do so, may lead to an inference

12  that the results of such a survey would be unfavorable."); *James R. Glidewell Dental Ceramics, Inc.*

13  *v. Keating Dental Arts, Inc.*, No. SACV 11-1309-DOC, 2013 U.S. Dist. LEXIS 24824, at *25 (C.D.

14  Cal. Feb. 21, 2013) ("Plaintiff failed to provide a consumer survey showing a likelihood of

15  confusion, which 'warrants a presumption that the results would have been unfavorable.'"); *Network*

16  *Automation, Inc. v. Hewlett-Packard Co.*, No. 08-cv-4675, 2009 U.S. Dist. LEXIS 125835, at *29

17  (C.D. Cal. Sept. 14, 2009) ("Plaintiff failed to submit a survey or expert report demonstrating

18  confusion, which weighs against a finding actual confusion.").

19         Significantly, the Court need not rely solely upon the adverse inference. e.l.f. retained a well-

20  qualified consumer survey expert, Dr. Sarah Butler, to conduct a survey to assess whether there is a

21  likelihood of confusion in the point-of-sale environment between Benefit's Roller Lash Mascara

22  and e.l.f.'s Lash 'N Roll Mascara (including the word marks and asserted trade dress at issue).[2]

23  Ms. Butler's survey evidence is the most compelling evidence that there is no likelihood of

24  confusion, and thus, her survey results bolster the adverse inference. Specifically, Ms. Butler's

25  point-of-sale consumer survey found net confusion of only five percent (5%), meaning that after

26  excluding the percentage of consumers who thought other unrelated products from third-parties

27

28  _____

[2] As Benefit concedes that it does not allege post-sale confusion (*see* ECF No. 82 at 30, 31), only the lack of likelihood of confusion in the point-of-sale environment will be addressed.

were associated with Benefit, only a net of five percent of consumers believed that e.l.f.'s Lash 'N Roll Mascara was sourced from, associated with, or licensed by Benefit. Ms. Butler's survey is powerful evidence against a finding of likelihood of confusion because "[w]hen the percentage results of a confusion survey dip below 10%, they can become evidence which will indicate that confusion is not likely." 5 McCarthy § 32:189; *see also Diana Princess of Wales Mem'l Fund v. Franklin Mint Co.*, 216 F.3d 1082 (9th Cir. 1999) (same); *QS Wholesale, Inc. v. Rox Volleyball, Inc.*, No. SACV13-0512, 2014 U.S. Dist. LEXIS 207325, at *23 (C.D. Cal. Dec. 31, 2014) ("Courts reviewing surveys with confusion rates under ten percent have found no confusion."); *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1040 (C.D. Cal. 1998) ("[S]urvey evidence clearly favors the defendant when it demonstrates a level of confusion much below ten percent."). While Benefit relies on the expert testimony of Dr. Jeffrey Stec to critique Ms. Butler's survey, she effectively rebuts these arguments.

Accordingly, this factor weighs heavily against a finding of likelihood of confusion.

### B.    The Strength of the Mark Factor Favors e.l.f. (Factor 1)

#### 1.    Benefit's ROLLER LASH and HOOK 'N' ROLL Marks Are Weak

While Benefit's word marks are the subject of incontestable registrations, and thus cannot be deemed invalid as being merely descriptive, their strength remains highly relevant to the likelihood of confusion analysis. With respect to word marks, the strength of a mark is determined in two ways: conceptual strength (*i.e.*, the inherent distinctiveness of the mark) and commercial strength (*i.e.*, consumer awareness of the mark in the marketplace). *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1149 (9th Cir. 2011).

Conceptual strength involves classification of a mark along a "spectrum of generally increasing inherent distinctiveness as generic, descriptive, suggestive, arbitrary, or fanciful." *Id.* "A mark's conceptual strength depends largely on the obviousness of its connection to the good or service to which it refers." *Id.* (internal citations and quotation marks omitted). Whereas "[d]escriptive terms directly describe the quality or features of a product," a "suggestive mark conveys an impression of a good but requires the exercise of some imagination and perception to reach a conclusion as to the product's nature." *Brookfield Comms.*, 174 F.3d at 1058 n.19. The Ninth

1  Circuit has held that both descriptive and suggestive marks are presumptively weak. *Nutri/System,*

2  *Inc. v. Con-Stan Indus.*, 809 F.2d 601, 605 (9th Cir. 1987) ("[D]escriptive or suggestive marks are

3  'weak.'"). Importantly, the "incontestable status of [a plaintiff's] mark does not require a finding

4  that the mark is strong." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1142 n.3 (9th Cir. 2002).

5  Here, Benefit's marks are conceptually weak as either descriptive or suggestive marks.

6       Benefit's word marks include the terms "Roller," "Lash," "Hook," and "Roll," which either

7  describe or suggest some aspect of its mascara product. Specifically, the terms "Roller" and "Lash"

8  in Benefit's ROLLER LASH mark describe how consumers should **roll** their **lashes** with the

9  mascara product to achieve the intended curling effect. This is further evidenced by the Roller Lash

10  product's secondary packaging, which states the following about the mascara product: "IT'S A

11  ROLLER FOR LASHES." (PTX034 at 10; DTX-169B; DTX-169C.) Furthermore, the terms

12  "Hook" and "Roll" in Benefit's HOOK 'N' ROLL mark describe the mascara brush component,

13  which has an advertised "**hook** design" that "catches, lifts, and curls" lashes when you **roll** the brush

14  on the lashes. (*Id.*). Because Benefit's word marks are highly descriptive and/or suggestive, they are

15  conceptually weak and are entitled to only a narrow scope of protection. *See Juice Generation, Inc.*

16  *v. GS Enters, LLC*, 794 F.3d 1334, 1339 (Fed. Cir. 2015) ("Marks that are descriptive or highly

17  suggestive are entitled to a narrower scope of protection, i.e., are less likely to generate confusion

18  over source identification, than their more fanciful counterparts.").

19       Turning to the commercial strength of Benefit's word marks, "[u]se of similar marks by

20  third-party companies in the relevant industry weakens the mark at issue." *M2 Software, Inc. v.*

21  *Madacy Ent.*, 421 F.3d 1073, 1088 (9th Cir. 2005). The crowded field of cosmetic products that use

22  the term "Roller," Roll-formatives," or the term "Lash" indicates the commercial weakness of

23  Benefit's word marks. (DTX-167; PTX021.) Thus, Benefit's word marks are weak, and this factor

24  weighs against a finding of likelihood of confusion.

25            **2.**    **Benefit's Asserted Trade Dress Is Weak**

26       To the extent the Court finds that Benefit's Asserted Trade Dress is protectable, it is

27  nonetheless weak and entitled to a narrow scope of protection. Courts have indicated that the

28  "generic" to "arbitrary" spectrum may be inapt in the context of claims for trade dress infringement.

*See Sazerac Co. v. Fetzer Vineyards, Inc.*, 251 F. Supp. 3d 1288, 1306 n.15 (N.D. Cal. 2017) (noting that the Supreme Court's decision in "*Wal-Mart* suggests that the . . . spectrum is limited to word marks."); *see also* 1 McCarthy § 11:4 ("The spectrum of descriptive, suggestive, arbitrary and fanciful was created to categorize word marks. It is not suitable for non-word designations such as shapes and images and trade dress such as package and product design."). Instead, some courts have looked at whether the trade dress has attained secondary meaning to determine the strength of the claimed trade dress. *See, e.g., Glob. Tobacco, LLC v. R.K. Co.*, No. 15-cv-05227, 2015 U.S. Dist. LEXIS 190441, at *14-15 (C.D. Cal. Sept. 24, 2015) ("Plaintiff's showing that the Clipper Trade Dress has acquired secondary meaning, and thus commercial strength, weighs in favor of a likelihood of confusion."). As set forth above, Benefit's Asserted Trade Dress cannot be inherently distinctive nor has it acquired distinctiveness. Moreover, given the substantial third-party use of mascara products that embody all (or most) elements of Benefit's Asserted Trade Dress, it is clear that Benefit's Asserted Trade Dress is weak, if it is protectable at all. *See M2 Software, Inc.*, 421 F.3d at 1088 ("Use of similar marks by third-party companies in the relevant industry weakens the mark at issue."). As such, Benefit's Asserted Trade Dress is not strong, and this factor weighs against likelihood of confusion.

### C.      The Relevant Consumers Are Sophisticated (Factor 3)

Courts assessing the degree of consumer care factor consider "the typical buyer exercising ordinary caution" in purchasing the products at issue. *Sleekcraft*, 599 F.2d at 353. However, "[w]hen the buyer has expertise in the field, a higher standard is proper though it will not preclude a finding that confusion is likely." *Id*. Notably here, customers of skincare and cosmetics products exercise a high degree of care and precision in their purchasing decisions. *See Boost Beauty, LLC v. Woo Signatures, LLC*, No. 2:18-cv-02960, 2022 U.S. Dist. LEXIS 24515, at *30 (C.D. Cal. Feb. 7, 2022) (finding that consumers exercise a higher degree of care and brand consciousness with regard to "cosmetic products that consumers must apply to a sensitive portion of the body."); *Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1280 (C.D. Cal. 2008) ("[C]ourts have recognized that purchasers of fragrances and skin care products also exercise a higher degree of care and brand consciousness."); *Glow Indus v. Lopez*, 273 F. Supp. 2d 1095, 1127 (C.D. Cal. 2003)

("Courts have recognized that purchasers of skin care products tend to exercise a high degree of care and brand consciousness."); *GoSmile, Inc. v. Levine*, 769 F. Supp. 2d 630, 648 (S.D.N.Y. 2011) ("Courts have treated consumers of beauty products as attentive purchasers.").

Here, the goods at issue are mascara products (cosmetics) that consumers apply to a sensitive portion of the body—the face. e.l.f.'s beauty industry expert will testify that consumers in the cosmetics industry are particularly equipped to differentiate between the parties' respective products because they are sophisticated and highly discerning with respect to their cosmetic product purchases. This is especially true for mascara, which is one of the most commonly used facial cosmetics products. In addition, Benefit's Roller Lash Mascara is sold at a higher price point of $29 when compared to the $6 price point of e.l.f.'s Lash 'N Roll Mascara (ECF No. 115 ¶¶ 153, 237), which further reduces the likelihood of confusion.[3] *See His & Her Corp. v. Shake-N-Go Fashion, Inc.*, No. 2:11-cv-05323, 2015 U.S. Dist. LEXIS 44874, at *38 (C.D. Cal. Mar. 30, 2015) ("[C]ourts have held that consumers buying relatively expensive … cosmetic goods exercise a high degree of care."). Finally, e.l.f.'s beauty industry expert will testify that consumers' designation of e.l.f.'s Lash 'N Roll Mascara as a "dupe" of Benefit's Roller Lash Mascara is strong evidence that consumers understand that the two products do not emanate from the same source and are not affiliated at all since, in the beauty industry, a "dupe" refers to a functionally comparable yet lower-price alternative product from a competitor.

Accordingly, this factor strongly weighs against a finding of likelihood of confusion.

**D.     There Is Limited Marketing Channel Convergence (Factor 5)**

"When examining the marketing channels used by the competing companies, [courts] consider where the goods or services are sold, the sales and marketing methods employed, and the class of purchasers exposed to the marketing efforts." *La Quinta Worldwide LLC v. Q.R.T.M., S.A.*

---

[3] Benefit also offers a "mini" version of Benefit's Roller Lash Mascara, which retails for only $15. (ECF No. 115 ¶¶ 153, 237.) Despite the lower price point, the "mini" Roller Lash mascara is not competitive with e.l.f.'s Lash 'N Roll Mascara since it costs more than 2.5 times the price and carries less than half the amount of product ("mini" Roller Lash is 0.14 oz.; Roller Lash is 0.3 oz. and Lash 'N Roll is 0.32 oz.). (PTX150; PTX264; PTX265.)

1  *de C.V.*, 762 F.3d 867, 876-77 (9th Cir. 2014).

2        The parties' mascara products have different brand positioning, which materially

3  differentiates the way the products move through trade and marketing channels. For example,

4  Benefit's Roller Lash Mascara is a prestige cosmetics product with a high price point ($29) that is

5  located in higher-end channels of trade, including boutiques, department stores, specialty cosmetic

6  stores (such as Sephora), Ulta Beauty ("Ulta"), and online. Conversely, e.l.f.'s Lash 'N Roll Mascara

7  is a mass cosmetics product with a low price point ($6) that is found in more affordable mass

8  channels of trade, including drugstores (CVS, Walgreens), supermarkets, big box retailers (Walmart

9  and Target), Ulta (alongside other mass beauty brands), and online.

10        The **only** brick-and-mortar stores where both parties' products are sold are Ulta and select

11  "store in store" Ultas within Target. And even within this singular, overlapping brick-and-mortar

12  trade channel, the parties' mascaras have different visual merchandising and retail store displays

13  that distinguish them among consumers. Specifically, at Ulta, Benefit's Roller Lash Mascara is

14  afforded special treatment as a prestige product and is given its own section of the store where all

15  Benefit-branded products are clearly labeled and grouped together. This block branding allows

16  Benefit to, among other things, use its own signage and display photographs and images of its latest

17  product offering and ad campaigns. Meanwhile, mass products—like e.l.f.'s Lash 'N Roll

18  Mascara—are brand blocked together in a separate part of the Ulta store and use typical stock

19  shelving that is labeled to display their products. In Target, Benefit's Roller Lash Mascara is found

20  in the Ulta "store in store" where it is brand blocked next to other prestige brands. Conversely,

21  e.l.f.'s Lash 'N Roll Mascara is found in the Target section of the store in an e.l.f. display that has

22  stock shelving as shown below:

23  | Ulta Store-In-Store within Target – Roller Lash Found Here |



DEFENDANT E.L.F. COSMETICS, INC.'S TRIAL BRIEF



This brand-blocking arrangement, in addition to other factors, ensures that consumers will not be confused between Benefit's prestige products and e.l.f.'s mass products.

Furthermore, although both parties sell their products and advertise online, this fact does not weigh in favor of likelihood of confusion. *See Network Automation*, 638 F.3d at 1151 ("Today, it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion."); *Playboy Enters. v. Netscape Commus. Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2001) ("Given the broad use of the Internet today . . . this factor merits little weight.").

Accordingly, given that the parties share only one brick-and-mortar trade channel in which they are clearly differentiated from each other, this *Sleekcraft* factor favors a finding of no likelihood of confusion.

### E.   The Proximity of the Goods Factor Favors e.l.f. (Factor 2)

"[T]he proximity of the goods . . . become[s] less important if advertisements are clearly labeled or consumers exercise a high degree of care, because rather than being misled, the consumer would merely be confronted with choices among similar products." *Network Automation*, 638 F.3d at 1150. Furthermore, the Ninth Circuit has held that a court should "apply a sliding scale approach as to the weight that relatedness will carry dependent upon the strength of the trademark holder's mark." *Entrepreneur Media*, 279 F.3d at 1148; *see also La Canada Ventures*, No. 22-cv-07197, 2024 U.S. Dist. LEXIS 137560, at *13 (finding similarity of goods factor to be neutral despite the fact that "the parties' acne products are close in proximity as both are skincare products," in part, because the plaintiff's "mark is relatively weak.")

Here, although the products at issue are both curling mascara products, they exist in different markets (*i.e.*, prestige v. mass), they exist at different price points (*i.e.*, U.S. $29 for Benefit's Roller Lash Mascara and U.S. $6 for e.l.f.'s Lash 'N Roll Mascara), consumers exercise a high degree of care with respect to their purchasing decisions about these products, and there is no dispute that both e.l.f. and Benefit clearly label their marketing and advertising materials as shown below:

 

(PTX063; PTX061). Furthermore, as discussed above, Benefit's word marks and Benefit's Asserted Trade Dress are weak.

Accordingly, e.l.f. contends that this factor should be accorded minimal weight and, to the extent it is considered in the *Sleekcraft* analysis, it weighs against a finding of likelihood of confusion or is neutral at worst.

## F.  The Similarity of the Marks Favors e.l.f. (Factor 4)

The similarity of the marks "has always been considered a critical question in the likelihood-of-confusion analysis." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). The Ninth Circuit has "developed three axioms that apply to the 'similarity' analysis: 1) Marks should be considered in their entirety and as they appear in the marketplace; 2) Similarity is best adjudged by appearance, sound, and meaning; and 3) Similarities weigh more heavily than differences." *Entrepreneur Media*, 279 F.3d at 1144. Importantly, courts may "assess individual features of the mark" even if the decision rests on the overall similarity. *See Glow Indus. V. Lopez*, 273 F. Supp. 2d 1095, 1122 (C.D. Cal. 2003). Crucially, the presence of a house mark may limit or entirely eradicate any likelihood of confusion between two otherwise similar marks. *See, e.g., Cohn*

*v. Petsmart, Inc.*, 281 F.3d 837, 842 (9th Cir. 2002) (finding that a prominent house mark "has the potential to reduce or eliminate likelihood of confusion."); *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1093 (C.D. Cal. 2003) (finding that the use of a house mark reduced or eliminated the likelihood of confusion); *Walter v. Mattel, Inc.*, 31 F. Supp. 2d 751, 760 (C.D. Cal. 1998) ("Otherwise similar marks are not likely to be confused where used in conjunction with the clearly displayed name and/or logo of the manufacturer"); *see also* 3 McCarthy § 23:43 ("[A]s a generalization . . . a junior user's addition of a house mark to a possibly infringing mark of the senior user has the potential to reduce or eliminate likelihood of confusion.").

Furthermore, to the extent Benefit seeks to rely upon the "conjoint use rule" to argue that "the LASH 'N ROLL mark is essentially a conglomeration of the two registered Benefit trademarks" (ECF No. 115 ¶ 223), the doctrine is not applicable here and Benefit's reliance thereon is misplaced. Besides the fact that Benefit has not used the term "conjoint use rule" or acknowledged the legal doctrine, to take advantage of the rule, two elements must be satisfied: (1) the asserted marks must have been and are still being used together on a single product or together in promotion or advertising; and (2) such use must be to an extent that the purchasing public has come to associate them together in connection with a single product as indications of origin for the product. *See Schering-Plough HealthCare Prods. v. Ing-Jing Huang,* 2007 TTAB LEXIS 67, at *9-10 (T.T.A.B. June 18, 2007). Here, even assuming *arguendo* that Benefit has used the marks together, they fall far short of the second part of the test: Benefit provides no evidence that consumers have come to associate its ROLLER LASH and HOOK 'N ROLL marks together in connection with a single product as indications of origin. Therefore, Benefit cannot rely on the conjoint use rule here.

When Benefit's word marks and asserted trade dress are compared to e.l.f.'s LASH 'N ROLL mark and e.l.f.'s Lash 'N Roll Mascara, there is no confusing similarity.

### 1.     ROLLER LASH and LASH 'N ROLL Are Not Similar

With respect to the "sight" and "sound" prongs, e.l.f.'s LASH 'N ROLL mark is not similar to Benefit's ROLLER LASH mark. Although both marks include the term "Lash," the word is highly descriptive when used in connection with mascara because mascara is applied onto the consumer's eyelashes. Indeed, this is evidenced by the fact that there are numerous cosmetic

product trademark registrations that use the word "Lash." (*See* PTX021.) As a result, the commonality of the term "Lash" in ROLLER LASH and LASH 'N ROLL should be heavily discounted in the similarity of the marks analysis. *See iCall, Inc. v. Tribair, Inc.*, No. C-12-2406, 2012 U.S. Dist. LEXIS 166695, at *23 (N.D. Cal. Nov. 21, 2012) ("[T]he Court discounts to some degree the similarity of the word 'Call,' which is a component in both the 'iCall' and 'WiCall' marks" because the "word 'Call' is clearly a descriptive word, i.e., a word used to describe the VoIP calling product and service."); *see also Cachet Fin. Servs. v. Cachet Fin. Sols., Inc.*, No. CV 13-1546, 2015 U.S. Dist. LEXIS 189136, at *21 (C.D. Cal. Sept. 21, 2015) ("This take[s] into account the fact that consumers may well recognize that companies use descriptive terms for what they mean, not because of an association with any one company." (Internal quotation marks and citation omitted)).

Furthermore, Benefit uses the term ROLLER in the first and dominant portion of its mark whereas e.l.f. uses the term ROLL in the last portion of its mark. As a result of the terms appearing in entirely different portions of each party's mark, and as a result of e.l.f.'s use of the term 'N in the middle of its mark, the ROLLER LASH mark and LASH 'N ROLL mark look and sound completely different.

The parties' marks also are dissimilar as a result of their unique stylizations and the prominent use of each party's respective house mark, particularly on e.l.f.'s Lash 'N Roll Mascara:





As shown above, Benefit presents its ROLLER LASH mark in a peach color that matches the cap color of its mascara product. ROLLER LASH is presented horizontally on the tube, in a script

font, and with capitalization for the first letter in each word and lower-case for the remaining letters. The BENEFIT house mark appears in classic serif font with an italic "f" in a perpendicular orientation to the ROLLER LASH mark at the top of the tube. Conversely, e.l.f. presents its LASH 'N ROLL mark in a pale pink color that matches the cap color of its mascara product. The parties' colors are completely dissimilar and would likely not be both described as "pink" by consumers (*see* § IV(F)(3), *infra*). e.l.f.'s LASH 'N ROLL mark is presented horizontally on the tube—in sans serif font that is one of e.l.f.'s brand fonts—and is all capitalized, except for the "n", which is a serif font. The e.l.f. house mark appears in the largest font on the product, much larger than the LASH 'N' ROLL product name. The e.l.f. logo is designed in a modern sans serif font. Most importantly, the foregoing stylistic and presentation differences are utilized by the parties with respect to virtually all of their packaging, marketing, and advertising for these products.

With respect to meaning, the term "Roller" in the ROLLER LASH mark is a noun that is likely to be understood by consumers in a descriptive manner based on Benefit's instruction to consumers that they should **roll** their **lashes** with the mascara product to achieve the intended curling effect. (PTX034 at 10; DTX-169B; DTX-169C.) Conversely, the term "Roll" in e.l.f.'s LASH 'N ROLL mark is likely to be understood by consumers as a play on "Rock 'N Roll." (*See* PTX007 at ELF0005025- ELF0005027.)

To the extent that Benefit argues that ROLLER LASH and LASH 'N ROLL are similar because a third-party clearance search report characterized ROLLER LASH as a "near identical mark," the evidence is not relevant. In any regard, such characterization is more than countered by the fact that when evaluating e.l.f.'s federal trademark application to register the LASH 'N ROLL mark, the Examining Attorney at the U.S. Patent and Trademark Office did not cite either the ROLLER LASH or HOOK 'N' ROLL mark as a potential bar to registration under Section 2(d) of the Lanham Act, as he was required to do if he found that they were conflicting marks. *See* Trademark Manual for Examining Procedure § 704.02 ("If the examining attorney finds no conflicting marks . . . the examining attorney must inform the applicant that no conflicting marks have been found.").

In light of the foregoing differences, Benefit's ROLLER LASH mark and e.l.f.'s LASH 'N

ROLL mark are not confusingly similar.

### 2.     HOOK 'N' ROLL and LASH 'N ROLL Are Not Similar

Benefit's HOOK 'N' ROLL mark and e.l.f.'s LASH 'N ROLL mark are not similar in appearance, sound, or meaning. Although both marks include "N Roll" in common, the first and dominant portions of the marks are very different—namely, the term HOOK versus the term LASH. The term "Hook" in the HOOK 'N' ROLL mark is a noun that is descriptive of Benefit's hook-designed brush. On the other hand, the term "Lash" in e.l.f.'s LASH 'N ROLL mark is a noun that is descriptive of where the mascara product is applied around the eye.

Furthermore, because Benefit owns the HOOK 'N' ROLL mark for "a makeup applicator sold as a component of cosmetics" (PTX280) rather than for "mascara" (like its ROLLER LASH mark), the HOOK 'N' ROLL mark is presented in an extremely different manner than both Benefit's ROLLER LASH mark and e.l.f.'s LASH 'N ROLL mark. Benefit's HOOK 'N' ROLL mark does not appear anywhere on the primary component of Benefit's Roller Lash Mascara— rather, it appears in small font on the side and/or back of the secondary packaging for Benefit's Roller Lash Mascara. Because the HOOK 'N' ROLL mark appears in a discreet manner on the back/side of secondary packaging, consumers are not likely to confuse it with e.l.f.'s LASH 'N ROLL mark, which is used in a prominent manner and as the brand name for a mascara product.

### 3.     Benefit's Asserted Trade Dress and
### e.l.f.'s Lash 'N Roll Mascara Are Not Similar

Benefit's Asserted Trade Dress and e.l.f.'s Lash 'N Roll Mascara are not similar. The visual dissimilarities between Benefit's Asserted Trade Dress and e.l.f.'s Lash 'N Roll Mascara are striking and plainly evident. With respect to the primary component mascara tube, the following non-exhaustive differences are immediately apparent:

- While not claimed as elements of Benefit's Asserted Trade Dress, Benefit's Roller Lash Mascara utilizes a custom primary component that includes: (1) a diamond pattern on the cap; (2) a prominent ribbed collar; and (3) a reverse-tapered base shape. e.l.f.'s Lash 'N Roll Mascara utilizes stock components and does not include any of the foregoing design elements.

- Benefit's Asserted Trade Dress and e.l.f.'s Lash 'N Roll Mascara utilize different color caps. Benefit uses a cap color that is closest to Pantone PMS 1625M and more commonly referred to in layman's terms as a matte salmon, coral, or peach color. By

1   contrast, e.l.f.'s Lash 'N Roll product uses a cap color that is closest to Pantone PMS
2   4065-C and more commonly referred to in layman's terms as a glossy flamingo color.

3   • Benefit's Roller Lash Mascara and e.l.f.'s Lash 'N Roll Mascara utilize differing
    fonts on their bases. Specifically, Benefit uses a script font for its ROLLER LASH
4   mark whereas e.l.f. uses an entirely distinguishable, "all-caps," sans-serif font for its
    LASH 'N ROLL mark.
5

6   • Benefit's Roller Lash Mascara prominently features the BENEFIT house mark
    whereas e.l.f.'s Lash 'N Roll Mascara prominently features the e.l.f. house mark
7   before the LASH 'N ROLL word mark. Benefit's house mark appears at the top of
    the base (just beneath the closure) and perpendicular to the ROLLER LASH mark,
8   while the e.l.f. house mark appears at the bottom of the base in extra-large font size
    and prior to/in-line-with the LASH 'N ROLL mark. The largest font on either of the
9   mascara products at issue is the e.l.f. house mark.

10  Moreover, the point-of-sale differences between the parties' mascara products are even more

11  apparent given that the products are sold in their secondary component packaging, as shown below:

| e.l.f.'s Lash 'N Roll Mascara | Benefit's Roller Lash Mascara |
|---|---|
|  |  |

21  With respect to the parties' secondary component packaging,[4] the cartons containing the

22  products are strikingly different in appearance, with both versions of Benefit's carton lacking a

23  window and e.l.f.'s carton containing a large window revealing the majority of the product inside.

24  Other plain and obvious differences include colors, graphic treatment, surface treatment (matte vs.

---

[4] e.l.f. notes that Benefit has two versions of its secondary component packaging—one with a
"wing" and one without a "wing." The winged version was originally introduced along with the
product in 2015, but it was recently phased out for "environmental purposes." Benefit's Roller
Lash Mascara is currently sold in secondary packaging without a "wing."

glossy), branding and word marks, and other carton design features. For example, as noted above, Benefit's use of the diamond-shaped motif on the secondary packaging reinforces the diamond design element used on the cap of Benefit's Roller Lash Mascara's primary component and educates the consumer that the diamond pattern is an important focal point of Benefit's Roller Lash Mascara. Through its repeated and prominent use, Benefit is making clear to the consuming public that the diamond design is an integral part of its "brand equity" for the mascara product.

Accordingly, this factor weighs against a finding of a likelihood of confusion.

### G.    e.l.f. Did Not Intend to Confuse Consumers (Factor 7)

In the absence of any evidence of actual confusion, Benefit focuses on e.l.f.'s intent in creating e.l.f.'s Lash 'N Roll Mascara. The Ninth Circuit has recognized that copying is not inherently wrong and there are a variety of possible motivating factors for copying. *See Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 844-45 (9th Cir. 1987) ("Competitors may intentionally copy product features for a variety of reasons. They may, for example, choose to copy wholly functional features that they perceive as lacking any secondary meaning because of those features' intrinsic economic benefits."). Provided that the copying is not infringing upon an intellectual property right, it is permitted. "The successful competitor who is a second comer offers an identical or equivalent product at a lower price or with greater quality." 3 McCarthy § 23:122. Intentional copying does not automatically evince an intent to confuse consumers, which is the relevant inquiry in a trademark infringement claim. *Id.* ("If all that happens is that a junior user copies a competitor's trade dress design because it sells better and consumers seem to like it, then this is not evidence of an intent to confuse. The intent to compete by imitating the successful features of another's product is vastly different from the intent to deceive purchasers as to the source of the product." (Internal quotation marks, alterations, and citations omitted)).

With respect to e.l.f.'s LASH 'N ROLL word mark, the evidence will show that the name was musically inspired. (*See* PTX007 at ELF0005025- ELF0005027.) e.l.f has long intersected beauty and music, launching music-oriented campaigns to support its releases of products and create brand awareness. e.l.f.'s original mascara family concept was focused on music, with "Lash it Loud"

1    mascara and "Lash Beats" mascara introduced earlier to the market. The LASH 'N ROLL name

2    continued that musically-inspired theme by playing on the popular phrase "Rock 'N Roll."

3          As to the design of the primary component for e.l.f.'s Lash 'N Roll Mascara, the evidence

4    will show that Benefit's Roller Lash Mascara was an inspiration for e.l.f.'s product. However, the

5    evidence at trial also will show that e.l.f. did not intend to cause confusion with Benefit's Roller

6    Lash Mascara. Instead, e.l.f. intended to create a lower priced, mass market curling mascara product,

7    which is a more affordable alternative to a high-end prestige product in the cosmetics industry. *See*

8    *Glob. Tobacco, LLC v. R.K. Co.*, No. CV 15-05227, 2015 U.S. Dist. LEXIS 190441, at *15 (C.D.

9    Cal. Sep. 24, 2015) (finding that the intent factor was neutral when the "evidence indicates an intent

10   to copy" but there was "no evidence before the Court regarding whether Defendant specifically

11   intended to confuse consumers"); *Dayva Int'l, Inc. v. Award Prods. Corp.*, No. CV-94-7331, 1996

12   U.S. Dist. LEXIS 22973, at *22-23 (C.D. Cal. Dec. 30, 1996) (finding that plaintiff failed to

13   demonstrate a likelihood of confusion because while defendant "intended to copy numerous aspects

14   of [plaintiff's product] and incorporate them into its own," the evidence did not indicate an intent to

15   confuse or deceive consumers as to the source of its goods). e.l.f.'s beauty industry expert will testify

16   that in today's vernacular, this concept is referred to as a "dupe"—which is derived from the word

17   "duplicate," but does not mean a "copy." In the context of the beauty industry, a "dupe" refers to an

18   alternative product that provides a similar end result and function as another product, but at a more

19   affordable price point. Intending to create confusion would be anathema to creating a "dupe."

20         Moreover, with respect to product packaging, the evidence will show that e.l.f. intended to

21   use an all-pink primary component mascara tube with a pink cap and pink base. However, due to

22   timing constraints and an issue with the color of the pink cap not matching the pink base of the

23   primary component mascara tube, e.l.f. had to pivot to a black base at the eleventh hour. E.l.f. made

24   the decision to use a black base because it provided a safe resolution to the mismatch issue and is

25   one of e.l.f.'s main brand colors. The evidence unequivocally shows that e.l.f. had an intent to

26   compete with Benefit but had no intent to deceive the public about the source, affiliation, or

27   sponsorship of e.l.f.'s Lash 'N Roll Mascara.

28         Accordingly, this factor is neutral or weighs against a finding of likelihood of confusion.

1

H.      **Likelihood of Product Expansion (Factor 8)**

2

Since e.l.f. and Benefit both sell curling mascara products, this factor is neutral and should

3

not be considered.

4

I.      **Summary of *Sleekcraft* Factors**

5

Based on the foregoing analysis of the *Sleekcraft* factors, Benefit cannot meet its burden to

6

show that there is a likelihood of confusion between: (1) Benefit's ROLLER LASH mark and e.l.f.'s

7

LASH 'N ROLL mark; (2) Benefit's HOOK 'N' ROLL mark and e.l.f.'s LASH 'N ROLL mark; or

8

(3) Benefit's Asserted Trade Dress and e.l.f.'s Lash 'N Roll Mascara. Accordingly, all nine of

9

Benefit's causes of action must fail.

10

**V.      BENEFIT'S CLAIM FOR MONETARY RECOVERY MUST FAIL**

11

A.      **Benefit Is Not Claiming Actual Damages**

12

Under the Lanham Act, a prevailing plaintiff is entitled, "subject to the principles of equity,

13

to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of

14

the action." 15 U.S.C. § 1117(a). Here, Benefit has not suffered any actual damages and instead

15

requests that the Court disgorge profits relating to sales of e.l.f.'s Lash 'N Roll Mascara.

16

B.      **Benefit Is Not Automatically Entitled to a Disgorgement of Profits**

17

Disgorgement of profits is an extraordinary remedy that may only be awarded "subject to

18

the principles of equity." 15 U.S.C. § 1117(a). Indeed, "[a]n award of profits is not automatic upon

19

a finding of infringement." *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc*., 778 F.3d 1059, 1073

20

(9th Cir. 2015). In deciding whether to award any disgorgement, courts consider several equitable

21

factors, including, *inter alia*: a defendant's mental state, whether disgorgement serves the interests

22

of deterrence and fairness, whether it is a case of "palming off," and whether the plaintiff has an

23

adequate remedy at law. *See Romag Fasteners, Inc. v. Fossil, Inc*., 590 U.S. 212, 218-19 (2020)

24

(holding that willfulness, while important, does not end the inquiry); *Harbor Breeze Corp. v.*

25

*Newport Landing Sportfishing, Inc*., 28 F.4th 35, 38 (9th Cir. 2022) (citing *Romag Fasteners,* 590

26

U.S. 212); *Monster Energy Co. v. Integrated Supply Network, LLC,* 533 F. Supp. 3d 928, 933-934

27

(C.D. Cal. 2021) (citing *Romag Fasteners*, 590 U.S. 212).

28

The Supreme Court has ruled that willfulness is not "an inflexible precondition" to recovery

1   of a defendant's profits under the Lanham Act. *Romag Fasteners*, 590 U.S. at 219. The Ninth Circuit

2   has affirmed a modified rule: although not a precondition, "a defendant's mental state is a ***highly***

3   ***important consideration*** in determining whether an award of profits is appropriate." *Harbor Breeze,*

4   28 F.4th at 38. Furthermore, mere knowledge of a competitor's mark or design does not show

5   willfulness. *Am. Auto. Ass'n of N. Cal., Nev. & Utah v. Gen. Motors LLC*, 367 F. Supp. 3d 1072,

6   1103 (N.D. Cal. 2019) (finding no precedent "where a court has disgorged a defendant's profits in

7   any case based only on mere knowledge.").

8   Here, Benefit cannot show willfulness under the correct legal standard. As discussed above,

9   any infringement was not willful as there was no intent to deceive or confuse consumers. Not only

10   does Benefit fail to identify any direct evidence of willful infringement, but Benefit ignores the fact

11   that e.l.f.'s packaging always prominently bore the e.l.f. house mark since e.l.f.'s Lash 'N Roll

12   Mascara was introduced to the United States market in December 2022.

13   There is also no need for disgorgement to be awarded in the interest of deterrence or fairness.

14   This is **not** a counterfeiting case in which e.l.f. copied the trademark of another product to sell as its

15   own. *See, e.g., Fifty-Six Hope Rd. Music,* 778 F.3d at 1073 ("[T]he court must fashion a remedy

16   wherein the defendant may not retain the fruits, if any, of unauthorized trademark use or continue

17   that use [and] plaintiff is not ... [given] a windfall.") (citation and internal quotation marks

18   omitted)); *Monster Energy*, 533 F. Supp. 3d at 933-934 (finding that disgorgement was a fair and

19   effective deterrent where defendant was palming off plaintiff's products and presented a continued

20   risk of infringement); *Polo Fashions, Inc. v. Dick Bruhn, Inc.,* 793 F.2d 1132, 1134-35 (9th Cir.

21   1986) (awarding disgorgement of counterfeit products sold at cost as deterrent). Where, as here, the

22   defendant has not engaged in palming off, disgorgement is disfavored. *See Stone Brewing Co., LLC*

23   *v. MillerCoors LLC*, No. 3:18-cv-00331, 2022 U.S. Dist. LEXIS 135699, at *4-6 (S.D. Cal. July 29,

24   2022) (disgorgement was inappropriate where defendant "was not attempting to use [plaintiff's]

25   name to sell its own [product] and had a good faith belief that its product was not infringing"). There

26   is no question that e.l.f. is a legitimate business with its own successful products. e.l.f. was in no

27   way trying to palm off its products as coming from Benefit, as evidenced by the fact that the e.l.f.

28   and Benefit house marks were prominently displayed on the primary and secondary packaging of

the parties' respective mascara products. In addition, Benefit makes a claim for disgorgement knowing that there is no evidence in this case of a single customer purchasing e.l.f.'s Lash 'N Roll Mascara thinking it was a Benefit's product or that it was affiliated with or sponsored by Benefit.

Finally, since disgorgement is an equitable remedy, Benefit must show that it has no adequate remedy at law before it can recover e.l.f.'s profits. *See Monster Energy,* 533 F. Supp. 3d at 934 ("Plaintiff must demonstrate no adequate remedy at law exists in order to obtain disgorgement of Defendant's profits from its infringement.") (citing *Sonner v. Premier Nutrition Corp.,* 971 F.3d 834, 840 (9th Cir. 2020)).

**C.    The Parties Agree on the Proper Methodology to Compute e.l.f.'s Profits and on the Methodology for Apportionment**

Notwithstanding the foregoing, if the Court finds for Benefit on the merits and elects to grant Benefit's request to disgorge profits relating to sales of e.l.f.'s Lash 'N Roll Mascara, the parties agree on the methodology to calculate e.l.f.'s profits and the methodology for apportionment.

The parties provided the opinions of seasoned experts with respect to damages—John Hansen (Benefit) and Abel Teshome (e.l.f.). Mr. Hansen and Mr. Teshome agree on the revenues, cost of goods sold, and the marketing expenses (as shown below):

|  | **Total** (Through Feb. 11, '24) |
|---|---|
| Gross Revenue | $6,514,099 |
| Cost of Goods Sold | ($2,131,974) |
| Gross Profit | $4,382,125 |
| Expenses Dedicated to Lash 'N Roll Marketing | |
| Tinuiti Paid Media | ($849,800) |
| Roundel Paid Media | ($750,000) |
| Amazon On-Box Ads | ($300,000) |
| Total | ($1,899,800) |
| **Accused Profits (Excl. Creative Shoot and Sampling Costs)** | **$2,482,325** |

The parties' experts also agree that apportionment is appropriate and on the apportionment methodology. Therefore, there is no dispute regarding any methodology as to the calculations for disgorgement of profits.

The only areas of disagreement between the parties' experts relate to: (1) whether a benchmark period of approximately fifteen months (as proposed by Mr. Hansen) or twelve months (as proposed by Mr. Teshome) should be used for the apportionment analysis; and (2) which e.l.f. products should be used as benchmarks for the apportionment analysis.

### D.     e.l.f.'s Apportionment Analysis Is Correct

With respect to profit apportionment, the Court should adopt e.l.f.'s apportionment analysis. Benefit agrees that Mr. Teshome's apportionment methodology is acceptable and reliable, that product innovations and performance drive sales and profits, that e.l.f.'s Big Mood mascara product is a suitable benchmark product, and that e.l.f.'s Lash 'N Roll Mascara and Big Mood are e.l.f.'s only "Big Bet" mascaras (which receive "marketing priority"). However, whereas Mr. Teshome relies on Big Mood as the sole comparator product for the apportionment analysis and uses a 12-month benchmark period, Mr. Hansen relies on e.l.f.'s Lash it Loud, Lash Beats, and Keep Your Curl mascara products as benchmark products and uses a 15-month benchmark period.

As discussed in Mr. Teshome's report and as the image below demonstrates, e.l.f.'s Big Mood mascara product is the only comparable product to e.l.f.'s Lash 'N Roll Mascara, making it the most suitable benchmark product:

| | Lash 'N Roll | Big Mood | Lash it Loud | Lash Beats | Keep Your Curl |
|---|:---:|:---:|:---:|:---:|:---:|
| Accused of Benefit Trademark / Trade Dress | ✓ | | | | |
| e.l.f. Product | ✓ | ✓ | ✓ | ✓ | ✓ |
| Released after Decision to Focus on Mascara | ✓ | ✓ | ✓ | ✓ | ✗ |
| High Demand Advantage (Curl & Volumize) | ✓ | ✓ | ✗ | ✗ | ✓ |
| Includes Black, Pitch Black, and Deep Brown | ✓ | ✓ | ✗ | ✗ | ✗ |
| "Big Bet" – Innovation & Performance | ✓ | ✓ | ✗ | ✗ | ✗ |
| Comparable Level of Marketing Spend | ✓ | ✓ | ✗ | ✗ | ✗ |

e.l.f.'s Lash it Loud and Lash Beats mascara products offer functional advantages that are not in high demand and are not comparable to e.l.f.'s Lash 'N Roll Mascara. Moreover, e.l.f.'s Lash it Loud, Lash Beats, and Keep Your Curl were not "Big Bet" products for e.l.f. and received "very small paid media" spend.

With respect to the benchmark period, Benefit's use of a 15-month benchmark period overstates e.l.f.'s Lash 'N Roll Mascara sales relative to e.l.f.'s Big Mood mascara product sales, resulting in overstated apportionment factors. e.l.f. admits that results of operations are subject to seasonal fluctuations, with net sales in the third and fourth fiscal quarters typically being higher than in the first and second fiscal quarters. The higher net sales in our third and fourth fiscal quarters are largely attributable to the increased levels of purchasing by retailers for the holiday season and customer shelf reset activity, respectively. Based on the differing release dates of the products, Mr. Hansen's apportionment method adds approximately three months of Big Mood sales entirely occurring in the second quarter (July through September) and three months of e.l.f's Lash 'N Roll Mascara sales with the vast majority occurring in the fourth quarter (October through December). Sales during these periods are not equal, resulting in an overstatement of Lash 'N Roll sales relative to Big Mood sales and an overstated apportionment figure.

To avoid the pitfalls of Benefit's apportionment analysis, Mr. Teshome limited his apportionment analysis to the only comparable benchmark product, Big Mood, and used a benchmark period of twelve months to avoid seasonality bias. e.l.f.'s apportionment analysis is, therefore, more accurate and should be adopted by the Court.

## VI.    BENEFIT IS NOT ENTITLED TO INJUNCTIVE RELIEF

Under the Lanham Act, a plaintiff is entitled to a rebuttable presumption of irreparable harm if liability is found. *See* 15 U.S.C. § 1116. "While there is no rigid formula to rebut the presumption of irreparable harm, courts have generally found certain types of evidence to be particularly forceful in the inquiry." *Vital Pharms. v. PHD Mktg.*, No. 20-cv-6745, 2021 U.S. Dist. LEXIS 254038, at *13 (C.D. Cal. Mar. 12, 2021). Courts in the Ninth Circuit find that the following factors tend to negate the notion of irreparable harm: (1) "a plaintiff's undue delay in seeking injunctive relief"; (2) "a showing of purely pecuniary injuries"; and (3) "the non-movant has or will soon cease the allegedly infringing activities" *Id.* at *13-14.

The evidence is clear that Benefit never sought a temporary restraining order and/or a preliminary injunction to stop e.l.f. from marketing and selling e.l.f.'s Lash 'N Roll Mascara. Moreover, there are adequate legal remedies available to Benefit. These factors negate the notion of

irreparable harm, and the equities of this case favor e.l.f. Therefore, Benefit is not entitled to an award of injunctive relief.

## VII.    CONCLUSION

For the foregoing reasons, e.l.f. respectfully requests that the Court: (1) find that Benefit's Asserted Trade Dress is not protectable; (2) find that there is no likelihood of confusion between Benefit's Asserted Trade Dress and e.l.f.'s Lash N' Roll Mascara; (3) find that there is no likelihood of confusion between Benefit's ROLLER LASH and HOOK 'N' ROLL word marks and e.l.f.'s LASH 'N ROLL trademark; (4) deny Benefit's claim for monetary and injunctive relief; and (5) grant such other and further relief as it deems necessary and proper.

DATED:  August 21, 2024

By: */s/ Anthony F. Lo Cicero*

Anthony F. Lo Cicero (*admitted pro hac vice*)
Chester Rothstein (*admitted pro hac vice*)
Richard Mandaro (*admitted pro hac vice*)
Christopher Lisiewski (*admitted pro hac vice*)
**AMSTER ROTHSTEIN & EBENSTEIN LLP**
405 Lexington Avenue, 48th Floor
New York, New York 10174
Telephone: (212) 336-8000
Facsimile: (212) 336-8001

Stephen C. Steinberg (SBN 230656)
**BARTKO LLP**
1100 Sansome Street
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152

*Attorneys for Defendant e.l.f. Cosmetics, Inc.*

## ATTESTATION OF E-FILER

The undersigned ECF user whose identification and password are being used to file the foregoing document hereby attests that all signatories herein, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: August 21, 2024                */s/ Stephen C. Steinberg*